1  XAVIER BECERRA
   Attorney General of California
2  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
3  JULIA Y. JE
   Deputy Attorney General
4  State Bar No. 192746
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA 94102-7004
     Telephone: (415) 510-3804
6    Fax: (415) 703-5480
     E-mail: Julia.Je@doj.ca.gov
7  *Attorneys for Respondent*

8

9                   IN THE UNITED STATES DISTRICT COURT

10               FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                         SAN FRANCISCO DIVISION

12

13  **WILLIAM BROWN,**                    17-cv-04827-JST (PR)

14                         Petitioner,

15          **v.**

16  **ROBERT BURTON, Warden,**

17                         Respondent.

18

19

20                          **EXHIBITS C-H**

21

22

23

24

25

26

27

28

# EXHIBIT C

RT 815 pages

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff and Respondent,

v.

WILLIAM ODESSA BROWN,

Defendant and Appellant.

No. H040734

Santa Cruz County
Superior Court
No. F24666

ON APPEAL FROM A JUDGMENT OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA, COUNTY OF SANTA CRUZ

HONORABLE TIMOTHY R. VOLKMANN, JUDGE PRESIDING

**APPELLANT'S OPENING BRIEF**

Jay A. Mabitz
(Cal. Bar No. 111833)
LAW OFFICES OF JAY A.
MABITZ
Post Office Box 170083
San Francisco, CA 94117
(415) 680-8046
joyst@sbcglobal.net

Attorney for Appellant
WILLIAM ODESSA BROWN

AOB filed 9/4/14

DOCKETED
SAN FRANCISCO
SEP 05 2014
By
No.
SF2014408178

2 Boxes

B

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | No. H040734 |
| Plaintiff and Respondent, | |
| v. | Santa Cruz County Superior Court No. F24663 |
| WILLIAM ODESSA BROWN, | |
| Defendant and Appellant. | |

ON APPEAL FROM A JUDGMENT OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA, COUNTY OF SANTA CRUZ

HONORABLE TIMOTHY R. VOLKMANN, JUDGE PRESIDING

## APPELLANT'S OPENING BRIEF

Joy A. Maulitz
(Cal. Bar No. 111833)
LAW OFFICES OF JOY A.
MAULITZ
Post Office Box 170083
San Francisco, CA. 94117
(415) 680-8046
joysf@sbcglobal.net

Attorney for Appellant
WILLIAM ODESSA BROWN

# TABLE OF CONTENTS

STATEMENT OF APPEALABILITY ........................................... 1

STATEMENT OF THE CASE .................................................... 1

STATEMENT OF FACTS ...................................................... 2

ARGUMENT ....................................................................... 10

I.  THE ADMISSION OF APPELLANT'S PRIOR CONVICTION
    WAS PREJUDICIAL ERROR......................................... 10

    A.  Factual and procedural background ........................... 10

    B.  Standard of Review ............................................. 13

    C.  The Court's Decision to Allow Evidence of the Prior
        Conviction For Impeachment Was Error, Because It Was
        Not a Crime of Moral Turpitude................................ 13

    D.  The Admission of the Prior Conviction in Connection With
        the Job Application was an Abuse of Discretion.............. 16

    E.  The Court Never Decided the Evidence Could Come in Based
        on Evidence Code Section 1101, and the Evidence Could Not
        Have Been Admitted on this Basis............................. 18

    F.  The Admission of the Prior Conviction Evidence Deprived
        Appellant of His Federal Constitutional Rights to Due
        Process and a Fair Trial...................................... 20

    G.  The Erroneous Admission of the Evidence Was Prejudicial
        And Requires Reversal......................................... 21

II. THE TRIAL COURT IMPROPERLY IMPOSED TWO
    DIFFERENT ENHANCEMENTS FOR THE SAME PRIOR
    COURT CASE......................................................... 25

    A.  It Was Improper to Base Five-Year and One-Year
        Enhancements on The Same Prior Offense.................... 27

B.     The Argument Concerning the Enhancements Is Not
Waived………………………………………………...29

C.     If Argument Was Waived by Failure to Raise it Below, Trial
Counsel Provided Constitutionally Ineffective Assistance...30

## TABLE OF AUTHORITIES
### CASES

*Barnes v. United States*
(1973) 412 U.S. 837 ……………………………………… 20

*Bruton v. United States*
(1968) 391 U.S. 123 ……………………………………… 20

*Chapman v. California*
(1967) 386 U.S. 18 …………………………….…………… 21

*Gordon v. United States*
(D. C. Cir. 1967) 383 F.2d 936 …………………………….. 17

*In re Harris*
(1989) 49 Cal.3d 131 …………….………………………… 30

*Leary v. United States*
(1969) 395 U.S. 6 ……………………………………….... 20

*People v. Alcala*
(1984) 36 Cal.3d 604 …………….…………………… 19, 24

*People v. Beagle*
(1972) 6 Cal.3d. 441 ……………..……………………... 17, 24

*People v. Birks*
(1998) 19 Cal.4th 108 ……………..……………………… 22

*People v. Bracey*
(1994) 21 Cal.App.4th 1532 ………..……………………. 19

*People v. Brandon*
(1995) 32 Cal.App.4th 1033 …………………………….... 27

*People v. Burns*
    (1987) 189 Cal.App.3d 734 ……………………………….... 11

*People v. Castro*
    (1985) 38 Cal.3d 301 ……………………………… 11, 13-14, 20

*People v. Cruz*
    (1964 ) 61 Cal.2d 861 ………….………………………… 24

*People v. Daniels*
    (1991) 52 Cal.3d. 815 ………………………………… 19

*People v. Ewoldt*
    (1994) 7 Cal.4th 380 ………………………………..13, 19

*People v. Gonzales*
    (1993) 20 Cal.App.4th 1607 ……………………………… 28

*People v. Harris*
    (2005) 37 Cal.4th 310 …………………………………… 13-14

*People v. Harrison*
    (2005) 35 Cal.4th 208 ……………………………………… 13

*People v. Jones*
    (1993) 5 Cal.4th 1142 …………………………………… 27

*People v. Ledesma*
    (1987) 43 Cal.3d 171 ………….……………………… 30

*People v. Lewis*
    (2001) 25 Cal.4th 610 ………….……………………… 19

*People v. Medina*
    (1988) 286 Cal.App.3d 986 …………..…………………28-29

*People v. Ochoa*
    (2001) 26 Cal.4th 398 ……………………………………… 13

*People v. Orabuena*
    (2004) 116 Cal.App.4th 84 …………..………………… 16, 19

*People v. Pope*
      (1979) 23 Cal.3d 412 …………………………………………… 31

*People v. Rains*
      (1999) 75 Cal.App.4th 1165 …………………………………… 21

*People v. Rodriguez*
      (1986) 177 Cal.App.3d 174 …………………………………… 24

*People v. Ruiz*
      (1996) 44 Cal.App.4th 1653 ………………………………… 29

*People v. Sanders*
      (1992) 10 Cal.App.4th 1268 ……………………………….. 14-15

*People v. Scott*
      (1994) 9 Cal.4th 331 ……… …………………………………… 30

*People v. Steele*
      (2000) 83 Cal.App.4th 212 …………………………………… 22

*People v. Taylor*
      (1982) 31 Cal.3d 488 …………………………………………… 21

*People v. Thompson*
      (1980) 27 Cal.3d 303 ………………………………………… 18-19

*People v. Valentine*
      (1986) 42 Cal.3d 170 ………………………………………… 20

*People v. Waidla*
      (2000) 22 Cal.4th 690 ………………………………………… 13

*People v. Watson*
      (1956) 46 Cal.2d 818 …………………...……………………. 21, 24

*People v. Wheeler*
      (1992) 4 Cal.4th 284 ………………………………………… 14

*People v. Wiley*
      (1994) 25 Cal.App.4th 159 ………...……………………… 28-29

*Strickland v. Washington*
    (1984) 466 U.S. 668 ............................................... 30-31

*Ulster County Court v. Allen*
    (1979) 442 U.S. 140 ...................................................... 20

## STATUTES

Article I, section 15 of the California Constitution ......................... 30

California Rules of Court, rule 8.304 ........................................ 1

Evidence Code section 352 ....................................... 10-12, 16-18

Evidence Code section 353 ...................................................... 21

Evidence Code section 1101 ……..…......................... 10-12, 18-20

Penal Code section 245, subdivision (a)(1) .................................... 1

Penal Code section 273a, subdivision (a) ..................................... 15

Penal Code section 667 ............................…....................... 1-2, 25, 26, 27, 29

Penal Code section 667.5(b) ............................……....................... 1, 2, 25-27

Penal Code section 969b ...................................................... 25

Penal Code section 1170.12(a) through (d) ................................... 1

Penal Code section 1237 ...................................................... 1

Texas Penal Code section 22.04 ........................................... 14-15

The Fourteenth Amendment to the U. S. Constitution ......13-14, 20, 21, 30

The Sixth Amendment to the United States Constitution......... 20, 21, 30

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> WILLIAM ODESSA BROWN, <br><br> Defendant and Appellant. | No. H040734 <br><br> Santa Cruz County <br> Superior Court <br> No. F24663 |

## STATEMENT OF APPEALABILITY

This appeal is taken from a final judgment following a jury trial on the merits and is authorized by Penal Code section 1237. (Cal. Rules of Court, rule 8.304.)

## STATEMENT OF THE CASE

Appellant William Odessa Brown was charged by information filed May 22, 2013 with assault with a deadly weapon by means likely to produce great bodily injury, in violation of Penal Code section 245, subdivision (a)(1). (1CT 119.) It was further alleged that appellant had suffered two prior serious felony convictions, arising out of the same case, pursuant to Penal Code section 1170.12(a) through (d) and section 667 (b) through (i), as well as Penal Code section 667, subdivision (a)(1) and Penal Code section 667.5(b). (1CT 120-121.) Appellant pled not guilty and denied all the special allegations. (1CT 123.)

The trial court granted appellant's motion to bifurcate the trial concerning the prior convictions. (1RT 23.) Trial began on December 2, 2013. (1CT 214.)

On December 11, 2013, the jury found appellant guilty of assault with a deadly weapon. (2CT 305.) After further hearing, the court found that the special allegations were true. (10RT 2022; 2CT 307.) Appellant

was sentenced on February 28, 2014 to the midterm of three years, doubled due to the strike prior, plus five years for the enhancement under section 667, subdivision (a)(1), plus one year for the enhancement under section 667.5, subdivision (b), to be served consecutively, for an aggregate term of twelve years. (10RT 2265; 2CT 432-435.) Appellant filed a timely notice of appeal on February 28, 2014. (2CT 434.)


# STATEMENT OF FACTS

On April 29, 2013, eighteen-year-old Valente Ramirez Zamora was working the graveyard shift at Threshold Enterprises in Scotts Valley. (2RT 272-274, 278, 296-297.) Ramirez got to work at about 10:00 p.m. (2RT 379.) Threshold was a manufacturer of vitamin pills. (2RT 274.) Among Ramirez's co-workers were Miguel Zarate, Jorge Soto, Alejandro Nieto, and appellant William Brown. (2RT 279.) Ramirez's job was to drain the hoses with a large bucket, and then drain the bucket in the wash station. (2RT 282.) He wore a beard net, a hair net and safety glasses, along with other special gear for his work. (2RT 291-292.) He entered the wash room area at about 10:10 or 10:15 p.m. with a full bucket, and was waiting to drain it. (2RT 311-312, 379.) He saw that appellant William Brown was washing some buckets. (2RT 314-315.)

Appellant saw that Ramirez was waiting and said to him "I'll do it for you." (2RT 323.) Ramirez responded, "I can do it, this is my job" or "just do what you're doing and I'll do my job." (2RT 323, 384.) Appellant said he didn't want water all over the place, and Ramirez said "I've been doing this job for two and a half months, I know what I'm doing." (2RT 384-385.) The two men went back and forth about who would do the job of emptying the bucket. (2RT 328.) Appellant said "do you have a problem with me?" and moved into an area next to the wash station. (2RT 333.)

2

Ramirez said "come on" to appellant at least three times, not in a challenging manner, but as if to say, "I don't want no problems with you." (2RT 393-394.) Appellant hit his chest, challenging Ramirez. (2RT 335-336.) Appellant raised his voice, Ramirez did not. (2RT 389.) Ramirez did not move. (2RT 395.) Ramirez did not tell appellant to watch his back or say anything else to appellant. (2RT 408-409.) Ramirez felt intimidated because appellant was older, bigger, and taller than he was. (2RT 339-341.) Appellant got close to Ramirez's face, yelling at him. (2RT 344.) Ramirez never challenged appellant to fight, nor did he ever threaten him. (2RT 360.)

Appellant reached into a pocket on his suspenders and removed a box cutter, and swung it at Ramirez once. (2RT 345-347.) Ramirez felt it was clear that appellant was swinging at his face. (2RT 410.) Ramirez felt his mask move; he did not know at first if he had been cut. (2RT 355-359.) He thought that appellant had hit the mask but missed him. (2RT 402-403.)

Two people grabbed Ramirez and took him outside, and one of them went to tell the shift supervisor what had happened. (2RT 359.)

When Ramirez went to lunch he threw his mask and beard net into the garbage. (2RT 364.) After lunch, the manager, George Marzan, called Ramirez in and asked him what happened. (2RT 368, 369.) Marzan asked Ramirez if he had been cut, and Ramirez said no, or that he didn't know. (2RT 368, 407.) After Ramirez left the manager's office, he went to the restroom and found a little cut on the bottom of his lip, and went back to tell Marzan that he guessed he had been cut. (2RT 369.) Marzan took a photograph of the mark on Ramirez's face. (2RT 370.) It was small and did not require stitches. (2RT 370.) There was no blood on Ramirez's mask or beard protector. (2RT 404.)

Several of Ramirez's and appellant's co-workers were present in the wash station when the incident occurred. Alejandro Nieto brought a machine into the wash room. He saw Ramirez come in with a full water

bucket, and saw appellant washing a bucket. (3RT 510, 515.) There was enough room for Ramirez to empty his bucket without any problem. (3RT 559.) Nieto saw appellant take the bucket away from Ramirez and dump the water, and saw appellant and Ramirez begin to talk to each other. (3RT 525-526, 562.) Although Nieto did not understand English, he saw appellant get into Ramirez's face and he could tell by appellant's hand movements that he was challenging Ramirez to a fight. (3RT 527-528.) When appellant moved into the open area next to the wash station, he was moving around with his hands up like a boxer. (3RT 533-534.) Ramirez did not fight; he never even moved. (3RT 538.) Appellant pulled out and swung an orange box cutter at Ramirez, with an exposed blade about ¾ of an inch or an inch. (3RT 537-544.) Nieto saw the blade touch Ramirez's mask. (3RT 545, 569.)

George Soto operated the rolling compactor machine at Threshold, and entered the wash room with Nieto on the night in question. (3RT 590.) Ramirez came in with a dirty water bucket and was about to dump it when appellant told him not to. (3RT 603-604, 636.) It was appellant's job to clean the floor before it got too messy. (3RT 637.) Ramirez told appellant to do his job and he would do his. (3RT 605.) The argument between appellant and Ramirez escalated, and appellant asked Ramirez if he "want[ed] to go." (3RT 606.) Ramirez was not moving, and had a look on his face like "are you kidding?" (3RT 606-607.)

Soto heard appellant ask Ramirez: "are you threatening me?" but he did not hear Ramirez make any threat. (3RT 613.) Soto did hear Ramirez mumble something kind of subtle, under his breath. (3RT 641-642, 4RT 759.) Appellant was about 12 to 15 feet away from Ramirez and the other men when he asked Ramirez: "Are you threatening me?". (4RT 780.) When Soto heard Ramirez mumble something under his breath; Soto was not facing Ramirez, but appellant was. (4RT 781.)

4

Soto saw appellant get close to Ramirez and take out a box cutter and swipe it at Ramirez's face, very suddenly. (3RT 614.) Appellant did not hold the box cutter out like he was trying to hold Ramirez at bay; appellant was coming at Ramirez. (3RT 616.) Soto saw the box cutter touch Ramirez's mask. (3RT 616.) The type of mask that Ramirez wore was right up against his face. (3RT 621.) Appellant seemed scared, judging from the fact that he pulled out a knife, but Ramirez never swung or pulled a weapon. (3RT 624-626.) Appellant lowered the blade and just stood there silently as Soto and Nieto and Miguel Zarate took Ramirez out of the room. (4RT 762-763.)

Soto did not recall seeing appellant grabbing the bucket, nor did he see him put up his hands or hit his chest. (3RT 638, 640.) He never heard appellant say "come on" to Ramirez. (3RT 641.) Appellant did not swing the blade with full force at Ramirez's face. (3RT 643.) It did not look like the blade cut the mask. (4RT 756.) Soto saw Ramirez during their lunch break and did not see any cut on him; Soto thought Ramirez had not been cut. (4RT 767.)

Miguel Zarate went into the wash room on the night in question with some tubes to wash. (4RT 786-787.) Sometimes appellant would ask Zarate to leave buckets there, saying he would take care of them, and Zarate would leave the buckets there. (4RT 819.) Ramirez came in with a bucket of water. Zarate looked over at him because he saw a quick movement, and saw an argument between Ramirez and appellant. (4RT 793-794.) Appellant challenged Ramirez to fight. (4RT 796.) Zarate heard Ramirez say that they should each just do their jobs. (4RT 798.) Appellant was aggressive throughout the encounter with Ramirez. (4RT 799.) Ramirez stayed standing in one spot. (4RT 799.) Appellant moved to the open area next to the wash room, moving from side to side and in circles. (4RT 802-803.) Appellant pulled out a blade from his chest area and swung his arm

5

quickly at Ramirez's face. (4RT 809, 811.) Ramirez moved back a bit; Zarate believed Ramirez would have been hit in the face if he had not moved back. (4RT 811.) Zarate did not see any blood, did not see the blade hit the mask or see the mask rip open, and did not see if the blade hit Ramirez. (4RT 810-811, 825.) Zarate continued to work with Ramirez after the incident and did not see any injury on Ramirez's face. (4RT 817-818, 826.)

George Marzan was supervisor of the graveyard shift on April 29, 2013. (5RT 1006-1007.) Employee Mario Ortiz told Marzan that Nieto had told him that something had happened in the wash station. (5RT 1009-1010. ) Marzan got information about what had happened from Nieto, Soto, Zarate and then Ramirez. (5RT 1011.) When Marzan talked to Ramirez, Ramirez had a mask on. (5RT 1013.) Ramirez said he had thrown away the mask that he was wearing during the incident. (5RT 1030.) Later Ramirez came back and showed Marzan that he had a hairline scratch between an inch and a half and two inches long, right below his lip. (5RT 1013-1014.) Marzan did not know how Ramirez got the scratch. (5RT 1031-1032.)

The power had gone out at about 9:00 p.m. that evening, and stayed out until about midnight. (5RT 1015, 1022.) The swing shift was not able to clean up due to the power outage, and appellant was not able to wash any buckets during the first couple of hours of his shift. (5RT 1015, 1022-1023.) The wash room was extra messy that night because of the backup due to the power outage. (5RT 1038, 1040.) If the wash station was not operating, equipment could not be cleaned and it stopped the whole production process. (5RT 1024.)

Appellant testified in his own behalf. He was employed at Threshold a little over 90 days. He was hired through a temporary agency, Manpower, and became a permanent employee a few days before this incident. (5RT 1072.) Unlike the previous witnesses, his primary job was in sanitation.

6

(5RT 1074-1075.) Sometimes appellant would ask other employees to leave their buckets without dumping them so he could clean them; generally the other employees never had any problem with this request, especially since it meant less work for them. (5RT 1078-1079.)

When appellant arrived in the wash station after the power outage on April 29, 2013, his area was trashed with buckets and machines; the dirty bucket line was full from floor to ceiling and the whole wash area was full of buckets. (5RT 1080-1083.) Dirty buckets had to be kept apart from clean buckets, to prevent cross-contamination. (5RT 1083.) There was a heavy demand for clean buckets, as they were used in all lines of work at Threshold. (5RT 1084.) It was frustrating because appellant had to keep up with all the buckets that were piling up. (5RT 1115.) Appellant had spent 20 to 45 minutes trying to organize the area to make some room to clean buckets, and then had washed about 50 buckets when Ramirez walked into the wash room. (5RT 1083-1084.)

There were clean buckets near Ramirez, so appellant asked him not to dump the dirty water at that moment, because it would get the clean buckets dirty and appellant would have to re-wash them. (5RT 1086, 1105.) Ramirez started to dump his bucket and appellant told him to stop. Ramirez asked why. (5RT 1086.) Appellant told him he didn't want him to dump the dirty water because he had clean buckets sitting there. (5RT 1086.) If Ramirez had poured out his bucket, it would have splashed onto other areas. (5RT 1116-1118.)

Ramirez said "you do your job and I'll do mine." (5RT 1087.) Appellant pulled the bucket away from Ramirez and moved it out of the way. (5RT 1087.) Appellant talked with Ramirez for five or ten minutes, then walked out of the wash area. (5RT 1087-1088.) Appellant hit his chest, telling Ramirez to leave his bucket, saying "I've got this." (5RT 1091.) Appellant never raised his hands to fight Ramirez; the motion he made was

7

meant to say "hey, I got this," not "come fight me." (5RT 1091.) Ramirez asked appellant if he wanted to fight. (5RT 1091.) Ramirez was stopping appellant from doing his work just to argue over a bucket. (5RT 1128.) Ramirez said "you wanna fight?"; Ramirez was not confused when he said this. (5RT 1144.)

Appellant and Ramirez had argued for about 15 minutes, and appellant was upset, but appellant did not pull out his box cutter until Ramirez told him to watch his back. (5RT 1093. Soto and Nieto were closer to Ramirez than appellant was when Ramirez told appellant to watch his back, but appellant was the only one who heard this statement. (5RT 1136-1137.) Appellant took Ramirez's statement as a threat, and looked behind him in response. (5RT 1093.) Appellant was apprehensive, and felt that Ramirez was about to fight with him. (5RT 1095.) He felt he was about to be attacked. (5RT 1098, 1150.) Appellant was in a more open area than Ramirez was; he could move around. (5RT 1140.) He never saw Ramirez with a weapon. (5RT 1141.)

Appellant pulled out his blade and got in front of Ramirez. (5RT 1093.) He looked Ramirez in the eye and told him "I'm not the one you wanna play with." (5RT 1093-1094.) Appellant waved the blade in Ramirez's face. He was not trying to strike him with it, just to fend him off, to let Ramirez know that Ramirez should not threaten him. (5RT 1094.) Appellant just wanted to "end this whole thing right now." (5RT 1098.) Appellant's swing of the blade would not have hit Ramirez even if Ramirez had not stepped back when appellant waved the blade. (5RT 1145.) If appellant made contact with Ramirez's mask, it was an accident. (5RT 1150.)  If appellant had wanted to cut Ramirez, he would have. (5RT 1099.)

Appellant got the blade about three or four inches from Ramirez's face. (5RT 1108-1109.) He told police sergeant Wayne Bellville that he did

not get the blade any closer than a foot or two to Ramirez's face; that was the truth. (5RT 1109, 1156.)

Appellant backed up and put the blade away. (5RT 1094.) He watched as Zarate and Nieto escorted Ramirez out. Appellant didn't say anything more to Ramirez. (5RT 1094.)

Appellant knew that all Threshold employees carried box cutters, and because of the way the other employees were standing up against the wall and looking at him, he thought that there were four of them against him. (5RT 1095.) He responded before anything else could happen. (5RT 1096.) When appellant waved the box cutter, he was afraid of "being caught in the spot with other guys around." (5RT 1151.) Appellant was the aggressor from start to finish. (5RT 1135.)

Appellant never saw any blood on Ramirez. Ramirez never said he had been cut. Appellant did not recall hitting Ramirez's mask with his blade. (5RT 1096, 1134.) The blade could inflict serious injury, and could be a deadly weapon. (5RT 1130.) Appellant had the blade extended about one inch when he waved it in Ramirez's face. (5RT 1139-1140.)

Appellant admitted that he did not have to make Ramirez back off, because appellant himself could have walked out of the area. (5RT 1102.)

Appellant was honest when he applied to work at Threshold. (5RT 1105.) On the Threshold application, which appellant filled out about five days before the incident, when he was hired officially by Threshold, he did not reveal his conviction in Texas for elder abuse in response to a question about criminal convictions, and he initialed the box that stated that he had not withheld any information that might affect his chances for employment. (5RT 1105-1106.) He was convicted in Texas in 2012 for causing bodily injury to William Brown, an individual 65 years old or older, by striking him with his hand. (5RT 1107.) When appellant originally filled out an application to work at Threshold through the temporary agency Manpower,

however, he revealed the Texas conviction, and Threshold had possession of that application. (5RT 1148-1149.)

## ARGUMENT

## I.  THE ADMISSION OF APPELLANT'S PRIOR CONVICTION WAS PREJUDICIAL ERROR.

The trial court allowed the introduction of evidence that appellant had been convicted in 2012 of the crime of elder abuse without ever considering whether the offense was a crime of moral turpitude. In fact, the offense was not a crime of moral turpitude. Moreover, it was error to admit the evidence in relation to appellant's representations and/or omissions on a job application, because the probative value of the evidence was minimal and the potential for prejudice was great. The admission of the extremely damaging evidence concerning a prior assaultive conviction was prejudicial in a close case, in which the jury had numerous questions and engaged in lengthy deliberations concerning a single count. The admission of the evidence requires reversal.

### A.  Factual and procedural background

In motions in limine, the defense sought to exclude evidence of all prior convictions. (1CT 178.) The prosecution sought to introduce evidence of prior convictions pursuant to Evidence Code section 1101, subdivision (b), arguing that the convictions were relevant to prove motive or intent in the current incident. (1CT 184, 187; 1RT 13-14.) The trial court decided to exclude reference to a 1997 manslaughter conviction due to its remoteness in time, and based on an analysis under Evidence Code section 352. (1RT 12-13, 16-17.)

Remaining at issue was appellant's conviction in 2012 for a November 2011 incident of elder abuse. (1RT 13-14.) The prosecutor contended that the evidence showed intent under Evidence Code section 1101, in that appellant chose victims that were vulnerable or nonthreatening. (1RT 14.) The trial court originally stated that the evidence could come in if the crime was a felony, because it involved assaultive behavior, was relevant and admissible under section 1101, and was more prejudicial than probative per section 352. (1RT 17-18.) But defense counsel argued that the evidence was not properly admissible under Evidence Code section 1101 because it did not show motive. (1RT 21.) The prosecutor argued that the evidence would also be admissible for impeachment should appellant testify. (1RT 21.) The court reserved judgment on whether the evidence was proper under section 1101. (1RT 22.)

At the close of the prosecution case, defense counsel informed the court that appellant wished to testify. (5RT 1053.) The trial court found that the 2012 conviction was admissible to impeach appellant under the law set forth in *People v. Burns* (1987) 189 Cal.App.3d 734 and *People v. Castro* (1985) 38 Cal.3d 301, because it was a felony conviction, because it was assaultive behavior, and because it survived a section 352 analysis. (5RT 1054.)

The prosecutor further argued that the facts of the 2012 conviction were relevant to appellant's intent and the expected defense of self-defense. (5RT 1063.) Defense counsel acknowledged that appellant's defense would be one of self-defense. (5RT 1064.) The trial court reserved ruling on whether the facts of the 2011 incident could come into evidence in relation to self-defense. (5RT 1065-1066.)

Finally, the prosecutor asked the court's permission to impeach appellant with his job application to Threshold. The prosecutor represented that appellant left blank the responses to two questions regarding any prior

11

criminal convictions, and then certified that he had not withheld any information that might adversely affect his chance of employment. (5RT 1067-1068.) Defense counsel argued that appellant may have omitted information, but did not misrepresent himself, and further, that appellant was hired through a temporary agency and had provided all of the relevant information on the temporary agency application. (5RT 1068-1069.) The judge decided to allow the evidence about the prior offense and the job application for impeachment purposes, without engaging in any analysis under section 352. (5RT 1069-1070.)

In summary, the trial court found evidence of the prior conviction was admissible for impeachment, without ever examining whether the prior conviction was for a crime involving moral turpitude. The court also decided to allow evidence of the prior conviction in relation to appellant's representations and omissions on a job application, without ever examining the relevant factors under Evidence Code section 352. Finally, the court never made a decision to allow the prior conviction evidence to come in under Evidence Code section 1101.

On cross-examination, over the objection of defense counsel, the prosecutor introduced Exhibit 39, appellant's application for employment at Threshold. (5RT 1105, 1107.) The application was filled out five days before the incident, when appellant was hired officially by Threshold, though he had already been working at Threshold for about three months as a temporary worker hired through Manpower. (5RT 1071-1072, 1107.) The prosecutor asked appellant if he had suffered a conviction in Texas for elder abuse, and appellant said yes. (5RT 1106.) The prosecutor then elicited appellant's testimony that he did not list this information on his Threshold job application, and also that he had initialed the box that certified he had not withheld information that might adversely affect his chances for employment. (5RT 1106.) The prosecutor asked further whether appellant

was convicted in 2012 for "intentionally and knowingly caus[ing] bodily injury to William Brown, Senior, an individual 65 years of age or older, by striking [him] with hand," and appellant responded that he had been so convicted. (5RT 1107.)

On redirect, appellant explained that he originally applied for the job at Threshold through Manpower, that he had informed Manpower about the conviction in Texas, and that Threshold had possession of the Manpower application. (5RT 1149.)

## B.    Standard of Review

Admissibility of evidence is reviewed for abuse of discretion and is grounds for reversal if the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Ochoa* (2001) 26 Cal.4th 398, 437-438; *People v. Harrison* (2005) 35 Cal.4th 208, 230; *People v. Waidla* (2000) 22 Cal.4th 690, 723, fn. 5.) Due to its inherent prejudice, however, prior crime evidence is to be scrutinized with "extremely careful analysis". (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404 [internal quotations and citations omitted].)

## C.    The Court's Decision to Allow Evidence of the Prior Conviction For Impeachment Was Error, Because It Was Not a Crime of Moral Turpitude.

In *People v. Castro* (1985) 38 Cal.3d 301, the California Supreme Court held that the Due Process Clause of the Fourteenth Amendment prohibits impeachment of a witness with a prior conviction that does not substantially affect his or her credibility. (*Id.*, at pp. 313-314.) If a prior conviction does not involve moral turpitude, it may not be used for impeachment. (*Id.*, at p. 316; *People v. Harris* (2005) 37 Cal.4th 310,

337.) Further, a witness's prior conviction is admissible only "if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*People v. Castro, supra,* 38 Cal.3d at p. 317; see also *People v. Wheeler* (1992) 4 Cal.4[th] 284, 295-297, fn. 6.)

> [I]n determining whether a previous felony involves moral turpitude, the court cannot go behind the conviction and take evidence on or consider the facts and circumstances of the particular offense. Instead, the court must look to the statutory definition of the particular crime and only if the least adjudicated elements of the crime necessarily involve moral turpitude is the prior conviction admissible for impeachment purposes.

(*People v. Sanders* (1992) 10 Cal.App.4[th] 1268, 1272.) The least adjudicated elements of the prior conviction at issue in this case did not involve moral turpitude, and therefore evidence of the offense should not have been admitted.

The conviction at issue was a conviction in Texas for a violation of Texas Penal Code section 22.04, which is violated when a person "intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury." [1] Thus a conviction under the Texas statute can occur via negligence, or omission.

In a case examining a very similar California statute concerning child endangerment, the Court of Appeal has held that the crime was not one of moral turpitude. In *People v. Sanders, supra,* 10 Cal.App.4[th] 1268,

---

[1] The Texas statute is set out in full in footnote 3 at the end of this brief.

the Court examined Penal Code section 273a, subdivision (1), now section 273a, subdivision (a). That statute reads as follows:

> Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment . . .

The court found that section 273a could be violated by criminal negligence alone, and therefore a conviction under the statute does not necessarily imply moral turpitude. (*People v. Sanders, supra,* 10 Cal.App.4[th] at pp. 1273-1275.) The same reasoning applies in the instant case. By the plain language of the statute, it is clear that the Texas statute outlawing elder abuse may be violated by criminal negligence or omission alone. For example,

> [a] person commits an offense if the person is an owner, operator, or employee of a group home . . . and the person intentionally, knowingly, recklessly, <u>or with criminal negligence by omission</u> causes to a child, elderly individual, or disabled individual who is a resident of that group home or facility: (1) serious bodily injury . . .

(Tex. Pen. Code, § 22.04, emphasis added.) The language and application of the Texas statute is directly parallel to the child endangerment statute that the *Sanders* court found did not describe a crime of moral turpitude. Accordingly, the trial court erred in permitting the impeachment of appellant with the prior conviction under this statute.

**D.**     **The Admission of the Prior Conviction in Connection
With the Job Application was an Abuse of Discretion.**

As shown above, the trial court decided to admit evidence of the
prior conviction for impeachment, based on an analysis that totally failed to
consider whether the offense was one of moral turpitude. It was not. Given
that the prior conviction was not a crime of moral turpitude, the trial court
should have engaged in a proper analysis under Evidence Code section 352
in response to the prosecutor's request to admit the evidence in relation to
the job application; it failed to do so. If it had done so, it would not have
admitted the evidence. Its decision to admit the evidence in relation to the
job application was an abuse of discretion

First and foremost, the trial court completely failed to weigh the
factors under Evidence Code 352 in deciding whether to allow the prior
conviction evidence to come in relative to the job application.
The record does not reflect any weighing of the relevant factors under
section 352. A failure to exercise discretion is an abuse of discretion.
(*People v. Orabuena* (2004) 116 Cal.App.4[th] 84, 99.)

Further, a proper analysis under Evidence Code 352 would have
required exclusion of the evidence. Appellant's representations and
omissions on the application for employment did not have any probative
value whatsoever. The uncontroverted evidence showed that appellant's
original application to work at Threshold, filed with the temporary agency
Manpower, revealed his Texas conviction, and that Threshold possessed
that application. Threshold was therefore at least constructively aware of
appellant's prior conviction.  (5RT 1148-1149.)  Further, appellant did not
state on the second job application that he had no criminal record; he
merely left blank the "yes" or "no" responses to the question concerning

any past criminal offense. (EXH 39.) He then initialed the following
statement near the end of the form:

> I hereby certify that I have not knowingly withheld any information
> that might adversely affect my chances of employment and that the
> answers given by me are true and correct to the best of my
> knowledge. I further certify that I . . . have personally completed
> this application. I understand that any omission or misstatement of
> material fact on this application or on any document used to secure
> employment shall be grounds for rejection of this application or for
> immediate discharge if I am employed, regardless of the time
> elapsed before discovery.

(People's Exhibit 39, p. 3; 5RT 1106.)

In fact, appellant had _not_ "knowingly withheld any information that
might adversely affect [his] chances of employment," as he had revealed
the information regarding the prior conviction on his original application
submitted through Manpower. Further, the answers given by him on this
second application _were_ true and correct, even if they were not necessarily
complete. Finally, appellant was not required to, and did not, sign the
document under penalty of perjury.

The probative value of appellant's representations and/or omissions
on the job application was nil, or close to it, for the reasons described above.
Further, the potential for prejudice resulting from the admission of the
evidence regarding the prior conviction was substantial. Although the prior
conviction did not necessarily show moral turpitude, the prosecutor was
allowed to describe the offense in a manner that conveyed its assaultive
nature.

As noted by the Supreme Court in _People v. Beagle_ (1972) 6 Cal.3d.
441, 453, strong reasons militate in favor of excluding evidence of
substantially similar crimes, including "the inevitable pressure on lay jurors
to believe that 'if he did it before he probably did so this time.'" (_Ibid._,
quoting _Gordon v. United States_ (D. C. Cir. 1967) 383 F.2d 936, 940.) The

prejudice from this temptation of jurors to convict on the basis of prior convictions is of the severest nature, because it relates directly to the most critical function of the jury – its determination of the defendant's guilt or innocence.  As such, prior convictions for the same or similar crimes should be used "sparingly."  (*Ibid.*) The prejudice of allowing the admission of the prior conviction outweighed its minimal probative value for impeachment purposes.  Given the virtual impossibility of a lay jury separating its knowledge of prior violent criminal conduct from its duty to independently ascertain the defendant's guilt or innocence on the present charges, the prejudice of admitting the prior offenses clearly outweighed their probative value.  Therefore, the trial court abused its discretion under Evidence Code section 352.

**E.**     **The Court Never Decided the Evidence Could Come in Based on Evidence Code Section 1101, and the Evidence Could Not Have Been Admitted on this Basis.**

While Evidence Code section 1101, subdivision (b) allows admission of prior acts to prove intent and motive, admission of other crimes evidence "cannot be justified merely by asserting an admissible purpose." (*People v. Thompson* (1980)  27 Cal.3d 303, 319.) The court may not admit the evidence unless it  "is logically relevant to prove" the disputed fact. (*Ibid.*)

Although the prosecutor argued that the evidence was admissible under section 1101, the court never ruled on that argument, and therefore its decision to permit the evidence cannot be affirmed on this basis. When the Court of Appeal reviews the exercise of a trial court's discretion, it is "incongruous for an appellate court. . . to rely on reasons not cited by the trial court. Otherwise, we might uphold a discretionary order on grounds

never considered by, or, worse yet, rejected by the trial court." (*People v. Bracey* (1994) 21 Cal.App.4[th] 1532, 1542.)

The trial court did not "look behind the label describing the . . . similarity or relation between the [prior acts] and the charged offense" as required in an analysis under Evidence Code section 1101. (*People v. Thompson, supra,* 27 Cal.3d at p. 316, quotation and citation omitted.) It did not "examine the precise elements of similarity" between the prior act and the charged offenses "with respect to the issue for which the evidence is proffered and satisfy itself that each link of the chain of inference between the former and the latter is reasonably strong." (*Ibid.*) The trial court failed to perform a close analysis to determine if the prior act" serve[d] logically, naturally, and by reasonable inference to establish [the disputed] fact." (*People v. Thompson, supra,* 27 Cal.3d at p. 316.)

A ruling to admit section 1101, subdivision (b) evidence is reviewed for abuse of discretion. (*People v. Lewis* (2001) 25 Cal.4th 610, 637.) As discussed above, the trial court failed to exercise any discretion with regard to section 1101; accordingly, this court cannot affirm the trial court's decision to allow the evidence under section 1101, because the trial court's failure to exercise discretion was inherently an abuse of discretion. (*People v. Orabuena, supra,* 116 Cal.App.4[th] at p. 99.)

Further, due to its inherent prejudice, prior crime evidence is to be scrutinized with "extremely careful analysis."(*People v. Ewoldt* (1994) 7 Cal.4th 380, 404 [internal quotations and citations omitted].) All doubts about probativeness must be resolved in the defendant's favor. (*People v. Alcala* (1984) 36 Cal.3d 604, 631.) Because it can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." (*People v. Daniels* (1991) 52 Cal.3d. 815, 856.) Because there was no showing of any "precise elements of similarity" between the prior crime and the current offense, the

admission of the evidence cannot be affirmed on grounds that it was proper under Evidence Code section 1101. (*People v. Thompson, supra,* 27 Cal.3d at p. 316.)

### F. The Admission of the Prior Conviction Evidence Deprived Appellant of His Federal Constitutional Rights to Due Process and a Fair Trial.

Where, as here, a witness is impeached with a prior conviction that does not substantially relate to his or her credibility, it is a violation of the due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and the right to a fair trial guaranteed by the Sixth Amendment. (*People v. Castro* (1985) 38 Cal.3d 301, 313-314; *Ulster County Court v. Allen* (1979) 442 U.S. 140, 157; *Barnes v. United States* (1973) 412 U.S. 837, 844-845; *Leary v. United States* (1969) 395 U.S. 6, 46.)

> Paraphrasing the question to be asked -- as formulated in *Leary, supra,* 395 U.S. 6 -- we must ask with respect to any particular felony conviction which is offered for impeachment: "Can it be said with substantial assurance that the credibility of a witness is adversely affected by his having suffered this conviction?" If the answer is "no," impeachment is prohibited by due process: "An important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence." (*Bruton v. United States* (1968) 391 U.S. 123, 131, fn. 6.)

(*People v. Castro, supra,* 38 Cal.3d at pp. 313-314.)

Further, even if it was proper to admit evidence of the existence of a prior conviction in connection with the job application, the <u>nature</u> of the prior conviction was irrelevant to any disputed issue at trial, and thus its admission violated due process for this reason as well. (*People v. Valentine* (1986) 42 Cal.3d 170, 177.)

## G.   The Erroneous Admission of the Evidence Was Prejudicial And Requires Reversal.

Because the court's admission of the evidence of the prior conviction violated the Sixth and Fourteenth Amendments, the error is subject to the *Chapman* standard for federal constitutional errors, which requires reversal unless the state proves that the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) Applying *Chapman*, the appellate court examines the entire record to determine whether it is "'*reasonably possible* that the error might have materially influenced the jury in arriving at its verdict." (*People v. Taylor* (1982) 31 Cal.3d 488, 499-500, emphasis added.)

Under state law, the erroneous admission of evidence requires reversal when the admission of the evidence resulted in a miscarriage of justice. (Evid. Code, § 353; *People v. Rains* (1999) 75 Cal.App.4th 1165, 1170.) A miscarriage of justice occurs in a criminal case where "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error." (*People v. Rains, supra,* 75 Cal.App.4th at 1170, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

The error in this case mandates reversal under either the *Chapman* or the *Watson* standard. The trial court refused to instruct the jury on

brandishing a weapon (5RT 1155-1156),[2] but the question of whether appellant's action in waving the box cutter was merely the offense of brandishing, as opposed to an assault with a deadly weapon, pervaded the trial. It is clear that the jury was troubled by this question, and the jury showed great difficulty in coming to its guilty verdict. The jurors were considering only one count, but asked numerous questions and deliberated for the equivalent of a full day (one half-day on December 10, 2013 and another half-day on December 11, 2013) before coming to a decision. (2CT 299-300.) In such a close case, the introduction of evidence that appellant had assaulted another man was prejudicial under either the state or federal standard.

In both opening and closing arguments, appellant's trial attorney emphasized to the jury that the offense appellant committed was not assault with a deadly weapon, but merely the brandishing of a weapon. (2RT 268; 6RT 1293, 1314-1315.) He argued that appellant did not intend to strike Ramirez with the box cutter, and that appellant meant his actions as a warning, not an attack. (6RT 1293-1295.) Defense counsel repeatedly argued that the act of waving the box cutter was not an act that by its nature would directly and probably result in the application of force to another, and therefore not assault with a deadly weapon. (6RT 1295-1296, 1307.)

---

[2]  Brandishing is a lesser related offense of assault with a deadly weapon, not a lesser included offense. (*People v. Steele* (2000) 83 Cal.App.4th 212, 217-218, and cases cited therein.) Since the California Supreme Court's decision in *People v. Birks*, a trial court may not instruct on lesser related offenses absent the stipulation of both parties or a party's failure to object to such an instruction. (*People v. Steele, supra,* 83 Cal.App.4th at pp. 217-218; *People v. Birks* (1998) 19 Cal.4th 108, 117, 136, fn. 19.)

Defense counsel also focused on the 3rd element set out in CALCRIM No. 875 (the instruction defining assault with a deadly weapon), arguing that appellant did not have the intent to apply force to Ramirez. (6RT 1297.)

During deliberations the jury asked a question that revealed its concern as to whether assault with a deadly weapon could be committed with a single swing of a blade that did not cause any injury and apparently was not intended to cause any injury. The jury sent the judge the following note:

> With regards to 875 #3, how is intent to be considered. In order to convict, must the jury believe the defendant intended to commit the act of assault with a deadly weapon.

(2CT 302.) The "875" referenced in the note was understood to be the jury instruction concerning assault with a deadly weapon. (2CT 258.) The jury's question revealed that it had listened carefully to defense counsel's argument and was wondering if appellant's conduct constituted only brandishing a weapon, not assault with a deadly weapon.

The jury also requested extensive readback of the testimony of the five witnesses who were present when the incident occurred (Ramirez, Nieto, Soto, Zarate, and appellant), specifically as it related to three topics of concern, as follows:

1) Was the mask touched by the blade; if not, how close did it pass.

2) Did Valente Ramirez move backwards, including head movement, during or after swipe of blade;

3) What was Mr. Brown's initial proximity to Valente, once he moved out of the wash room.

(2RT 303.) These requests, like the previous request, show that the jury was skeptical about whether the elements of assault with a deadly weapon were established.

Another indication of the prejudice caused by the admission of the evidence is the stress placed upon it by the prosecutor in his closing argument.

> Now, we're talking about whether to believe the defendant or not. And we're talking about that conviction from Texas from 2012 from an incident in 2011. Why does that come in? It's because it's a crime of moral turpitude. What does that mean? The law kind of defines that as a readiness to do evil. . . It's called impeachment. . . It's to help you determine the credibility of Mr. Brown. . . . But then, not only that, he didn't put it on his application.

(6RT 1281-1284.) The prosecutor's emphasis on this evidence reveals its importance in the trial. This court should not treat the excluded evidence "as any less 'crucial' than the prosecutor -- and so presumably the jury -- treated it." (*People v. Cruz* (1964 ) 61 Cal.2d 861, 868.)

Reversal is required because it is reasonably probable that, had it not been for the erroneous admission of the prior conviction, one or more jurors would have voted to acquit. (See *People v. Rodriguez* (1986) 177 Cal.App.3d 174, 178; *Watson, supra*, 46 Cal.2d at p. 836.) There is more than an abstract chance that the jurors were predisposed toward a finding of guilt due to learning of appellant's prior conviction for assault. Evidence of a defendant's prior bad acts is "inherently prejudicial" and has an "inflammatory impact" on the jury. (*Alcala, supra*, 36 Cal.3d at p. 631.) Here, the prior conviction was an assault, which was particularly prejudicial in this assault case. (See *People v. Beagle* (1972) 6 Cal.3d 441, 453 ["[S]trong reasons arise for excluding those [prior convictions] which are for the same crime because of the inevitable pressure on lay jurors to believe 'if he did it before he probably did so this time.'"].) The trial court's erroneous admission of the prior conviction requires reversal.

## II. THE TRIAL COURT IMPROPERLY IMPOSED TWO DIFFERENT ENHANCEMENTS FOR THE SAME PRIOR COURT CASE.

The information alleged that appellant had suffered a prior conviction of a serious felony, to wit, an April 20, 1998 conviction of voluntary manslaughter and assault with force likely to result in great bodily injury, arising from the same case in Santa Cruz Superior Court. (1CT 120; 2 CT 313-316, 319.) The same conviction was pled as both a "five-year prior" pursuant to Penal Code section 667, subdivision (a)(1) and a "one-year prior" pursuant to section 667.5, subdivision (b). (1CT 120-121.)

The documents produced by the prosecutor pursuant to Penal Code section 969b showed that appellant pled nolo contendere to voluntary manslaughter and assault likely to produce great bodily injury in Santa Cruz case number S7-09413, on Jan. 16, 1998. (2CT 319, 313-315.) Appellant was sentenced to the upper term of 11 years on the manslaughter, one year on the assault, and one additional year for a prior conviction pursuant to Penal Code section 667.5, for an aggregate term of 13 years. (2CT 324.)

Bob Lee, the district attorney of Santa Cruz County, testified at the court hearing on appellant's prior convictions. He explained how he charged appellant in the case that led to the 1998 conviction.

> It was a highly publicized case. It was a case of first impression. I was charging Mr. Brown with the murder for a case where he had beaten up his girlfriend. They had a trailer down by the yacht harbor. He threw gas on her in the trailer. Her 15 or 16-year-old daughter was there. He had been previously arrested for 245's trying to run her over by the medical facility right here down by the Jack in the Box. She lit herself on fire and I charged him with murder for that particular act, for committing her suicide.

(9RT 2005.) Lee explained that the murder charge was amended to voluntary manslaughter. (9RT 2008.) Lee further explained that the daughter of the victim "was inside the trailer when this whole thing happened," and that the assault against the daughter was not a strike. (9RT 2006, 2018.) The court found that the special allegations had been proven. (9RT 2022.) The prosecution argued that the exhibits showed that a one-year term was served for the assault, and that term was the basis for the prison prior under section 667.5. (9RT 2021.)

The prosecutor's sentencing memorandum in the present case asked that appellant's base sentence for assault with a deadly weapon be doubled due to the prior strike conviction, and that five years be added pursuant to section 667, subdivision (a), for the strike conviction of voluntary manslaughter against his wife, plus one additional year for the assault upon his daughter that occurred in the same incident. (2CT 342.) The memorandum stated that "[d]uring that same incident where he doused the trailer home with gasoline, which led to the death of his wife, he was also convicted of assaulting his daughter with force likely to cause great bodily injury, because she too was splashed with gasoline and was dangerously close to the trailer when it burned." (2CT 356.) The defense motion to strike the prior conviction explained further that "Patricia Jenkins, the wife of the defendant, lit herself on fire and died some time after the incident. She herself indicated prior to her death from the burns that she was the one that lit the match." (2CT 419.)

At the end of the hearing on the prior convictions, defense counsel expressed concern "whether or not a five year and a one year can be imposed on the same prison commitment," and the court told him that he was "not waiving that argument at this point." (9RT 2022.)

At sentencing, the trial court imposed a five year enhancement pursuant to section 667, subdivision (a), and a one year enhancement

pursuant to section 667.5, subdivision (b). Both were based on case number S709413. (10RT 2265.)

## A. It Was Improper to Base Five-Year and One-Year Enhancements on The Same Prior Offense.

The California Supreme Court has held that when multiple enhancement provisions are applicable to the same prior offense, one of which is an enhancement under section 667, only the greatest enhancement will apply. (*People v. Jones* (1993) 5 Cal.4th 1142, 1149-1150.) Accordingly, only the five-year enhancement should apply in this case for the offense to which appellant pled guilty in case number S7-09413.

Although there have been some cases distinguishing *Jones*, none of them change the required result in this case. In *People v. Brandon*, the trial court based a 667.5 enhancement and a 667 enhancement on the same 1987 conviction. (*People v. Brandon* (1995) 32 Cal.App.4th 1033, 1054. )The prior prison commitment was comprised of "separate convictions for kidnapping with a firearm and three armed robberies" along with other offenses. (*Id.,* at pp. 1054-1055.) The Court of Appeal found *Jones* inapposite because the prior prison term was based in part on the same case that also was the basis for imposition of the section 667 enhancement, and "based in part on a separate, independent case." (*Id.,* at p. 1055.)

In the instant case, it cannot be said that the basis of the 667.5 enhancement was based on a separate, independent case. The two enhancements arose out of the same case, the 1998 conviction in Santa Cruz case number S7-09413. The case arose out of a single incident, in which appellant splashed gasoline around a trailer containing his wife and daughter, and his wife lit a match which led to a fire that caused burns that took her life. The assault on the daughter was in no way "a separate, independent case" from the manslaughter involving the wife.

Similarly, in *People v. Gonzales*, the appellant argued that the two section 667.5 enhancements arose from the same offenses as the two five-year section 667 enhancements. (*People v. Gonzales* (1993) 20 Cal.App.4th 1607, 1608.) The Court of Appeal found that the one-year enhancement that was imposed for the prior prison term in case no. CRV-8015 had to be stricken, because the trial court also imposed a five-year enhancement for the conduct in case no. CRV-8015. (*Id.*, at pp. 1609-1610.) But the other one-year enhancement involved a prison sentence imposed for "two separate crimes," spousal abuse and possession of a controlled substance, one of which was a serious prior felony under section 667. The spousal abuse was charged in case number CRN-10532, and the drug possession was charged in case number CRN-11200. Because "each case involve[d] a separate crime, which was committed separately and brought and tried separately," the Court of Appeal permitted the imposition of both enhancements. (*Id.*, at pp. 1610-1611.) In the case at hand, unlike *Gonzales*, the two enhancements were imposed in the same case, in one case number. The crimes were not committed separately, nor were they brought and tried separately. Accordingly, the two enhancements may not both be imposed for the same prior conviction.

The same logic was applied in *People v. Wiley*, in which the Court of Appeal found that both enhancements could be applied when the serious felony enhancement arose from "a separate crime." (*People v. Wiley* (1994) 25 Cal.App.4th 159, 164.) The *Wiley* court relied upon the earlier Court of Appeal holding in *People v. Medina* (1988) 286 Cal.App.3d 986. In *Medina*, the defendant had committed five prior felonies, four of which – three separate robberies and one theft – resulted in a concurrent prison term. The trial court imposed a five-year enhancement for the first robbery and a one-year enhancement for the second robbery. The *Medina* court found that the trial court could impose both enhancements because the section 667.5

enhancement "was applied to a separate and distinct conviction of robbery based upon different facts." (*Id.,* at pp. 990-991.)

Again, in *People v. Ruiz,* the Court of Appeal found that an enhancement under section 667 and another under section 667.5 could both be imposed when "the section 667(a) enhancement related to one robbery conviction while the 667.5(b) enhancement related to <u>a separate and distinct robbery conviction based on different facts</u>." (*People v. Ruiz* (1996) 44 Cal.App.4[th] 1653, 1668, emphasis added.) The enhancements in the present case were based on the very same set of facts, i.e., appellant's daughter was splashed by gasoline in the same course of conduct which caused appellant's wife to be burned.

The two enhancements in this case were not based on separate and distinct convictions based on different facts. The rule announced by the Supreme Court in *People v. Jones* applies here, and the one-year enhancement must be stricken.

## B. The Argument Concerning the Enhancements Is Not Waived.

The argument concerning the two enhancements was raised by defense counsel below, and the trial court explicitly stated that the argument was not waived. (9RT 2022.) For this reason alone, it would be improper to hold on appeal that the argument is barred because it was not raised in the trial court.

Further, the decision to impose two enhancements in relation to the same prior case was an unauthorized sentence and thus may be challenged for the first time on appeal. The California Supreme Court considered a claim that two prior "serious felonies" were not "brought and tried separately," as required to support separate enhancements under Penal Code section 667, subdivision (a). The high court characterized the trial court's determination as the type of decision in which "the trial court

exceeded its jurisdiction by sentencing a defendant to a term in excess of the maximum provided by law, or to correct a misinterpretation of [a] statute resulting in confinement 'in excess of the time allowed by law. (*In re Harris* (1989) 49 Cal.3d 131, 134 fn. 2 (internal quotations and citations omitted.) The decision by the trial court in this case to impose two enhancements for the same prior case is akin to that in *Harris*. It should be deemed an unauthorized sentence that may be challenged for the first time on appeal. (See *People v. Scott* (1994) 9 Cal.4th 331, 354 ["legal error resulting in an unauthorized sentence commonly occurs where the court violates mandatory provisions governing the length of confinement"])

C.    **If Argument Was Waived by Failure to Raise it Below, Trial Counsel Provided Constitutionally Ineffective Assistance.**

If this court decides that a challenge to the imposition of two enhancements was waived by the failure to object below, trial counsel provided constitutionally ineffective assistance by his failure to object in the trial court.

The right to effective assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, section 15 of the California Constitution, ensuring every criminal defendant the "reasonably competent assistance of an attorney acting as his diligent, conscientious advocate. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215; *Strickland v. Washington* (1984) 466 U.S. 668, 684.) Proof of ineffective assistance of counsel requires a showing that (1) counsel's performance fell short of prevailing professional standards, and (2) there is a "reasonable possibility that but for counsel's errors, the result of the case would have been different." (*Strickland, supra,* 466 U.S. at p. 687.) Where "there simply could be no satisfactory explanation" for counsel's omission,

the appellate court may find that he or she provided constitutionally ineffective assistance to his or her client. (*People v. Pope* (1979) 23 Cal.3d 412, 426.)

There could be no satisfactory explanation for counsel's failure to pursue the argument concerning the imposition of two enhancements for the same prior case. Defense counsel raised the argument that both enhancements should not apply, revealing that he was aware that there might be authority supporting such a position, but he failed to pursue the argument further at sentencing. There was absolutely no reason not to pursue the argument. If counsel had pursued the argument, there is certainly a reasonable possibility that the second enhancement would not have been imposed. Trial counsel provided ineffective assistance when he failed to object to the imposition of two enhancements for one prior case. The one-year enhancement must be stricken.

# CONCLUSION

On the grounds asserted in section I, appellant requests that the Court reverse the judgment in this case. On the grounds asserted in section II, appellant requests that this Court strike the one-year enhancement imposed under Penal Code section 667.5, subdivision (b).


Date: September 2, 2014

Respectfully submitted,

LAW OFFICES OF JOY MAULITZ


By: _____

Joy A. Maulitz
Attorney for Appellant
WILLIAM ODESSA BROWN[3]

---

[3]    The Texas statute referred to in section I reads as follows, in full:

Sec. 22.04.  INJURY TO A CHILD, ELDERLY INDIVIDUAL, OR DISABLED INDIVIDUAL

(a)  A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:

   (1)  serious bodily injury;

   (2)  serious mental deficiency, impairment, or injury;  or

   (3)  bodily injury.

   (a-1)  A person commits an offense if the person is an owner, operator, or employee of a group home, nursing facility, assisted living facility, intermediate care facility for persons with mental retardation, or other institutional care facility and the person intentionally, knowingly, recklessly, or with criminal negligence by omission causes to a child,

elderly individual, or disabled individual who is a resident of that group home or facility:

      (1)  serious bodily injury;

      (2)  serious mental deficiency, impairment, or injury; or

      (3)  bodily injury.

    (b)  An omission that causes a condition described by Subsection (a)(1), (2), or (3) or (a-1)(1), (2), or (3) is conduct constituting an offense under this section if:

      (1)  the actor has a legal or statutory duty to act; or

      (2)  the actor has assumed care, custody, or control of a child, elderly individual, or disabled individual.

    (c)  In this section:

      (1)  "Child" means a person 14 years of age or younger.

      (2)  "Elderly individual" means a person 65 years of age or older.

      (3)  "Disabled individual" means a person older than 14 who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself.

      (4)  Repealed by Acts 2011,

    (d)  For purposes of an omission that causes a condition described by Subsection (a)(1), (2), or (3), the actor has assumed care, custody, or control if he has by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for protection, food, shelter, and medical care for a child, elderly individual, or disabled individual.  For purposes of an omission that causes a condition described by Subsection (a-1)(1), (2), or (3), the actor acting during the actor's capacity as owner, operator, or employee of a group home or facility described by Subsection (a-1) is considered to have accepted responsibility for protection, food, shelter, and medical care for the child, elderly

individual, or disabled individual who is a resident of the group home or facility.

(e) An offense under Subsection (a)(1) or (2) or (a-1)(1) or (2) is a felony of the first degree when the conduct is committed intentionally or knowingly. When the conduct is engaged in recklessly, the offense is a felony of the second degree.

(f) An offense under Subsection (a)(3) or (a-1)(3) is a felony of the third degree when the conduct is committed intentionally or knowingly, except that an offense under Subsection (a)(3) is a felony of the second degree when the conduct is committed intentionally or knowingly and the victim is a disabled individual residing in a center, as defined by Section 555.001, Health and Safety Code, or in a facility licensed under Chapter 252, Health and Safety Code, and the actor is an employee of the center or facility whose employment involved providing direct care for the victim. When the conduct is engaged in recklessly, the offense is a state jail felony.

(g) An offense under Subsection (a) is a state jail felony when the person acts with criminal negligence. An offense under Subsection (a-1) is a state jail felony when the person, with criminal negligence and by omission, causes a condition described by Subsection (a-1)(1), (2), or (3).

(h) A person who is subject to prosecution under both this section and another section of this code may be prosecuted under either or both sections. Section 3.04 does not apply to criminal episodes prosecuted under both this section and another section of this code. If a criminal episode is prosecuted under both this section and another section of this code and sentences are assessed for convictions under both sections, the sentences shall run concurrently.

(i) It is an affirmative defense to prosecution under Subsection (b)(2) that before the offense the actor:

(1) notified in person the child, elderly individual, or disabled individual that he would no longer provide any of the care described by Subsection (d); and

(2) notified in writing the parents or person other than himself acting in loco parentis to the child, elderly individual, or disabled individual that he would no longer provide any of the care described by Subsection (d); or

(3)  notified in writing the Department of Protective and Regulatory Services that he would no longer provide any of the care set forth in Subsection (d).

(j)  Written notification under Subsection (i)(2) or (i)(3) is not effective unless it contains the name and address of the actor, the name and address of the child, elderly individual, or disabled individual, the type of care provided by the actor, and the date the care was discontinued.

(k)  It is a defense to prosecution under this section that the act or omission consisted of:

(1)  reasonable medical care occurring under the direction of or by a licensed physician; or

(2)  emergency medical care administered in good faith and with reasonable care by a person not licensed in the healing arts.

(l)  It is an affirmative defense to prosecution under this section:

(1)  that the act or omission was based on treatment in accordance with the tenets and practices of a recognized religious method of healing with a generally accepted record of efficacy;

(2)  for a person charged with an act of omission causing to a child, elderly individual, or disabled individual a condition described by Subsection (a)(1), (2), or (3) that:

(A)  there is no evidence that, on the date prior to the offense charged, the defendant was aware of an incident of injury to the child, elderly individual, or disabled individual and failed to report the incident; and

(B)  the person:

(i)  was a victim of family violence, as that term is defined by Section 71.004, Family Code, committed by a person who is also charged with an offense against the child, elderly individual, or disabled individual under this section or any other section of this title;

(ii)  did not cause a condition described by Subsection (a)(1), (2), or (3); and

(iii) did not reasonably believe at the time of the omission that an effort to prevent the person also charged with an offense against the child, elderly individual, or disabled individual from committing the offense would have an effect; or

(3) that:

(A) the actor was not more than three years older than the victim at the time of the offense; and

(B) the victim was a child at the time of the offense.

# CERTIFICATE OF COMPLIANCE WITH
## THE CALIFORNIA RULES OF COURT, RULE 8.360(b)

I certify this document was prepared on a computer using Microsoft Word, and that, according to that program, this document contains 9,306 words.

Date: September 2, 2014          Respectfully submitted,

LAW OFFICES OF JOY MAULITZ

By: ___Joy A. Maulitz_____

Joy A. Maulitz

PROOF OF SERVICE BY MAIL

Re: William Odessa Brown, Court Of Appeal Case: H040734, Superior Court Case: F24663

the undersigned, declare that I am employed in the County of Sonoma, California. I am over the age of eighteen years and not a party to the within entitled cause. My business address is 1235 Eleanor Ave., Rohnert Park CA. On September 2, 2014, I served a copy of the attached Appellant's Opening Brief on each of the parties in said cause by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in United States mail at Sonoma, California, addressed as follows:

Sixth District Appellate Program
SDAP
100 North Winchester Boulevard
Suite 310
Santa Clara, CA 95050

Office of the Attorney General SJ
San Jose AG
455 Golden Gate Avenue
Room 11000
San Francisco, CA 94102-7004

Anthony Robinson
Biggam Christensen and Minslof
2103 N. Pacific Ave.
Santa Cruz, CA 95060

District Attorney
701 Ocean St., Room 200
Santa Cruz, CA 95060

William Brown AS7822
SQSP
San Quentin, CA 94974

Superior Court
Santa Cruz County
701 Ocean Street
Santa Cruz, CA 95060

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 2nd day of September, 2014.

_____
Teresa C. Martinez
(Name of Declarant)

_____
(Signature of Declarant)

PROOF OF SERVICE BY ELECTRONIC SERVICE

Re: William Odessa Brown,  Court Of Appeal Case: H040734, Superior Court Case: F24663

I the undersigned, am over the age of eighteen years and not a party to the within entitled cause. My business address is 1235 Eleanor Ave., Rohnert Park CA. On September 2, 2014 a PDF version of the Appellant's Opening Brief described herein was transmitted to each of the following using the email address indicated or direct upload. The email address from which the intended recipients were notified is Service@GreenPathSoftware.com.

Court of Appeal, 6th District
Clerk of the Court
San Jose, CA 95113

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 2nd day of  September, 2014 at  11:41 Pacific Time hour.

Teresa C. Martinez
_____
(Name of Declarant)

_____
(Signature of Declarant)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

THE PEOPLE OF THE STATE OF CALIFORNIA,

    Plaintiff and Respondent,

v.

WILLIAM ODESSA BROWN,

    Defendant and Appellant.

No. H040534

Santa Cruz County
Superior Court
No. F24663

ON APPEAL FROM A JUDGMENT OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA, COUNTY OF SANTA CRUZ

HONORABLE TIMOTHY R. VOLKMANN, JUDGE PRESIDING

**APPELLANT'S SUPPLEMENTAL OPENING BRIEF**

Joy A. Maulitz
(Cal. Bar No. 111833)
LAW OFFICES OF JOY A.
    MAULITZ
Post Office Box 190083
San Francisco, CA 94119
(415) 680-8046
joysf@sbcglobal.net

Attorney for Appellant
WILLIAM ODESSA BROWN

DOCKETED
SAN FRANCISCO

SEP 19 2014

By GIOMARA GUARDADO
No.

SF2014408178

2 Boxes

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

THE PEOPLE OF THE STATE OF CALIFORNIA,

    Plaintiff and Respondent,

v.

WILLIAM ODESSA BROWN,

    Defendant and Appellant.

No. H040734

Santa Cruz County
Superior Court
No. F24663

ON APPEAL FROM A JUDGMENT OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA, COUNTY OF SANTA CRUZ

HONORABLE TIMOTHY R. VOLKMANN, JUDGE PRESIDING

**APPELLANT'S SUPPLEMENTAL OPENING BRIEF**

Joy A. Maulitz
(Cal. Bar No. 111833)
LAW OFFICES OF JOY A.
    MAULITZ
Post Office Box 170083
San Francisco, CA. 94117
(415) 680-8046
joysf@sbcglobal.net

Attorney for Appellant
WILLIAM ODESSA BROWN

# TABLE OF CONTENTS

APPELLANTS SUPPLEMENTAL OPENING BRIEF .................... 1

I.  AS SET OUT IN THE OPENING BRIEF, THE ADMISSION OF
    APPELLANT'S PRIOR CONVICTION WAS PREJUDICIAL
    ERROR IN SEVERAL RESPECTS.

    THE ARGUMENT IS NOT FORFEITED; TO THE EXTENT THIS
    COURT DEEMS THE ARGUMENT FORFEITED, TRIAL
    COUNSEL'S FAILURE CONSTITUTED CONSTITUTIONALLY
    INEFFECTIVE ASSISTANCE OF COUNSEL AND REQUIRES
    REVERSAL.............................................................. 1

    H.  THE ARGUMENTS ARE NOT FORFEITED; BUT TO THE
        EXTENT TRIAL COUNSEL FAILED TO OBJECT ON
        THE PROPER GROUNDS TO THE ADMISSION OF
        APPELLANT'S PRIOR CONVICTION, THE FAILURE
        CONSTITUTED INEFFECTIVE ASSISTANCE OF
        COUNSEL....................................................... 2

        1.  The argument under Evidence Code section 352 was
            raised and is therefore not forfeited..................... 2

        2.  The argument regarding whether the Texas conviction
            showed moral turpitude should not be deemed
            forfeited.................................................. 3

        3.  To the extent either argument is deemed forfeited due
            to insufficient objection, trial counsel provided
            constitutionally ineffective assistance and the
            conviction must be reversed on this basis.............. 4

            a.  Failure to object on well-established, applicable
                grounds was a failure to perform with
                reasonable competence........................... 5

            b.  It is reasonably probable a determination more
                favorable to appellant would have resulted in
                the absence of counsel's failings.................6

# TABLE OF AUTHORITIES

## CASES

*Hale v. Morgan*
(1978) 22 Cal.3d 388 ..................................................... 3

*In re Mazoros*
(1977) 76 Cal.App.3d 50 ................................................. 3

*People v. Allen*
(1974) 41 Cal.App.3d 196 ............................................... 3

*People v. Castro*
(1985) 38 Cal.3d 301 .................................................... 5

*People v. Crittenden*
(1994) 9 Cal.4th 83 ..................................................... 3

*People v. Felix*
(1999) 70 Cal.App.4th 426 .............................................. 3

*People v. Fosselman*
(1983) 33 Cal.3d 572 ............................................... 4-5, 7

*People v. Gutierrez*
(2003) 112 Cal.App.4th 1463 ........................................... 4

*People v. Harris*
(2005) 37 Cal.4th 310 ................................................... 5

*People v. Ledesma*
(1987) 43 Cal.3d 171.................................................... 4

*People v. Morris*
(1991) 53 Cal.3d 152 .................................................... 3

*People v. Partida*
(2005) 37 Cal.4[th] 428 ................................................. 3

*People v. Pope*
(1979) 23 Cal.3d 412 ................................................ 4, 7

*People v. Rowland*
    (1992) 4 Cal.4th 238 …………..…………………………… 3

*People v. Sanders*
    (1992) 10 Cal.App.4th 1268 …………..……………………… 5

*People v. Watson*
    (1956) 46 Cal.2d 818 ……………………………………… 4, 7

*People v. Wheeler*
    (1992) 4 Cal.4th 284 ………..……………………………… 5

*People v. Yeoman*
    (2003) 31 Cal.4th 93 ……………………………………… 3-4

*Strickland v. Washington*
    (1984) 466 U.S. 668 …………………………………… 4, 6, 7

## STATUTES

Article I, section 15 of the California Constitution ………………………… 4

Evidence Code section 352 ……………………………………... *passim*

Texas Penal Code section 22.04 ………..…………………………… 5

The Fourteenth Amendment to the U. S. Constitution …………………… 4

The Sixth Amendment to the United States Constitution………………… 4

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM ODESSA BROWN,<br><br>Defendant and Appellant. | No. H040734<br><br>Santa Cruz County<br>Superior Court<br>No. F24663 |

**APPELLANTS SUPPLEMENTAL OPENING BRIEF**

**I.    AS SET OUT IN THE OPENING BRIEF, THE ADMISSION OF APPELLANT'S PRIOR CONVICTION WAS PREJUDICIAL ERROR IN SEVERAL RESPECTS.**

**THE ARGUMENT IS NOT FORFEITED; TO THE EXTENT THIS COURT DEEMS THE ARGUMENT FORFEITED, TRIAL COUNSEL'S FAILURE CONSTITUTED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL AND REQUIRES REVERSAL.**

In part I, subparts A. through G., of appellant's opening brief, appellant argued that the trial court's admission of evidence concerning his prior conviction was erroneous on several grounds, two of which are relevant here: one, because the offense was not a crime of moral turpitude, and two, because the trial court failed to consider Evidence Code 352 in considering the admission of the prior conviction evidence in connection with appellant's representations and/or omissions on a job application. Defense counsel raised numerous objections to the introduction of the prior conviction, including an objection under Evidence Code section 352, and thus appellant's arguments are not forfeited. But to the extent this court deems either argument waived due to insufficient objection in the trial court,

trial counsel's failure constituted ineffective assistance of counsel requiring reversal. Subpart I.H. below is an addendum to Subparts I.A. through I.G. contained in the opening brief.

> **H. THE ARGUMENTS ARE NOT FORFEITED; BUT TO THE EXTENT TRIAL COUNSEL FAILED TO OBJECT ON THE PROPER GROUNDS TO THE ADMISSION OF APPELLANT'S PRIOR CONVICTION, THE FAILURE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.**
>
>> 1. The argument under Evidence Code section 352 was raised and is therefore not forfeited.

Defense counsel objected vigorously to the admission of appellant's prior conviction. In a motion in limine, the defense sought to exclude evidence of all prior convictions, including an express objection to such evidence under Evidence Code section 352. (1CT 178.) Defense counsel also argued that the evidence was not properly admissible under Evidence Code section 1101. (1RT 21.)

When the prosecutor asked the court's permission to impeach appellant with his job application to Threshold, particularly with regard to two questions concerning any prior criminal convictions, defense counsel objected, arguing that appellant may have omitted information from the application, but did not misrepresent himself, and further, that appellant was hired through a temporary agency and had provided all of the relevant information on the temporary agency application. (5RT 1068-1069.) All of these arguments by defense counsel related to the lack of probative value of the evidence under Evidence Code section 352, the ground raised previously in the motion in limine.

Because defense counsel moved in limine to keep out the prior conviction under section 352, and further renewed this objection later in connection with the job application by arguing the factors relevant to a section 352 analysis, the issue cannot be deemed forfeited on appeal. Where a defendant raises evidentiary issue in an in limine motion and court rules on it, the defendant generally does not need to renew that objection during trial to preserve the issue. (*People v. Morris* (1991) 53 Cal.3d 152, 188-189; *accord, People v. Crittenden* (1994) 9 Cal.4th 83, 127; *People v. Rowland* (1992) 4 Cal.4th 238, 264 fn. 3; *People v. Felix* (1999) 70 Cal.App.4th 426, 430-431.)

Further, defense counsel's objections under section 352 also preserved appellant's right to raise his related federal claims on appeal. An objection on a state law grounds is sufficient to preserve a parallel federal constitutional claim governed by the same standard. (*People v. Yeoman* (2003) 31 Cal.4th 93, 117-118; *People v. Partida* (2005) 37 Cal.4th 428.)

> 2. The argument regarding whether the Texas conviction showed moral turpitude should not be deemed forfeited.

As shown in the opening brief, appellant was deprived of his due process and fair trial rights by the admission of extremely prejudicial evidence of a prior assault in the instant prosecution for assault. Constitutional issues may be raised for the first time on appeal (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394; *In re Mazoros* (1977) 76 Cal.App.3d 50, 54; *People v. Allen* (1974) 41 Cal.App.3d 196, 201, fn. 1.) Further, the question of whether the Texas conviction constituted a crime of moral turpitude under the "least adjudicated elements test" is a pure question of law. It is well-established that a reviewing court may consider for the first time a claim raising a pure question of law on undisputed facts. (*People v.*

*Yeoman* (2003) 31 Cal.4th 93, 118; see also, e.g., *People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1471 fn. 5.) The argument that the prior conviction was inadmissible because it was not for a crime of moral turpitude should not be deemed forfeited.

> 3. To the extent either argument is deemed forfeited due to insufficient objection, trial counsel provided constitutionally ineffective assistance and the conviction must be reversed on this basis.

The Sixth and Fourteenth Amendments to the United States Constitution, together with article I, section 15, of the California Constitution, guarantee every criminal defendant the right to the effective assistance of counsel. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215; *Strickland v. Washington* (1984) 466 U.S. 668, 691-692.)

To prove ineffective assistance of counsel, the defendant must demonstrate that counsel failed to act with reasonable competence, and that this failure deprived defendant of the opportunity to present a potentially meritorious defense. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) When the purported failure does not amount to the withdrawal of a potentially meritorious defense, a defendant must establish that counsel "failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings." (*People v. Fosselman* (1983) 33 Cal.3d 572, 584, citing *Pope, supra*, 23 Cal.3d at p. 425, and *People v. Watson* (1956) 46 Cal.2d 818, 836; see *Strickland v. Washington, supra*, 466 U.S. at pp. 693-695 [articulating the "reasonable probability" test].) The criminal defendant need not show by a preponderance of the evidence that the errors of counsel determined the outcome. (*Strickland v. Washington, supra*, 466 U.S. at p. 694.)

Reversal on appeal for inadequate counsel is warranted where there is no tactical reason for counsel's act or omission. (*People v. Fosselman, supra,* 33 Cal.3d at p. 581.)

      a.     Failure to object on well-established, applicable grounds was a failure to perform with reasonable competence.

Here, it is plain that there could be no tactical reason for the failure to argue that the prior conviction was not a crime of moral turpitude, or that the job application should be excluded under Evidence Code section 352. As shown in the opening brief, it is well-established in California law that if a prior conviction does not involve moral turpitude, it may not be used for impeachment. (*People v. Castro* (1985) 38 Cal.3d 301, 316; *People v. Harris* (2005) 37 Cal.4th 310, 337.) Further, a witness's prior conviction is admissible only "if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*People v. Castro, supra,* 38 Cal.3d at p. 317; see also *People v. Wheeler* (1992) 4 Cal.4th 284, 295-297, fn. 6.) If trial counsel had simply reviewed the Texas statute at issue, he would have noticed that, by its plain language, it may be violated by negligent conduct alone. (Tex. Pen. Code, § 22.04.) Such conduct does not imply moral turpitude, and the prior conviction should have been excluded on this basis. (*People v. Sanders* (1992) 10 Cal.App.4th 1268, 1272.)

Further, trial counsel displayed a lack of reasonable competence when he failed to argue that the job application evidence was more prejudicial than probative under section 352. He failed to point out that the proposed line of questioning concerning the job application was an end-run designed to bring in evidence concerning a highly prejudicial assault conviction, a conviction that was not even for a crime of moral turpitude. If the judge had been reminded that the crime was not one of moral turpitude, and that the potential prejudice was great because it was the same type of

crime as that before the jury, along with the minimal probative value of the
job application evidence, it is likely that the judge would have excluded the
evidence.

Although respondent may be able to invent some sort of trial tactic
for not objecting on the proper grounds, any such tactic would have been
unreasonable. An objection on proper grounds was plainly appropriate,
since the evidence the prosecutor sought to admit was inadmissible.
Defense counsel clearly viewed the evidence as extremely damaging, as he
filed a motion in limine to exclude the evidence. The evidence was in no
way helpful to appellant; to the contrary, it was quite harmful, and defense
counsel was patently aware of the potential prejudice arising from the
evidence. Counsel's failure to object on appropriate, well-established
grounds to this deeply prejudicial testimony was unjustified and objectively
unreasonable.

> b.  It is reasonably probable a determination more favorable to
>     appellant would have resulted in the absence of counsel's
>     failings.

It is at least reasonably probable that appellant would have obtained
a better result if his trial attorney had objected to the introduction of the
evidence concerning the prior conviction on the two specific grounds
discussed here, i.e., that the prior conviction was not for a crime of moral
turpitude, and that the evidence concerning the job application, in light of
the prejudice of revealing the prior conviction, did not pass muster under
section 352. (*Strickland, supra*, 466 U.S. at pp. 693-695.)

The trial court engaged in lengthy discussions with trial counsel
about how and whether the prior conviction would come in, reflecting its
close consideration of the matter. (1RT 12-22; 5RT 1053-1070.) If trial
counsel had reminded the court of the law concerning the inadmissibility of

prior convictions that do not show moral turpitude, the trial court would not have decided to allow the impeachment of appellant with the conviction. Further, when the prosecution sought to introduce evidence of the prior conviction by way of the job application, if counsel had mentioned section 352 and argued all of the factors relevant under that statute, including the prejudice that would be caused by introducing a prior conviction for assault in an assault case, it is likely that the judge would have excluded the evidence.

As described more fully at pages 21 through 24 of the opening brief, the admission of the evidence was critical in this close case. The jury asked several questions and engaged in lengthy deliberations over a single count. The prosecutor stressed the prior conviction in his argument to the jury, and incorrectly stated that the prior conviction showed moral turpitude. (6RT 1281.) The nature of the prior conviction was particularly prejudicial in this case -- since it was similar to that in the case at trial, the jury was likely to believe "if he did it before he probably did so this time." (*People v. Beagle* (1972) 6 Cal.3d 441, 453.) Because defense counsel's failure to object led to the admission of highly prejudicial evidence, and because there are numerous indicia that the jury considered this to be a close case, it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings. (*People v. Fosselman* (1983) 33 Cal.3d 572, 584, citing *Pope, supra*, 23 Cal.3d at p. 425, and *Watson, supra*, 46 Cal.2d at p. 836; *Strickland v. Washington, supra*, 466 U.S. at pp. 693-695.) The conviction must be reversed.

## CONCLUSION

On the grounds asserted in section I, and on the grounds set out in the Opening Brief, appellant requests that the Court reverse the judgment in this case.

Date: September 18, 2014  Respectfully submitted,

          LAW OFFICES OF JOY MAULITZ

By: _____

   Joy A. Maulitz
   Attorney for Appellant
   WILLIAM ODESSA BROWN

**CERTIFICATE OF COMPLIANCE WITH**
**THE CALIFORNIA RULES OF COURT, RULE 8.360(b)**


I certify this document was prepared on a computer using Microsoft Word, and that, according to that program, this document contains 2,183 words.


Date: September 18, 2014          Respectfully submitted,

LAW OFFICES OF JOY MAULITZ



By: ___Joy A. Maulitz_____

Joy A. Maulitz

## PROOF OF SERVICE BY MAIL

Re: William Odessa Brown,   Court Of Appeal Case: H040734, Superior Court Case: F24663

I the undersigned, declare that I am employed in the County of Sonoma, California. I am over the age of eighteen years and not a party to the within entitled cause. My business address is 22 Alta Dr., Petaluma CA. On September 18, 2014, I served a copy of the attached Supplemental Appellant's Opening Brief on each of the parties in said cause by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in United States mail at Sonoma, California, addressed as follows:

Sixth District Appellate Program
SDAP
100 North Winchester Boulevard
Suite 310
Santa Clara, CA 95050

Office of the Attorney General SJ
San Jose AG
455 Golden Gate Avenue
Room 11000
San Francisco, CA 94102-7004

Anthony Robinson
Biggam Christensen and Minslof
2103 N. Pacific Ave.
Santa Cruz, CA 95060

District Attorney
701 Ocean St., Room 200
Santa Cruz, CA 95060

William Brown AS7822
SQSP
San Quentin, CA 94974

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 18th day of September, 2014.

_____
Eric Vanderville
(Name of Declarant)

_____
(Signature of Declarant)

PROOF OF SERVICE BY ELECTRONIC SERVICE

Re: William Odessa Brown, Court Of Appeal Case: H040734, Superior Court Case: F24663

I the undersigned, am over the age of eighteen years and not a party to the within entitled cause. My business address is 22 Alta Dr., Petaluma CA. On September 18, 2014 a PDF version of the Supplemental Appellant's Opening Brief described herein was transmitted to each of the following using the email address indicated or direct upload. The email address from which the intended recipients were notified is Service@GreenPathSoftware.com.

Court of Appeal, 6th District
Clerk of the Court
San Jose, CA 95113

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 18th day of September, 2014 at 11:01 Pacific Time hour.

Eric Vanderville

_____
(Name of Declarant)

_____
(Signature of Declarant)

# EXHIBIT D

ATTORNEY GENERAL-
OFFICE COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,**<br>Plaintiff and Respondent,<br>**v.**<br>**WILLIAM ODESSA BROWN,**<br>Defendant and Appellant. | Case No. H040734 |

Court of Appeal - Sixth App. Dist.
FILED
FEB 27 2015
DEPUTY

Santa Cruz County Superior Court, Case No. F24663
The Honorable Timothy R. Volkmann, Judge

# RESPONDENT'S BRIEF

9/4/2014 - AOB 7
DOCKETED
SAN FRANCISCO
MAR - 2 2015
By PM
No. SF2014408178

KAMALA D. HARRIS
Attorney General of California
GERALD A. ENGLER
Chief Assistant Attorney General
JEFF LAURENCE
Acting Senior Assistant Attorney General
RENE A. CHACON
Supervising Deputy Attorney General
JULIA Y. JE
Deputy Attorney General
State Bar No. 192746
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5567
Fax: (415) 703-5480
E-mail: Julia.Je@doj.ca.gov
*Attorneys for Respondent*

# TABLE OF CONTENTS

Page

Statement of the Case ........................................................................ 1

Statement of Facts ............................................................................. 1

    A.     Valente Ramirez ..................................................... 1

    B.     Alejandro Nieto ..................................................... 3

    C.     Jorge Soto ............................................................. 5

    D.     Miguel Zarate ....................................................... 6

    E.     George Marzan ...................................................... 7

    F.     Officer Bellville ..................................................... 8

    G.     Appellant's testimony ............................................ 8

Argument ......................................................................................... 10

  I.     The trial court properly admitted for impeachment
        purposes appellant's prior conviction for elder abuse
        and his employment application where appellant
        omitted his criminal history .......................................... 10

    A.     Background ............................................................ 11

    B.     Legal principles ..................................................... 12

    C.     Appellant's prior conviction for elder abuse was
         properly admitted for impeachment as a crime
         of moral turpitude ................................................. 13

    D.     Appellant's employment application was
         properly admitted for impeachment under
         Evidence Code section 352 ..................................... 19

    E.     No prejudice .......................................................... 20

    F.     No ineffective assistance of counsel ...................... 25

  II.    The one-year prior prison term enhancement should be
        stricken .......................................................................... 26

    A.     Background ............................................................ 26

    B.     The one-year enhancement should be stricken ......... 27

Conclusion ....................................................................................... 30

# TABLE OF AUTHORITIES

**Page**

CASES

*In re Jones*
(1996) 13 Cal.4th 552 ...............................................................25, 28, 29

*People v. Beagle*
(1972) 6 Cal.3d 441.......................................................................13, 18

*People v. Brandon*
(1995) 32 Cal.App.4th 1033...............................................................28

*People v. Brooks*
(1992) 3 Cal.App.4th 669.....................................................................16

*People v. Carter*
(2005) 36 Cal.4th 1114 .......................................................................25

*People v. Castro*
(1985) 38 Cal.3d 301..................................................................*passim*

*People v. Collins*
(1986) 42 Cal.3d 378...........................................................................13

*People v. Feaster*
(2002) 102 Cal.App.4th 1084.........................................................14, 16

*People v. Gonzales*
(1993) 20 Cal.App.4th 1607................................................................28

*People v. Green*
(1995) 34 Cal.App.4th 165..................................................................13

*People v. Gurule*
(2002) 28 Cal.4th 557 .........................................................................20

*People v. Heitzman*
(1994) 9 Cal.4th 189 ...........................................................................15

*People v. Jones*
(1993) 5 Cal.4th 1142 .........................................................................28

*People v. Ledesma*
    (1987) 43 Cal.3d 171.............................................................................25

*People v. Medina*
    (1988) 206 Cal.App.3d 986................................................................29

*People v. Mendoza*
    (2000) 78 Cal.App.4th 918................................................12, 13, 19, 26

*People v. Osband*
    (1996) 13 Cal.4th 622 ..........................................................................26

*People v. Partida*
    (2005) 37 Cal.4th 428 ..........................................................................20

*People v. Rodriguez*
    (1992) 5 Cal.App.4th 1398..................................................................16

*People v. Rowland*
    (1992) 4 Cal.4th 238 ............................................................................13

*People v. Sanders*
    (1992) 10 Cal.App.4th 1268................................................................16

*People v. Thomas*
    (1988) 206 Cal. App. 3d 689..................................................14, 15, 16

*People v. Watson*
    (1956) 46 Cal.2d 818............................................................................20

*People v. Wheeler*
    (1992) 4 Cal.4th 284 ............................................................................12

*People v. Wiley*
    (1994) 25 Cal.App.4th 159..................................................................28

*People v. Williams*
    (1999) 72 Cal.App.4th 1460................................................................14

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Strickland v. Washington*
(1984) 466 U.S. 668 ...................................................................25

**STATUTES**

Evidence Code
§ 352.....................................................................................*passim*
§ 785...........................................................................................12
§ 788..............................................................................12, 14, 15
§ 1101......................................................................................10, 11, 25
§ 1101, subd. (a) .......................................................................12
§ 1101, subd. (b) .......................................................................11

Penal Code
§ 245, subd. (a)(1) .......................................................................1
§ 246.3........................................................................................16
§ 273a.........................................................................................16
§ 273d.........................................................................................15
§ 368...........................................................................................15
§ 368, subd. (b)(1) .....................................................................15
§ 667, subd. (a) .............................................................27, 28, 29
§ 667, subd. (a)(1) ...................................................................1, 27
§ 667, subds. (b) - (i) ...................................................................1
§ 667.5.......................................................................................28
§ 667.5, subd. (b) ...........................................................1, 27, 28, 29
§ 1170.12, subds. (a)-(d) .............................................................1
§ 1385, subd. (b) .......................................................................27

Texas Penal Code
§ 22.04..................................................................................14, 17

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Sixth Amendment.......................................................................25

**OTHER AUTHORITIES**

CALCRIM No. 316 .....................................................................24

# STATEMENT OF THE CASE

On May 22, 2013, the Santa Clara County District Attorney filed an information charging appellant with assault with a deadly weapon by means likely to produce great bodily injury (Pen. Code[1], § 245, subd. (a)(1)). (1 CT 119.) The information alleged appellant had suffered two prior serious felony convictions (§ 667, subd. (a)(1)), which qualified as strikes (§§ 1170.12, subds. (a)-(d), 667, subds. (b) - (i)), and had served a prison prior term (§ 667.5, subd. (b)). (1 CT 120-121.)

On December 11, 2013, the jury found appellant guilty as charged. (2 CT 305; 8 RT 1753.) In a bifurcated trial, the court found true the allegations on the prior convictions and the prior prison term. (2 CT 307; 10 RT 2022.)

On February 28, 2014, the trial court sentenced appellant to a total term of 12 years in state prison. (10 RT 2265; CT 432-435).

On February 28, 2014, appellant filed a notice of appeal. (2 CT 434.)

# STATEMENT OF FACTS

## A.    Valente Ramirez

Valente Ramirez was 19 years old at the time of trial. (2 RT 272.) He was a student at a local college and also worked graveyard shift at Threshold Enterprises, a vitamin manufacturing company. (2 RT 274, 278.) Ramirez worked at Threshold with appellant, Miguel Zarate, George Soto, and Alejandro Nieto. (2 RT 279.) Ramirez's job was to drain the water from the machines into buckets, roll the buckets into the washroom, and pour out the water into the drain. (2 RT 282-283, 291.)

---

[1]   All statutory references are to the Penal Code, unless otherwise specified.

1

During the beginning of his shift at approximately 10:00 p.m., on April 29, 2013, Ramirez was emptying dirty buckets in the washroom. (2 RT 296-297, 321.) The washroom is typically used for washing buckets, barrels, and machines which are brought on wheels. (2 RT 297-298.) As a result, the washroom gets very wet. (2 RT 301.) Ramirez was wearing a hair net, a beard net, a face mask and a smock. (2 RT 306.)

When Ramirez entered the washroom, appellant was already working there. (2 RT 308.) There were also other workers at the wash station. (2 RT 309.) Ramirez would typically wait for the wash station to clear out and then dump his buckets in the floor drain. (2 RT 309, 312-313.) The wash station workers would then wash all the empty buckets. (2 RT 309.) Ramirez saw appellant washing buckets. (2 RT 314.) Ramirez was waiting patiently for his turn until the area was clear so he could do his job of draining his buckets. (2 RT 322.) Appellant told Ramirez that he would drain the bucket for him. (2 RT 323.) Ramirez responded that he would do his job and appellant should continue to do his job. (2 RT 323.) Appellant continued to insist that he would dump the water for Ramirez and they argued for a minute. (2 RT 324, 332.) Appellant raised his voice, saying, "do you have a problem with me?" (2 RT 333.) Then appellant moved to an open area, hit himself on the chest, in a manner that was challenging Ramirez to a fight. (2 RT 333-335.) Ramirez did not want to fight. (2 RT 339.) Ramirez testified that at the time Ramirez was 18 years old, appellant was much older and bigger than he was, and there was no reason to fight him. (2 RT 339.) Ramirez felt intimidated by appellant. (2 RT 341.) Ramirez, continued to say, "do your job and I'll do my job." (2 RT 342.) Appellant tried to get close to Ramirez's face, and was yelling at him. (2 RT 343-344.) Ramirez did not have anything in his hands, just a bucket full of water. (2 RT 345.)

Appellant reached into his pocket protector and pulled out an orange box cutter. (2 RT 345-346.) Appellant was about five feet away and swung the box cutter once at Ramirez's face. (2 RT 346-347.) The box cutter had a sharp, one-inch blade. (2 RT 354.) Although Ramirez used a box cutter for some parts of his job, he was not carrying a box cutter at that time. (2 RT 354-355.) When appellant swung the blade at Ramirez, Ramirez felt his face mask move. (2 RT 355.) Since Ramirez was not expecting the blade being swung at him, he did not move. (2 RT 358, 361.) Ramirez stayed still because he was not intending to fight and did not want to lose his job. (2 RT 363.) He did not threaten or challenge appellant. (2 RT 360.) Ramirez later saw a small cut below his lip. (2 RT 355.) Two workers grabbed Ramirez and took him outside. (2 RT 359.) One of the workers went to report the incident to the shift supervisor. (2 RT 359.) Ramirez then returned to his work station. (2 RT 361.)

When Ramirez went on his break, he threw his mask and beard net into the garbage as required before going on break. (2 RT 364.) After his break, Ramirez was called by his manager, George Marzen. (2 RT 369.) Ramirez told Marzen what happened during the incident. (2 RT 369.) Ramirez then went to the bathroom and saw a small cut below his lip. (2 RT 369.) Ramirez told Marzen about the cut and Marzen took a photo of it. (2 RT 369.) Ramirez did not need any stitches. (2 RT 370.)

**B. Alejandro Nieto**

Nieto was working at the graveyard shift at Threshold on April 29, 2013. (3 RT 506.) Nieto's job that night was to wash machines. (3 RT 508.) He rolled a machine into the washroom. (3 RT 509.) Ramirez came in with a water bucket. (3 RT 510.) The bucket was on a wheeled cart and full of water. (3 RT 510.) The washroom was already wet when Nieto came in. (3 RT 511.) Appellant was there washing buckets with a hose. (3 RT 516.) Nieto was using another hose to wash his machine. (3 RT

516.) Generally, workers who wash and use the hoses get wet so they wear water resilient clothing. (3 RT 517.)

When Nieto and Jorge Soto came into the washroom, appellant and Miguel Zarate were already there. (3 RT 520.) Soto was helping Nieto push in the machine. (3 RT 520.) Zarate was washing a fan. (3 RT 523.) Workers routinely empty buckets of water in the drain. (3 RT 524.) Ramirez went to dump a bucket into the drain where appellant was washing buckets. (3 RT 524.) Appellant pulled the bucket away from Ramirez and dumped the water. (3 RT 525, 562.) Nieto heard the two men talking but he could not understand since they were speaking in English. (3 RT 526.) Ramirez was talking to appellant and did not reach for the bucket. (3 RT 525.) Appellant's body and facial expressions were very angry. (3 RT 527.) Appellant walked out of the back door of the hose room. (3 RT 527.) He was about seven or eight feet from Ramirez. (3 RT 531.) Appellant then got into Ramirez's face, and challenged Ramirez to a fight by putting his hands up and gesturing, "let's fight." (3 RT 527-528.) Nieto was surprised and did not know what appellant was going to do. (3 RT 531.) Ramirez was just standing next to the drain and did not move from that spot. (3 RT 531-532.) Appellant appeared to be challenging Ramirez given his angry tone and hand movements. (3 RT 533.) Appellant was the aggressor. (3 RT 533.) He was moving in a semi-circle with his hands up like a boxer, looking at Ramirez. (3 RT 534.)

Zarate walked in the middle of appellant and Ramirez. (3 RT 537.) Appellant momentarily calmed down. (3 RT 537.) Appellant had an orange knife and got close to Ramirez. (3 RT 538.) Appellant swung the knife at Ramirez's face once, from right to left. (3 RT 538.) The blade was about three-quarters to an inch long. (3 RT 541, 547.) It was the box cutter usually carried by appellant. (3 RT 541.) Ramirez never moved from the spot where he was standing. (3 RT 538.) Ramirez did not fight or take a

swing. (3 RT 538.) When appellant aggressively swung the knife at Ramirez, Nieto did not see any blood. (3 RT 545.) The knife hit the face mask that Ramirez was wearing. (3 RT 545.) Zarate and Nieto got in between Ramirez and appellant. (3 RT 547.) Nieto pulled Ramirez out of the area. (3 RT 547.) The entire incident took place in seven or eight minutes. (3 RT 549.) Ramirez was taken to see the supervisor, George Marzen. (3 RT 549.)

### C. Jorge Soto

During the graveyard shift on April 29, 2013, Jorge Soto went into the wash room and appellant was there washing buckets. (3 RT 600.) Nieto, Zarate and Ramirez were also in the room. (3 RT 601-602.) Ramirez had come into the room to dump a dirty bucket in the drain. (3 RT 603.) Appellant who was at the wash station told Ramirez not to dump the water there. (3 RT 604.) Soto stated that it was Ramirez's job to dump the buckets. (3 RT 604.) Ramirez told appellant just to worry about his job and Ramirez would do his job. (3 RT 605.) The two men had a verbal exchange with their voices raised, and appellant began to get angry. (3 RT 606.) Appellant then said that he would do what he wants. (3 RT 606.) Ramirez did not move at all only putting out his arm as if saying, are you kidding. (3 RT 607.) Appellant stepped out the wash station and said, "do you wanna go?" challenging Ramirez to a fight. (3 RT 607-608.) Appellant reached into his smock to unzip it. (3 RT 610.) Ramirez did not do anything. (3 RT 611.) Soto did not recall appellant putting up his hands or hitting his chest. (3 RT 610.) Appellant was the aggressor. (3 RT 610.)

Workers at Threshold are issued a box cutter which they carry with them. (3 RT 612.) However, a box cutter is not needed to do the job in the wash room. (3 RT 613.) Soto heard Ramirez say something under his breath and appellant responded, "are you threatening me?" (3 RT 613, 643.) Soto did not hear anything threatening. (3 RT 613.) Ramirez was

standing there not moving. (3 RT 613.) Appellant got closer to Ramirez, suddenly pulled out a box cutter and swiped it at Ramirez's face. (3 RT 614.) It was very sudden and it took everyone in the room by surprise. (3 RT 614.) The blade touched Ramirez's face mask. (3 RT 616.) Soto did not see Ramirez move his head back or forth. (3 RT 629.) Soto did not see any blood. (3 RT 623.) Nieto and Zarate got in between appellant and Ramirez. (3 RT 624.) Nieto and Zarate took Ramirez outside and appellant remained in the wash room. (3 RT 626.) About 10 to 15 minutes later, Nieto returned and told Soto that their supervisor, George Marzen, wanted to talk to him. (3 RT 626.) Soto assumed that Nieto had reported the incident. (3 RT 627-628.) Soto told Marzen what had happened. (3 RT 628.) Soto stated that there was no power outage that night which required more buckets to be washed. (3 RT 630-631.)

**D. Miguel Zarate**

Miguel Zarate went into the wash room to wash tubes that evening. (4 RT 787-788.) Appellant looked angry. (4 RT 795.) Zarate noticed appellant being more aggressive. (4 RT 796.) Appellant challenged Ramirez to a fight. (4 RT 796.) Zarate kept on doing his job but could hear what has happening. (4 RT 796.) Ramirez told appellant that they should continue to do their own jobs. (4 RT 798.) Appellant got more aggressive and Ramirez stood in one spot during the encounter. (4 RT 799.) Appellant was moving in circles talking to Ramirez in a loud voice. (4 RT 803.) Zarate did not recall appellant put his hands up. (4 RT 803.) Appellant unzipped his smock and reached inside in an angry manner. (4 RT 804.) He made his way toward Ramirez and Ramirez, surprised that appellant was challenging him to a fight, questioned appellant incredulously, "do you want to fight me?" (4 RT 806-808.) Appellant pulled out a box cutter and swung the blade toward Ramirez's face, close enough to hit him. (4 RT 806, 809-810.) Ramirez moved his head back a

little. (4 RT 809.) Zarate could not recall if Ramirez had a face mask on but recalled him with a beard protector. (4 RT 810.) Zarate did not see any blood. (4 RT 811.) The workers watching were surprised and Nieto separated Ramirez and appellant (4 RT 811.) Ramirez never took a fighting stance and just stayed where he was standing. (4 RT 811.) Ramirez did not pull out a blade. (4 RT 812.) Nieto pulled Ramirez out of the area and everyone went back to work. (4 RT 812.) Zarate told appellant to calm down. (4 RT 813.) Zarate testified that appellant had been the aggressor during the incident. (4 RT 813.) He did not see if Ramirez had an injury on his face. (4 RT 818.) Some time later, Zarate spoke to his supervisor about the incident. (4 RT 816.)

### E.    George Marzan

George Marzan is a supervisor at Threshold. (5 RT 1006.) A technician, Mario Ortiz, reported to him that an incident occurred in the wash station. (5 RT 1008.) Within the next hour and a half, Marzan obtained information from Alejandro Nieto, Jorge Soto, Miguel Zarate and lastly, Valente Ramirez. (5 RT 1011-1012.) He did not speak with appellant that evening. (5 RT 1013.) During his interview with Ramirez, Ramirez was wearing a mask. (5 RT 1015.) Ramirez later retuned and showed Marzan a cut he had sustained. (5 RT 1031-1032.) Marzan took a photograph of a small one-and-a-half inch cut below Ramirez's lip with a trace of blood. (5 RT 1014.) Ramirez told Marzan that he had thrown away his face mask. (5 RT 1015.) The workers whom Marzan interviewed, particularly Ramirez, were reluctant to provide information about the incident because they were concerned about their jobs and did not want to point fingers at anyone. (5 RT 1039-1040.) Marzan told Ramirez that he had to write a report and Ramirez began opening up about the incident. (5 RT 1041.)

There had been a power outage earlier that day and continued through the graveyard shift which affected the wash room until midnight. (5 RT 1015-1016, 1023.) As a result, work in the washroom was backed up. (5 RT 1040.)

### F. Officer Bellville

Officer Bellville responded to a report of a battery from Threshold Human Resources director, Nancy Utley. (5 RT 1043.) Officer Bellville obtained a statement from Ramirez over the telephone at 8:30 a.m. (5 RT 1045.) Nieto also gave a statement to the police. (5 RT 1045.) Officer Bellville spoke to appellant on the telephone and the next day, met him at the police station. (5 RT 1046.) The officer observed that appellant was six feet tall and weighed about 200 pounds. (5 RT 1046.) Appellant had a moustache, no beard, and was 43 years old. (5 RT 1047-1048.) Appellant was arrested at that time. (5 RT 1047.)

### G. Appellant's Testimony

Appellant had been working at Threshold for about three months prior to the incident. (5 RT 1072.) He was hired through a temporary employment agency. (5 RT 1072.) Appellant became a permanent employee at Threshold a couple of days before the incident. (5 RT 1072.) As part of his sanitization crew duties, appellant was to wash and sanitize the buckets and keep different areas in the company clean. (5 RT 1074.) Sometimes the workers who brought buckets into the washroom would leave them there without dumping them so that appellant could clean them. (5 RT 1078-1079.) Appellant would tell them to leave the buckets there and workers would not have a problem with that since that meant less work for them to do. (5 RT 1079.)

When appellant arrived at work, he learned there was a power outage. (5 RT 1079.) Appellant's work area in the washroom was overloaded with

dirty buckets and machines. (5 RT 1081-1082.) He was washing buckets for at least 20 to 30 minutes when Ramirez came into the washroom. (5 RT 1084.) Appellant asked Ramirez to stop, and not to dump his dirty bucket at that moment because appellant had clean buckets at his wash station. (5 RT 1086.) Ramirez told appellant "you do your job, and I'll do my job." (5 RT 1087.) Appellant pulled the bucket from him and moved it out of the way. (5 RT 1097.) They raised their voices, and argued for about five to ten minutes. (5 RT 1087.) Appellant stepped out of the wash area and at one point hit his chest indicating "I've got this" and for Ramirez to leave his bucket. (5 RT 1088-1090.) Appellant denied raising his hands to fight Ramirez. (5 RT 1090.) He did not recall telling Ramirez, "do you wanna go?" (5 RT 1091.) However, Ramirez had asked appellant if he wanted to fight. (5 RT 1091.) Ramirez told appellant "to watch his back." (5 RT 1093.) Appellant felt apprehensive and nervous but took those words as a threat. (5 RT 1093, 1095.) The other workers, Nieto, Soto, and Zarate, were standing in the wash room looking at appellant. (5 RT 1095.) Appellant felt that they may be against him. (5 RT 1095.)

Appellant then opened his smock and took out his box cutter. (5 RT 1093.) He pulled out the blade and got in front of Ramirez. (5 RT 1093.) Appellant looked at Ramirez, told him directly, "I'm not the one you wanna play with," and waved the blade in his face. (5 RT 1094.) Appellant did not recall the blade touching appellant's mask. (5 RT 1094.) He was simply trying to fend off Ramirez. (5 RT 1094.) Appellant then backed up and put away his blade. (5 RT 1094.) Ramirez did not say anything and stepped back after appellant waved the blade in front of his face. (5 RT 1096, 1101, 1150.) Appellant watched as Zarate and Nieto escorted Ramirez out of the wash station. (5 RT 1094.) Appellant returned to work. (5 RT 1097.) No supervisors came to speak with appellant about the incident. (5 RT 1097.)

At trial, appellant testified that the blade was three or four inches from Ramirez's face. (5 RT 1108-1109.) However, appellant had told police the day after the incident that he had not come any closer than a foot or two to Ramirez. (5 RT 1109.) Appellant was 43 years old at the time of the incident. (5 RT 1113.) He admitted that he felt disrespected when Ramirez, who was 18 years old, did not listen to him. (5 RT 1122.) Appellant had been disrespected in front of other workers and in his work area. (5 RT 1123.) Appellant maintained that he did not intend to the blade to make contact with Ramirez's body. (5 RT 1150.)

Appellant admitted that in 2012, he had suffered a felony conviction in Texas for elder abuse. (5 RT 1106-1107.) He admitted that he did not list that conviction on his employment application to Threshold. (5 RT 1106.) Appellant, however, initialed the application, certifying that he had not knowingly withheld any information that might adversely affect his chances of employment. (5 RT 1106.)

Appellant explained that he first submitted an employment application to Manpower where he disclosed his prior Texas conviction. (5 RT 1149.) He believed Threshold had received the application from Manpower. (5 RT 1149.)

## ARGUMENT

I. **THE TRIAL COURT PROPERLY ADMITTED FOR IMPEACHMENT PURPOSES APPELLANT'S PRIOR CONVICTION FOR ELDER ABUSE AND HIS EMPLOYMENT APPLICATION WHERE APPELLANT OMITTED HIS CRIMINAL HISTORY**

Appellant argues that the trial court abused its discretion under Evidence Code section 1101 in admitting evidence of his prior conviction for elder abuse in Texas without finding it was a crime of moral turpitude. He maintains the offense was not a crime of moral turpitude for impeachment purposes. Appellant also claims that the court abused its

discretion in admitting evidence of his employment application at Threshold in which he failed to mention his convictions. He contends the evidence was substantially more prejudicial than probative. We disagree. The trial court properly admitted both the prior conviction and the evidence related to the employment application.

## A. Background

The defense moved in limine to exclude evidence of appellant's prior convictions, including a 1997 manslaughter conviction and a 2012 elder abuse conviction suffered in Texas. (1 CT 178.) The prosecution sought to admit the evidence of the prior convictions. (1 CT 184-191; 1 RT 13.) The trial court excluded the manslaughter conviction as remote in time and substantially more prejudicial than probative under Evidence Code section 352. (1 RT 12-13, 16-17.)

With respect to the 2012 elder abuse conviction in Texas, the prosecution argued that under Evidence Code section 1101, subdivision (b), appellant's prior assault was relevant to show appellant's motive or intent given his assaultive behavior against vulnerable and non-threatening persons (his over-65-year old father in the Texas case and a 19-year old teenager in this case). (1 RT 13.) The defense argued that the evidence was inadmissible as it did not show motive. (1 RT 21.)

In its tentative decision, the trial court indicated that if the elder abuse offense was a felony in Texas, it would admit the evidence under Evidence Code section 1101 given that it was close in time, involved assaultive behavior, and was relevant. (1 RT 17.) In weighing the evidence under Evidence Code section 352, the also court found that the evidence was not particularly time consuming, and not significantly more prejudicial than probative. (1 RT 18.) The prosecution added that the Texas conviction was also being sought for impeachment purposes if appellant testified at trial. (1 RT 21.)

Following the prosecution's case, the defense indicated that appellant would testify. (5 RT 1053.) The prosecution confirmed that the elder abuse conviction in Texas was a felony. (5 RT 1053.) The trial court adopted its tentative ruling and admitted the prior conviction for impeachment purposes. (5 RT 1053-1055.)

In addition, the prosecution sought to impeach appellant with his job application at Threshold where he failed to include his prior convictions where a question asked for his criminal history. Appellant had certified on the form that the information he provided was accurate. (5 RT 1067-1068.) The defense argued that the omission was not an intentional misrepresentation and that appellant had provided his criminal history to Manpower, the temporary employment agency, through which Threshold hired him. (5 RT 1068-1069.) The trial court admitted the employment application evidence for impeachment purposes. (5 RT 1069-1070.)

## B. Legal Principles

Character evidence is inadmissible to prove a person's conduct on a specified occasion. (Evid. Code, § 1101, subd. (a).) However, evidence of prior crimes or wrongs may be admitted when relevant to prove a fact at issue, such as intent or knowledge. (*Id.*, at subd. (b).) Additionally, evidence of prior felony convictions may be used to impeach the defendant's credibility, if the defendant testifies. (Evid. Code, §§ 785, 788.)

The admission of felony convictions or other past misconduct to impeach a witness is also subject to the trial court's discretion under Evidence Code section 352, which authorizes the court to exclude such evidence when its probative value on the issue of credibility is substantially outweighed by the risk of undue prejudice. (*People v. Castro* (1985) 38 Cal.3d 301, 313 (*Castro*); *People v. Wheeler* (1992) 4 Cal.4th 284, 295 (*Wheeler*); *People v. Mendoza* (2000) 78 Cal.App.4th 918, 925

(*Mendoza*).) In exercising that discretion the trial court must consider the four factors identified by the Supreme Court in *People v. Beagle* (1972) 6 Cal.3d 441, 453 (*Beagle*): (1) the extent to which the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of the prior conviction; (3) the similarity of the prior conviction to the charged offense; and (4) the likelihood the defendant will not testify out of fear of being prejudiced because of impeachment by the prior convictions. (*Mendoza, supra*, 78 Cal.App.4th at p. 925; see also *People v. Green* (1995) 34 Cal.App.4th 165, 182-183.)

The trial court's discretion in this regard is "as broad as necessary to deal with the great variety of factual situations in which the issue arises, and in most instances the appellate courts will uphold its exercise whether the conviction is admitted or excluded." (*People v. Collins* (1986) 42 Cal.3d 378, 389.) A trial court's ruling regarding the admissibility of a defendant's prior conviction for impeachment purposes is reviewed for abuse of discretion. (*People v. Rowland* (1992) 4 Cal.4th 238, 259, fn. 1.)

### C. Appellant's Prior Conviction for Elder Abuse Was Properly Admitted for Impeachment as a Crime of Moral Turpitude

Appellant claims that the trial court erred in admitting his 2012 prior conviction for elder abuse in Texas[2] for impeachment purposes without making a required finding that the offense was a crime of moral turpitude. Appellant argues the evidence should have been excluded because elder abuse is not a crime of moral turpitude. Appellant is mistaken.

---

[2] The trial court at times refers to the elder abuse conviction as the "2011 conviction." The incident where appellant struck his father with his hand occurred in 2011, however, appellant was convicted of the crime in 2012.

A witness's credibility, including that of a defendant who elects to testify, may be impeached by evidence of prior felony convictions, provided "the least adjudicated elements of the conviction necessarily involve moral turpitude." (Evid. Code, § 788; *Castro, supra*, 38 Cal.3d at p. 306; *People v. Feaster* (2002) 102 Cal.App.4th 1084, 1091 (*Feaster*).) Moral turpitude is not limited to dishonesty, but extends to crimes that involve other sorts of moral depravity and a "general readiness to do evil," and "includes conduct involving violence, menace, or threat." (*Castro, supra*, 38 Cal.3d at pp. 314-315; *People v. Williams* (1999) 72 Cal.App.4th 1460, 1464 (*Williams*).) The "least adjudicated elements" test from *Castro* means that "from the elements of the offense alone – without regard to the facts of the particular violation – one can reasonably infer the presence of moral turpitude." (*People v. Thomas* (1988) 206 Cal. App. 3d 689, 698 (*Thomas*); accord, *Feaster, supra*, 102 Cal.App.4th at p. 1091.)

Texas Penal Code section 22.04, criminalizes abuse to a child, elderly individual, or disabled individual, and provides in relevant part:

> (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:
>
> (1) serious bodily injury;
>
> (2) serious mental deficiency, impairment, or injury; or
>
> (3) bodily injury.

Under the Texas statute, the act can be done intentionally, knowingly, recklessly, or with criminal negligence. (Tex. Pen. Code, § 22.04.)

Similarly, in California, section 368[3] makes it a felony to willfully cause or permit an elder or dependent adult to suffer unjustifiable physical pain or mental suffering likely to produce great bodily harm or death. (§ 368.) The statute may be applied to a wide range of abusive situations, including within its scope both active, assaultive conduct, as well as passive forms of abuse such as extreme neglect. (See *People v. Heitzman* (1994) 9 Cal.4th 189, 197 (*Heitzman*).) Like the purpose underlying the felony child abuse statute from which section 368 derives, the provision was enacted in order to protect the members of a vulnerable class from abusive situations in which serious injury or death is likely to occur. (*Id.* at p. 203.)

Here, from the least adjudicated elements of elder abuse under Texas law and "without regard to the facts of the particular violation one can reasonably infer the presence of moral turpitude." (Evid. Code, § 788; *Thomas, supra*, 206 Cal.App.3d at p. 698.) Indeed, the offense under the Texas statute involves a "general readiness to do evil" (*Castro, supra*, 38 Cal.3d at p. 314), as it involves abuse of a vulnerable class of victims including children, elderly, and disabled individuals. Domestic violence and child abuse under section 273d, as crimes against vulnerable persons,

---

[3] Section 368, subdivision (b)(1) provides in relevant part: "Any person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured, or willfully causes or permits the elder or dependent adult to be placed in a situation in which his or her person or health is endangered, is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed six thousand dollars . . ., or by both that fine and imprisonment, or by imprisonment in the state prison for two, three, or four years."

have been held to be crimes necessarily involving moral turpitude given the increased protection and concern which society affords these victims. (*People v. Rodriguez* (1992) 5 Cal.App.4th 1398, 1402 (*Rodriguez*) [domestic violence]; *People v. Brooks* (1992) 3 Cal.App.4th 669, 672 [corporal punishment against a child].)

Contrary to appellant's argument, the fact that elder abuse can possibly be committed through recklessness or criminal negligence does not prevent a finding that the prior conviction is a moral turpitude crime for purposes of impeachment. Appellant relies on *People v. Sanders* (1992) 10 Cal.App.4th 1268, 1274-1275 (*Sanders*), which held that child endangerment under section 273a does not involve moral turpitude because its least adjudicated elements required wholly passive conduct unaccompanied by criminal intent. The *Sanders* court determined that the least adjudicated elements for a section 273a violation were (1) care or custody of a child by the defendant; (2) circumstances likely to produce great bodily harm or death; and (3) criminal negligence in permitting the child to be placed in a situation endangering the child's person or health. (*Sanders, supra*, 10 Cal.App.4th at p. 1273.) The reasoning in *Sanders* should not be applied here given that the least adjudicated elements for elder abuse are not limited to wholly passive conduct. The court in *Thomas, supra*, 206 Cal.App.3d at 698, held that *Castro* did not intend "to preclude the use of a prior conviction for the purpose of impeachment if there is any conceivable set of facts under which the offense could have been committed free of moral blame would mean that no prior conviction could ever be used for impeachment." In *Feaster, supra*, 102 Cal.App.4th at p. 1093, the court found that grossly negligent discharge of a firearm in violation of section 246.3 was a crime of moral turpitude because it involves an affirmative act committed with gross negligence to the degree that it could result in injury or death.

In this case, the Texas elder abuse statute criminalizes both an affirmative act that is done intentionally, knowingly or recklessly, or with criminal negligence and an *omission* that is carried out *intentionally*, *knowingly*, or *recklessly*. The statute provides, in relevant part: "A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual serious bodily injury . . . " (Tex. Pen. Code, § 22.04.) Based on the minimum statutory elements, the omission must be accomplished intentionally, knowingly, or recklessly. Such an omission is arguably, not wholly passive conduct unaccompanied by criminal intent but involves moral deficiency. As such, appellant's prior conviction for elder abuse in Texas based on the least adjudicated elements is a crime of moral turpitude which was properly admitted as impeachment evidence.

Appellant further argues that the trial court failed to make an explicit finding on whether elder abuse involved moral turpitude when it admitted the prior conviction for impeachment. However, the trial court found the prior conviction admissible under the applicable law, reasoning as follows:

> So [appellant] is going to testify. Let's talk about the issue of his prior convictions. The Court has had the opportunity to review the case law cited by Counsel. And I believe the case law supports the evaluative process that the Court went through in making a determination as to the admissibility or lack thereof of these convictions.

> In looking at [*People v. Burns* (1987) 189 Cal.App.3d 734 (*Burns*)], the Appellate Court opined that the trial court needed to exercise [discretion] with respect to the admission of the prior conviction for impeachment purposes and to determine prejudice. On page 735 of the [*Burns*] opinion, the Court went through the factors [that] the trial court is to review making a determination as to admissibility. And the Court has indeed gone through those factors.

I also reviewed [*People v. Castro, supra,* 38 Cal.3d 301]. And on page 315 the reviewing Court talks about the potential admissibility of convictions including those that are for prior assaults.

In looking at the 2011 conviction, I do feel that it is admissible and should be allowable in an examination concerning [appellant's] testimony in light of the fact that it is not remote in time. It does, based upon the information that I've received, relate to a felony conviction. And it relates to assaultive behavior, which arguably is similar to what we're dealing with in this case. I do not find it significantly more prejudicial than probative. I do not find that it's going to be time consuming or unduly time consuming to go in that issue. And I do believe it's appropriate to go into that issue in all of the circumstances presented in this manner.

(5 RT 1053-1055.) Based on this record, it appears the trial court made an implicit finding that elder abuse was a crime of moral turpitude and as such, proceeded to evaluate the evidence in exercising its discretion. Indeed, the court referenced *Castro, supra,* 38 Cal.3d at pp. 315-317, a case which discussed at length impeaching credibility of witnesses with prior convictions involving moral turpitude. *Castro* instructed that a "witness'[s] prior conviction should only be admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude. We reemphasize that even such admissibility is subject to trial court discretion under section 352." (*Castro, supra,* 38 Cal.3d at p. 317.) As reflected in its decision, the trial court here followed the guidance in *Castro.*

The trial court indicated that it considered the relevant legal factors in evaluating whether to admit the prior conviction for impeachment purposes. The court articulated two of the four *Beagle* factors (*Beagle, supra,* 6 Cal.3d at p. 453), that the prior was not remote in time and there was similarity between the prior and current crime as they involved assaultive behavior. Although the trial court is required to consider the *Beagle*

factors, the factors "need not be rigidly followed." (*Mendoza, supra,* 78 Cal.App.4th at p. 925.) The court also mentioned two factors under Evidence Code section 352, that the prior was not significantly more prejudicial than probative and that the evidence would not be unduly time consuming. Given the court's implicit finding of elder abuse as a crime of moral turpitude and its proper exercise of discretion in admitting the prior conviction for impeachment, appellant's claim challenging the evidence should be rejected.

### D. Appellant's Employment Application Was Properly Admitted for Impeachment Under Evidence Code section 352

The prosecution sought to admit for impeachment purposes, evidence that appellant was not forthcoming on his employment application at Threshold which he had submitted several days prior to the incident with Ramirez. (5 RT 1068.) Appellant had been hired several months earlier through a temporary employment agency, Manpower. Appellant left blank a question on the Threshold job application asking whether he had been convicted of a criminal offense, felony or serious misdemeanor. He then initialed the application where it stated "I hereby certify that I have not knowingly withheld any information that might adversely affect my chance of employment, and the answers given by me are true and correct to the best of my knowledge." (5 RT 1067-1069.) The court found that the evidence was admissible to impeach appellant's credibility:

> I'm going to respectfully disagree [with defense counsel] in light of what is initialed on page 3 of the third to last paragraph where it indicates that he has not knowingly withheld information that might adversely affect his chances for employment, and the answers are indeed true and correct. I think that is subject to cross-examination for impeachment purposes. This statement that you offered, [defense counsel], is absolutely fine, can certainly be offered as argument concerning the weight of this evidence. But the fact that we have this

document that is so close in time to what we're dealing with here and specifically does not reference what we all were convictions that indeed were in existence prior [to] that point.

(5 RT 1069.)

Appellant contends that the trial court failed to analyze the evidence under Evidence Code section 352 and that it should have been excluded as substantially more prejudicial than probative. We disagree. The trial court concluded that the evidence that appellant had omitted information about his criminal convictions on the Threshold application and then certified that he had not knowingly withheld information affecting his chances of employment was directly relevant to his credibility. The court also found that the evidence was close in time to the events at issue. From these findings, it can be reasonably inferred that the court engaged in an analysis under Evidence Code section 352 to admit the evidence for purposes of impeachment. Thus, appellant's claim is without merit.

### E.   No Prejudice

Even if it was error for the trial court to have admitted the challenged evidence, appellant suffered no prejudice. State law error in admitting evidence is generally subject to the prejudice standard articulated in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*People v. Partida* (2005) 37 Cal.4th 428, 439 (*Partida*).) Accordingly, when a trial court erroneously admits a defendant's prior felony conviction to impeach the defendant's testimony, the reviewing court applies the *Watson* standard. (See *People v. Gurule* (2002) 28 Cal.4th 557, 609 (*Gurule*); *Castro, supra*, 38 Cal.3d at pp. 318-319.) Under the *Watson* standard, reversal is required only if "it is reasonably probable the verdict would have been more favorable to the defendant absent the error." (*Partida, supra*, 37 Cal.4th at p. 439, citing *Watson, supra*, 46 Cal.2d at p. 836.)

Here, it is not reasonably probable that the jury would have found appellant not guilty of the charge absent the admission of his prior conviction for elder abuse and the evidence related to his employment application. As an initial matter, the prior conviction evidence was highly sanitized and no facts underlying the actual offense were presented to the jury. Appellant was simply questioned, "Now, isn't it true that you suffered a conviction in Texas for elder abuse?" to which he answered, "Yes." (5 RT 1106.) As such, the evidence was not highly damaging.

In any event, there was other properly admitted evidence which established appellant had committed the offense. For the jury to find appellant guilty of assault with a deadly weapon or force likely to produce great bodily injury, it had to find that:

> (1) The defendant did act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person;
>
> (2) The defendant did act willfully;
>
> (3) When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;
>
> (4) When the defendant acted, he had the present ability to apply force with a deadly weapon other than a firearm to a person; and
>
> (5) The defendant did not act in self-defense.

(2 CT 258.) The jury was further instructed that "someone commits an act *willfully* when he or she does it willfully or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage." (2 CT 258.) The prosecution was not required to prove appellant actually touched or injured Ramirez, or that appellant actually intended to use force against Ramirez when he acted. (2 CT 258.)

The weight of the evidence was against appellant. Ramirez testified that appellant swung the box cutter with an open blade at Ramirez's face, Ramirez felt his face mask move, and soon after, he discovered a small cut below his lip. Ramirez had not threatened or challenged appellant. The testimonies of Nieto, Soto, and Zarate strongly corroborated Ramirez's version of the incident. The three witnesses consistently testified that appellant was the aggressor who challenged Ramirez to a fight, and who suddenly swung the box cutter at Ramirez's face. None of the witnesses heard Ramirez threaten appellant, provoke him in any manner, or saw Ramirez move from where he was standing.

This evidence also significantly damaged appellant's credibility. Appellant's defense was that he was defending himself against Ramirez who told him, "watch your back." Appellant maintained that he only swung the blade to fend off Ramirez, not to injure him. Appellant's testimony that he felt threatened by 19-year old Ramirez and the three other workers in the wash room was not credible. Appellant ultimately admitted that he felt disrespected by the young man, particularly in front of the other workers and in his own work area. In light of all the evidence, the jury would have still convicted appellant of assault with a deadly weapon even absent the evidence of appellant's prior conviction and employment application.

Appellant claims that this was a close case because the jury sent two notes during deliberation asking for clarification on the requisite intent for the crime and requesting a read-back of certain testimony. Appellant contends that since the jury was equivocal, it is likely that the evidence of appellant's prior conviction for a similar assault in the past improperly swayed the jury to find him guilty of the current crime. Appellant is mistaken. The jury's two questions and the court's responses were as follows:

Jury Inquiry No. 1:

With regards to [CALCRIM No.] 875 # 3 how is intent to be considered. In order to convict must the jury believe the defendant intended to commit the act of assault with a deadly weapon.

Court's Response:

Per instruction 250, this is a general intent crime. Per instruction 875 someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain an advantage. The People are not required to prove that the defendant actually intended to use force against someone when he acted.

Jury Inquiry No. 2:

We, the jury request the testimony from the following individuals:
Valente Ramirez
A. Nieto
Jorge Soto
Miguel Zarate
William Brown.

Specifically, we request related to:
1) Was the mask touched by the blade, if not how close did it pass.
2) Did Valente Ramirez move backwards including head movement during or after swipe of blade.
3) What was Mr. Brown's initial proximity to Valente, once he moved out of the wash room.

Court's Response:

Our reporter will review approximately 465 pages of trial transcript. This may take the balance of the afternoon. Please continue your deliberations.

(2 CT 302-303.) Contrary to appellant's argument, the jury's two questions do not suggest that they were so unconvinced about appellant's guilt that the jury likely relied on his prior conviction to find appellant acted in

conformity with his assaultive character in this instance. The record shows that the court properly instructed the jury on the general intent required for the crime, specifically reminding the jury that the prosecution did not have to prove that appellant intended to break the law or that he actually intended to use force against Ramirez when he acted. The read-back of the evidence on whether the blade touched the mask, whether Ramirez moved his body back, and how close was appellant to Ramirez when the assault took place, reinforced to the jury facts supporting appellant's guilt.

Moreover, the jury was instructed with CALCRIM No. 316 on the limited use of prior convictions and crimes in evaluating a witness's credibility. The instruction told the jury:

> If you find that a witness has been convicted of a felony, you may consider that fact in evaluating the credibility of the witness's testimony. The fact of a conviction does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable.

> If you find that a witness has committed a crime or other misconduct, you may consider that fact in evaluating the credibility of the witness's testimony. The fact that a witness may have committed a crime or other misconduct does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable.

(2 CT 251.) In light of the evidence and the instructions given to the jury, appellant suffered no overwhelming prejudice from the admission of his prior conviction and employment application evidence. Given that the trial court did not abuse its discretion in admitting the challenged evidence, appellant's claim that his federal rights to due process and a fair trial also necessarily fails.

### F.   No Ineffective Assistance of Counsel

Appellant raises an ineffective assistance of counsel claim in his supplemental opening brief. Appellant contends that to extent this Court finds defense counsel failed to object to the admission of the prior conviction or the employment application evidence and thereby forfeited these claims that counsel provided ineffective assistance of counsel. Appellant's claim should be rejected.

The Sixth Amendment right to the assistance of counsel is the right to the effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 686.) A convicted defendant claiming counsel's assistance was so ineffective as to require a reversal of conviction must show two things. First, he must show that counsel's performance was deficient, falling below an objective standard of reasonableness. (*Id.* at p. 669.) Second, he must show that the deficient performance prejudiced the defense, depriving him of a fair trial. (*Id.* at p. 687.) He must show a reasonable probability that, but for counsel's errors, the result would have been different. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.)

There is a presumption that counsel's performance was competent and can be explained as a matter of sound trial strategy. (*People v. Carter* (2005) 36 Cal.4th 1114, 1189 (*Carter*).) The reasonableness of a tactical trial decision will depend on whether it was "an informed one, that is, whether it was preceded by adequate investigation and preparation." (*In re Jones* (1996) 13 Cal.4th 552, 564-565.)

In this case, defense counsel filed a motion in limine and orally objected to the admission of the elder abuse conviction for impeachment purposes under Evidence Code sections 352 and 1101. (1 CT 178; 1 RT 21.) Although counsel did not specifically object on the ground that the offense was not a crime of moral turpitude, such failure did not constitute deficient performance. As discussed above, elder abuse is a crime

involving moral turpitude. Thus, counsel acted reasonably in not objecting on that basis. "It is well settled that counsel is not ineffective in failing to make an objection when the objection would have likely been overruled by the trial court." (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 927, citing *People v. Osband* (1996) 13 Cal.4th 622, 678.) Moreover, it is not reasonably probable that absent counsel's purported error that appellant would have obtained a more favorable result. As discussed above, the jury would have still convicted appellant based on the consistent testimonies of Ramirez and the three other witnesses which thoroughly undermined appellant's self-defense theory. Thus, appellant's claim must be rejected.

With respect to the employment application evidence, the record shows that appellant objected to its admission on the basis of Evidence Code section 352. (5 RT 1068-1069.) Counsel argued to the court that the omission of information was not a misrepresentation, and that appellant had disclosed his prior convictions on the job application to Manpower which presumably provided it to Threshold. The trial court, nevertheless, found the evidence admissible. As such, there is no basis for appellant to complain counsel was ineffective.

## II.   THE ONE-YEAR PRIOR PRISON TERM ENHANCEMENT SHOULD BE STRICKEN

### A.   Background

The trial court found true the allegations that appellant had suffered two prior serious felony convictions in April 1998 in Santa Cruz County Superior Court case No. S7-09413, and as a result, had served a prison term. (9 RT 2021.) Appellant had been convicted of voluntary manslaughter of his wife, and assault with force likely to result in great bodily injury of her daughter. (2 CT 319, 313-315.) The two offenses arose from an incident where appellant threw gas on his wife who was in a trailer home in the presence of her teenage daughter. Appellant's wife

purportedly committed suicide by lighting herself on fire. The daughter had been splashed by some of the gas and exposed to danger when the trailer burned. (9 RT 2005-2006; 2 CT 356.) The two convictions resulted in a single prison term of 13 years. (2 CT 324.)

At sentencing, the trial court imposed a five-year enhancement for the felony priors under section 667, subdivision (a), and a one-year enhancement for the prior prison term under section 667.5, subdivision (b). (10 RT 2265.)

## B.  The One-Year Enhancement Should Be Stricken

Appellant argues that the trial court was not authorized to impose a five-year prior serious felony enhancement (§ 667, subd. (a))[4] in addition to one-year prison prior enhancement (§ 667.5, subd. (b))[5] based on a single

---

[4]  Section 667, subdivision (a) (1) provides:

In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively.

[5]  Section 667.5, subdivision (b) provides in relevant part:

Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony . . .

(continued...)

27

prior case in which there had been two convictions. Appellant contends that the one-year enhancement should be stricken because the enhancements were based on the same conduct – appellant dousing the trailer with gas where his wife ultimately lit herself on fire and where some of the gas splashed on her daughter placing the girl at risk of injury. We agree.

In *People v. Jones,* (1993) 5 Cal.4th 1142, 1152, the Supreme Court held that in enacting what is now subdivision (a) of section 667, the voters did not intend that a defendant's sentence would be enhanced for both a prior conviction and the resulting prison term under Penal Code section 667.5.

A section 667, subdivision (a) enhancement applies to a prior serious felony conviction only where the prior conviction was suffered "on charges brought and tried separately." Similarly, section 667.5, subdivision (b) enhancement applies only where a "prior separate prison term [was] served" for a violent felony conviction. In certain situations, not applicable here, both enhancements may be imposed where prior convictions were brought and tried separately but sentenced together. (See *People v. Wiley* (1994) 25 Cal.App.4th 159, 164 [*Jones* did not preclude imposition of section 667, subdivision (a) enhancement based on two of three burglary counts and imposition of section 667.5, subdivision (b) enhancement based on third burglary count where all three burglary counts had been charged in a single information and concurrent prison terms were imposed]; *People v. Brandon* (1995) 32 Cal.App.4th 1033, 1055 ["splitting the priors" can support both enhancements]; *People v. Gonzales* (1993) 20 Cal.App.4th

---

(…continued)

28

1607, 1611 [both enhancements may be imposed where prior convictions were brought and tried separately but sentenced together].)

In *People v. Medina* (1988) 206 Cal.App.3d 986, 989-990, the court held the imposition of both enhancements was appropriate because "a single previous prison commitment for two or more serious felony offenses may serve as the basis for sentence enhancements" under both section 667, subdivision (a) and section 667.5, subdivision (b), if the court does not use the same underlying facts "to twice enhance the defendant's sentence." In other words, both enhancements can be imposed where the underlying crimes used for each enhancement were separate and distinct.

Here, the prosecution had requested that the one-year enhancement be based on the assault conviction and the five-year enhancement be based on the voluntary manslaughter conviction. (2 CT 342.) However, "splitting the priors" was not permissible under the given circumstances. The prior convictions for voluntary manslaughter and assault had been brought and tried jointly in one case, No. S7-09413, were based on the same underlying facts, and resulted in one prison term. Therefore, under *Jones*, the one-year enhancement should be stricken.

# CONCLUSION

Accordingly, respondent respectfully requests that the one-year enhancement be stricken, and the judgment, be otherwise affirmed.

Dated:  February 26, 2015      Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
GERALD A. ENGLER
Chief Assistant Attorney General
JEFF LAURENCE
Acting Senior Assistant Attorney General
RENE A. CHACON
Supervising Deputy Attorney General


JULIA Y. JE
Deputy Attorney General
Attorneys for Respondent

SF2014408178

## CERTIFICATE OF COMPLIANCE

I certify that the attached RESPONDENT'S BRIEF uses a 13-point Times New Roman font and contains 9,032 words.

Dated: February 26, 2015

KAMALA D. HARRIS
Attorney General of California

JULIA Y. JE
Deputy Attorney General
Attorneys for Respondent

# DECLARATION OF SERVICE BY U.S. MAIL

Case Name: **People v. Brown**
No.: **H040734**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On February 26, 2015, I served the attached **RESPONDENT'S BRIEF** by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Joy Abigail Maulitz
Attorney at Law
Law Offices of Joy A. Maulitz
P.O. Box 170083
San Francisco, CA 94117

County of Santa Cruz
Main Courthouse
Superior Court of California
701 Ocean Street
Santa Cruz, CA 95060-4086

The Honorable Jeffrey Rosell
Fomer District Attorney
Santa Cruz County District Attorney's Office
County Government Center
701 Ocean Street, Room 200
Santa Cruz, CA 95060

Attn: Executive Director
Sixth District Appellate Program
100 North Winchester Blvd., Suite 310
Santa Clara, CA 95050

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on February 26, 2015, at San Francisco, California.

| | |
|---|---|
| Tan Nguyen | _(signature)_ |
| Declarant | Signature |

SF2014408178
41222247.doc

# EXHIBIT E

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM ODESSA BROWN,<br><br>    Defendant and Appellant. | No. H040734<br><br>Santa Cruz County<br>Superior Court<br>No. F24663 |

ON APPEAL FROM A JUDGMENT OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA, COUNTY OF SANTA CRUZ

HONORABLE TIMOTHY R. VOLKMANN, JUDGE PRESIDING

**APPELLANT'S REPLY BRIEF**



DOCKETED
SAN FRANCISCO
MAR 20 2015
By CICM RED ALVARADO
No.

SF2014408178

Joy A. Maulitz
(Cal. Bar No. 111833)
LAW OFFICES OF JOY A.
    MAULITZ
Post Office Box 170083
San Francisco, CA. 94117
(415) 680-8046
joysf@sbcglobal.net

Attorney for Appellant
WILLIAM ODESSA BROWN

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | No. H040734 |
| Plaintiff and Respondent, | |
| v. | Santa Cruz County Superior Court No. F24663 |
| WILLIAM ODESSA BROWN, | |
| Defendant and Appellant. | |

ON APPEAL FROM A JUDGMENT OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA, COUNTY OF SANTA CRUZ

HONORABLE TIMOTHY R. VOLKMANN, JUDGE PRESIDING

**APPELLANT'S REPLY BRIEF**

Joy A. Maulitz
(Cal. Bar No. 111833)
LAW OFFICES OF JOY A.
    MAULITZ
Post Office Box 170083
San Francisco, CA. 94117
(415) 680-8046
joysf@sbcglobal.net

Attorney for Appellant
WILLIAM ODESSA BROWN

# TABLE OF CONTENTS

ARGUMENT ................................................................. 1

I.   THE ADMISSION OF APPELLANT'S PRIOR CONVICTION
     WAS PREJUDICIAL ERROR............................................. 1


II.  RESPONDENT AGREES THAT THE TRIAL COURT
     IMPROPERLY IMPOSED TWO DIFFERENT ENHANCEMENTS
     FOR THE SAME PRIOR CASE........................................... 5

# TABLE OF AUTHORITIES
## CASES

*People v. Beagle*
       (1972) 6 Cal.3d. 441 ...............................................  5

*People v. Brooks*
       (1992) 3 Cal.App.4th 669 ...........................................  2

*People v. Castro*
       (1985) 38 Cal.3d 301 ..............................................2-3

*People v. Clair*
       (1992) 2 Cal. 4th 629 ............................................. 4

*People v. Feaster*
       (2002) 102 Cal.App.4th 1084 ........................................ 3

*People v. Rodriguez*
       (1992) 5 Cal.App.4th 1398 .......................................... 2

*People v. Thomas*
       (1988) 206 Cal.App.3d 689...........................................  3

*People v. Williams*
       (1999) 72 Cal.App.4th 1460 .........................................  3

## STATUTES

Evidence Code section 352 ....................................................... 4

Penal Code section 667.5, subdivision (b) ......................................... 5

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM ODESSA BROWN,<br><br>Defendant and Appellant. | No. H040734<br><br>Santa Cruz County<br>Superior Court<br>No. F24663 |

## ARGUMENT

## I.  THE ADMISSION OF APPELLANT'S PRIOR CONVICTION WAS PREJUDICIAL ERROR.

The trial court allowed the introduction of evidence that appellant had been convicted of a previous assault on an elder without considering whether the offense was a crime of moral turpitude; it was not. Moreover, it was error to admit the evidence by way of appellant's representations and/or omissions on a job application, because the probative value of the evidence was minimal and the potential for prejudice was great. The admission of the damaging evidence concerning a prior assaultive conviction was prejudicial in a close case, in which the jury had numerous questions and engaged in lengthy deliberations concerning a single count. The admission of the evidence requires reversal.

Respondent acknowledges that the California statute similar to the Texas statute concerning elder abuse "may be applied to . . . passive forms of abuse such as extreme neglect." (RB at p. 15.) Yet respondent argues that the Texas conviction for elder abuse was a crime of moral turpitude, claiming that the Texas statute involves a "general readiness to do evil, as it

involves abuse of a vulnerable class of victims including children elderly and disabled individuals." (RB at p. 15, internal quotation marks and citation omitted.) Respondent goes on to discuss cases in which domestic violence and child abuse have been held to be crimes necessarily involving moral turpitude given the concern society extends to such vulnerable victims. (*People v. Rodriguez* (1992) 5 Cal.App.4[th] 1398; *People v. Brooks* (1992) 3 Cal.App.4[th] 669.)

Respondent errs by confusing the type of victim that is protected by these statutes with the actual test concerning use of the crime for impeachment, that is, whether the least adjudicated elements of the crime involve moral turpitude. (*People v. Castro* (1985) 38 Cal.3d 301. 306.) The decisions cited by respondent are based on the type of conduct that constituted the least adjudicated elements of the offense – in particular, whether it was willful or with the intent to injure.

Thus in *People v. Rodriguez, supra,* 5 Cal.App.4[th] 1398, one of the cases cited by respondent (RB at p. 16), the Court examined whether inflicting corporal injury on a spouse involved moral turpitude. That statute punishes anyone who "willfully inflicts . . . corporal injury resulting in a traumatic condition" on a spouse or cohabitant. The Court found that moral turpitude was involved in any violation of the statute because it had to be violated willfully and with intent to injure. (*Id.,* at p. 1402.)

Similarly in *People v. Brooks, supra,* 3 Cal.App.4[th] 669 (cited in RB at p. 16), the Court considered whether corporal punishment of a child resulting in a traumatic condition was an offense of moral turpitude. The statute was similar to that discussed in *People v. Rodriguez, supra*; it addressed "[a]ny person who willfully inflicts upon any child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition." (*Id.,* at p. 671.) The Court found that when cruel or inhuman corporal punishment of a child is "done purposely or willingly," it necessarily

involves moral turpitude and thus can be used for impeachment. (*Id.* at p. 672.)

The rationale developed in these case simply does not apply here. The Texas statute does not require willful or purposeful action, and may be violated by omission. One cannot find "a general readiness to do evil" where the least adjudicated elements of the offense do not involve "doing" anything at all. (*People v. Castro, supra,* 38 Cal.3d at pp. 314-315; RB at p. 14.)

Respondent also relies upon the holding in *People v. Feaster*, in which the Court of Appeal found that grossly negligent discharge of a firearm was an act of moral turpitude. (*People v. Feaster* (2002) 102 Cal.App.4[th] 1084; RB at pp. 14, 16.) But the *Feaster* Court expressly relied upon the fact that the discharge of a firearm, in contrast to passive crimes, "is comprised of an affirmative act committed with gross negligence." (*Id.,* at p. 1093.) The statute at issue here does not require any affirmative act, but can be violated by omission.

Similarly, in *People v. Thomas* (1988) 206 Cal.App.3d 689, the Court of Appeal found that assault with a deadly weapon was a crime of moral turpitude because the statute requires an intentional act with a deadly weapon, the completion of which would probably result in injury to another. (*Id.,* at p. 700.) No intentional act is required by the statute at issue here, nor is a deadly weapon one of the least adjudicated elements.

In *People v. Williams* (1999) 72 Cal.App.4[th] 1460, also cited by respondent, the court considered whether a conviction of resisting an executive officer by means of force or violence (Penal Code section 69) was an act of moral turpitude. The court found that a violation of the statute "<u>always</u> requires force, menace or threats," and therefore constituted moral turpitude under the least adjudicated elements test. (*Id.,* at pp. 1464-1465,

emphasis added.) By contrast, the statute in question here does not require force, menace, or threats; in fact, it may be violated by omission alone.

Respondent has not cited a single case in which a court has found moral turpitude in an act committed solely by omission, be it intentional, reckless or negligent. The admission of the prior conviction for elder abuse was error.

Further, evidence of the prior conviction was introduced improperly by way of an employment application that appellant submitted to his employer. The job application should not have been admitted under Evidence Code section 352, and the trial court did not engage in a proper analysis pursuant to section 352. Contrary to the inferences respondent attempts to draw, the trial court simply did not address the relative probative value and or the danger of undue prejudice related to the evidence. "Of course, on a motion invoking Evidence Code section 352 the record must affirmatively show that the trial judge did in fact weigh prejudice against probative value ... " (*People v. Clair* (1992) 2 Cal. 4th 629, 660, internal quotes and citations omitted.) The trial court's remarks make clear only that it was considering admitting the application for impeachment purposes – the fact that the application was submitted close in time to the alleged offense, and that it related to credibility – but not that the court considered its probative value or its potential for undue prejudice. (5RT 1053-1055.) The application was improperly admitted.

The admission of evidence of the prior conviction was prejudicial. Respondent fails to address the argument in the Opening Brief regarding the closeness of the case with regards to whether there was in fact an assault with a deadly weapon, or merely a brandishing of the weapon. The case involved a single swipe of a box cutter. The complaining party was unaware that he might have been injured until he looked in the mirror later in the day, when he found "a little cut" that did not require stitches, and

stated that he "guessed" appellant did cut him. (2RT 369.) Appellant testified that he was not trying to strike Ramirez with the blade, but just to fend him off. (5RT 1094.) Defense counsel argued extensively that the offense was merely a brandishing of the weapon. Admission of evidence that appellant had been convicted of an assault previously was particularly damaging under the circumstances, and the evidence was emphasized by the prosecutor. (See *People v. Beagle* (1972) 6 Cal.3d 441, 453; 6RT 1281-1284.) The admission of the prior conviction requires reversal of the judgment.

## II. RESPONDENT AGREES THAT THE TRIAL COURT IMPROPERLY IMPOSED TWO DIFFERENT ENHANCEMENTS FOR THE SAME PRIOR CASE.

Respondent concedes that appellant should not have been sentenced with both a five-year enhancement and a one-year enhancement based on a single prior case. (RB at pp. 26-29.) Notably, respondent does <u>not</u> argue that the argument was waived, nor does respondent argue that remand is necessary for re-sentencing. This court can and should simply strike the improperly-imposed one-year enhancement, for the reasons set out by both appellant and respondent in their respective briefs.

## CONCLUSION

On the grounds asserted in section I and in the Opening Brief, appellant requests that the Court reverse the judgment in this case. On the grounds asserted in section II and in the Opening Brief and in Respondent's Brief, appellant requests that this Court strike the one-year enhancement imposed under Penal Code section 667.5, subdivision (b).

5

Date: March 19, 2015          Respectfully submitted,

                              LAW OFFICES OF JOY MAULITZ


By:     _____

        Joy A. Maulitz
        Attorney for Appellant
        WILLIAM ODESSA BROWN[1]

_____

**CERTIFICATE OF COMPLIANCE WITH
THE CALIFORNIA RULES OF COURT, RULE 8.360(b)**

I certify this document was prepared on a computer using Microsoft Word, and that, according to that program, this document contains 1,735 words.

Date: March 19, 2015

Respectfully submitted,

LAW OFFICES OF JOY MAULITZ

By: ___Joy A. Maulitz_____

Joy A. Maulitz

## PROOF OF SERVICE BY MAIL

Re: William Odessa Brown,  Court Of Appeal Case: H040734, Superior Court Case: F24663

I the undersigned, declare that I am employed in the County of Sonoma, California. I am over the age of eighteen years and not a party to the within entitled cause. My business address is 22 Alta Dr., Petaluma CA. On March 18, 2015, I served a copy of the attached Appellant's Reply Brief on each of the parties in said cause by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in United States mail at Sonoma, California, addressed as follows:

Sixth District Appellate Program
SDAP
100 North Winchester Boulevard
Suite 310
Santa Clara, CA 95050

Office of the Attorney General SJ
San Jose AG
455 Golden Gate Avenue
Room 11000
San Francisco, CA 94102-7004

Anthony Robinson
Biggam Christensen and Minslof
2103 N. Pacific Ave.
Santa Cruz, CA 95060

District Attorney
701 Ocean St., Room 200
Santa Cruz, CA 95060

William Brown AS7822
P.O. Box 4000
Vacaville, CA 95696

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 18th day of  March, 2015.

_____
        Eric Vanderville
      (Name of Declarant)

_____
      (Signature of Declarant)

PROOF OF SERVICE BY ELECTRONIC SERVICE

Re: William Odessa Brown,   Court Of Appeal Case: H040734, Superior Court Case: F24663

I the undersigned, am over the age of eighteen years and not a party to the within entitled cause. My business address is 22 Alta Dr., Petaluma CA. On March 18, 2015 a PDF version of the Appellant's Reply Brief described herein was transmitted to each of the following using the email address indicated or direct upload. The email address from which the intended recipients were notified is Service@GreenPathSoftware.com.

Court of Appeal, 6th District
Clerk of the Court
San Jose, CA 95113

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 18th day of March, 2015 at 11:30 Pacific Time hour.

_____Eric Vanderville_____
(Name of Declarant)

_____
(Signature of Declarant)

# EXHIBIT F

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM ODESSA BROWN,<br><br>     Defendant and Appellant. | H040734<br>(Santa Cruz County<br> Super. Ct. No. F24663) |

     A jury found defendant William Odessa Brown guilty of assault with a deadly weapon.  (Pen. Code, § 245, subd. (a)(1).)[1]  After defense and prosecution waived jury on bifurcated issues, the trial court found true special allegations that defendant had suffered one prior serious felony conviction (§ 667, subds. (a)(1), (b)–(i)) and had served one prior prison term (§ 667.5, subd. (b)).  Defendant argues his trial counsel provided ineffective assistance by not objecting to impeachment evidence of a prior felony conviction that defendant argues did not involve moral turpitude, and by not objecting to unduly prejudicial evidence of defendant's false responses on a job application.  Defendant further contends that the trial court erred by imposing two enhancements based on a single prior prosecution that resulted in two felony convictions.  We will find no prejudicial error affecting defendant's guilt.  However, we will modify defendant's sentence to strike a one-year prior prison term enhancement (§ 667.5, subd. (b)) and affirm the judgment as modified.

---

[1] Unspecified statutory references are to the Penal Code.

Defendant has also filed two petitions for writ of habeas corpus in propria persona. We dispose of those petitions by separate orders filed this day. (See Cal. Rules of Court, rule 8.387(b)(2)(B).)

## I. TRIAL COURT PROCEEDINGS

Defendant swung a box cutter toward Valente Ramirez's face in April 2013 when they were both working the graveyard shift at a vitamin manufacturer in Scotts Valley. Defendant was charged with one count of assault with a deadly weapon.

### A. TRIAL EVIDENCE

Several eyewitnesses testified at trial.

#### 1. Valente Ramirez

On the night of the incident, then 18-year-old Ramirez was working the graveyard shift, which started at 10:00 p.m. Ramirez was wearing a beard net, a hair net, a face mask, and other mandatory clothing to prevent contamination of the vitamins being produced. Ramirez testified that he had worked at the vitamin manufacturer for a couple months and that one of his jobs was to drain water from equipment into buckets that were the size of garbage cans. He would then wheel the buckets to a wash station and pour out the water.

Ramirez testified that at the beginning of his shift he filled a bucket with water and entered the wash station to pour it out. Ramirez saw defendant washing buckets at the wash station and waited for defendant to finish so that Ramirez could dump his bucket. Defendant noticed Ramirez waiting and told Ramirez "I'll do it, I'll do it for you." Ramirez responded, "Do what you're doing and I'll do my job." According to Ramirez, the two talked to each other in a normal tone of voice for about 30 seconds and then defendant became visibly irritated with Ramirez and walked to an open area inside the building near the wash station.

Ramirez testified that once they were in the open area defendant raised his voice and started asking Ramirez "do you have a problem with me?" Defendant reportedly

2

started hitting his own chest with his hand, which Ramirez perceived as a challenge to fight. Ramirez kept repeating, "Just do your job and I'll do my job." Ramirez testified that he did not want to fight defendant and remained still because he just wanted to do his job. Defendant moved closer to Ramirez, grabbed an orange box cutter from a pocket protector in his suspenders, and swung once with the box cutter toward Ramirez's face. The box cutter's blade was extended almost an inch when defendant swung it and Ramirez felt his face mask move from being touched by the blade. Ramirez testified that he did not move when defendant swung the box cutter because he was not expecting it. After defendant swung the box cutter, two coworkers grabbed Ramirez and took him outside. The incident lasted less than five minutes.

Ramirez testified that he threw away the face mask he had been wearing when he took his lunch break that night because "when it's a break you throw all that stuff away." Later during that shift, Ramirez's manager called him into his office and Ramirez recounted the incident. After that initial meeting with the manager, Ramirez went to the restroom and noticed a little cut on the bottom of his lip. He returned to his manager to show him the cut and his manager took a picture of it, which was admitted into evidence at trial.

### 2. Other Eyewitnesses

Alejandro Nieto testified through an interpreter that he was in the wash station area when the incident occurred. Nieto testified that Ramirez brought a bucket to dump, Ramirez and defendant started talking, and defendant eventually took the bucket from Ramirez and dumped the water. Nieto could not understand what they were saying to each other because he was not a fluent English speaker but believed based on defendant's posturing that defendant was challenging Ramirez to a fight. Nieto testified that defendant's hands were up like a boxer. At some point, defendant swung an orange knife at Ramirez. Ramirez did not move when defendant swung the knife at him.

3

George Soto testified that he was next to Nieto during the incident. Soto heard defendant ask Ramirez "if he want[ed] to go." At some point, Ramirez said something to defendant that Soto did not hear and defendant asked Ramirez if he was threatening him. Defendant moved closer to Ramirez, took out a box cutter, and swiped it at Ramirez's face. Soto testified that the box cutter touched Ramirez's face mask but it did not look like it cut the mask. The incident happened very quickly and Soto testified that it "[t]ook us all kind of by surprise."

Miguel Zarate also witnessed the incident. He testified through an interpreter that defendant and Ramirez started arguing and that, while he was not a fluent English speaker, it appeared it had something to do with Ramirez's water bucket. At some point, defendant pulled out a blade from his chest area and swung his arm toward Ramirez's face. Ramirez moved back a little bit when defendant swung at him. Zarate testified that he did not see the blade touch Ramirez's mask.

### 3. Defendant's Testimony

Defendant testified that he had worked for the vitamin manufacturer for around 90 days before the incident, initially as a temporary worker through a temporary employment agency and then as a permanent employee of the manufacturer. One of defendant's primary tasks was washing buckets at the wash station. Defendant testified that he regularly asked other employees to leave buckets that needed to be dumped at the wash station so as to not interfere with his work. The other employees never had a problem leaving buckets with defendant.

Defendant testified that on the night in question there had been a power outage before his shift, which resulted in an excessive number of buckets that he needed to wash. Defendant was washing buckets when Ramirez came in with a bucket and prepared to dump it. Defendant told Ramirez not to dump the bucket because defendant did not want the dirty water to contaminate the buckets he had already cleaned. Ramirez told him to "do your job, and I'll do my job." Defendant then pulled the bucket away from Ramirez

4

and set it to the side.  Defendant testified that he and Ramirez were both arguing in raised voices.

Defendant testified that after arguing with Ramirez at the wash station for five or 10 minutes, defendant walked out to an open area in the building.  Defendant hit his chest with his hand to tell Ramirez that he would take care of the bucket, not as an invitation to fight.  Ramirez then reportedly told defendant to watch his back, which made defendant apprehensive.  Defendant testified that he believed Ramirez's statement was a threat. Defendant testified that in response to Ramirez's statement, defendant pulled out his box cutter, "pulled the blade out, and I got in front of him.  And I stopped and I looked him dead in his eye with my blade out and I told him I'm not the one you wanna play with. Straightforward."  Defendant "waived the blade in his face" but testified that he was not trying to strike Ramirez with the blade.  Defendant then put the box cutter away and watched Zarate and Nieto escort Ramirez out of the room.

On cross-examination, defendant testified that the box cutter came within three or four inches of Ramirez's face and also that it never came closer than a foot from Ramirez's face.  Defendant acknowledged that he never saw Ramirez with a weapon that night.

To impeach defendant's credibility during cross-examination, the prosecutor introduced the application defendant had submitted to work for the vitamin manufacturer. The application contained an area to disclose any prior felony or serious misdemeanor convictions.[2]  Defendant acknowledged that he left that section blank on the application, and that he had initialed a certification on the application that he was not withholding any information that might adversely affect his chances for employment.  The prosecutor then read from an indictment in a Texas criminal prosecution of defendant:  "Charge William Brown, Junior, who did then and there intentionally and knowingly cause bodily injury to

---

[2]  A copy of that job application was admitted into evidence.

William Brown, Senior, an individual 65 years of age or older by striking William Brown, Senior, with hand." Defendant acknowledged that he had been convicted of elder abuse in that case in 2012 for conduct that occurred in 2011.[3] On re-direct examination, defendant testified that he had disclosed the Texas conviction on his initial application for temporary employment and that the vitamin manufacturer had access to that application.[4]

## B. VERDICT AND SENTENCING

The jury found defendant guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)). Defense and prosecution waived jury on the special allegations about prior convictions. After a court trial, the court found defendant had previously suffered two felony convictions in 1998 arising from dousing his then-girlfriend and her daughter with gasoline: voluntary manslaughter of the girlfriend (§ 192, subd. (a)) and assault with force likely to produce great bodily injury of the daughter (former § 245, subd. (a)(1)).[5] Based on those convictions, the court found true special allegations that defendant had suffered one prior serious felony conviction (§ 667, subd. (a)(1)); one prior serious or violent felony strike conviction (§ 667, subds. (b)–(i)); one prior prison term (§ 667.5, subd. (b)); and prior felony convictions making defendant ineligible for probation in the current case. (§ 1203, subd. (e)(4)).

The trial court sentenced defendant to 12 years in prison, consisting of six years for the assault count (three-year middle term (§ 245, subd. (a)(1)), doubled for the prior strike (§ 667, subd. (e)(1))); five years for the prior serious felony manslaughter conviction (§ 667, subd. (a)(1)); and one year for the prior prison term related to the 1998 assault conviction (§ 667.5, subd. (b)).

---

[3] Defendant unsuccessfully moved to exclude evidence about the job application and the Texas conviction.

[4] No documentary evidence of the application to work for the temporary agency was introduced or admitted into evidence.

[5] Assault by force likely to produce great bodily injury is now located in section 245, subdivision (a)(4). (Stats. 2011, ch. 183, § 1, p. 2287.)

## II.  DISCUSSION

### A. ELDER ABUSE CONVICTION

Defendant argues the trial court erred in allowing the prosecutor to impeach him by asking about his 2012 felony elder abuse conviction in Texas because it is not a crime of moral turpitude.  (Citing *People v. Castro* (1985) 38 Cal.3d 301 (*Castro*).)  As defendant's trial counsel did not raise that argument in the trial court, we review the issue as a claim of ineffective assistance of counsel.

To prevail on a claim of ineffective assistance, defendant must show both that his trial counsel's performance was deficient and that he was prejudiced by the deficiency.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 216–217 (*Ledesma*).)  To prove prejudice, defendant must affirmatively show a reasonable probability of a more favorable result had it not been for his trial counsel's error.  (*Id.* at pp. 217–218.)

#### 1.  Trial Court Ruling

After defense counsel indicated defendant would testify, the court discussed with all counsel outside the presence of the jury the admissibility of defendant's prior convictions for impeachment purposes.  The trial court indicated it was inclined to admit the Texas conviction because it was "not remote in time" and "relates to assaultive behavior, which arguably is similar behavior to what we're dealing with in this case."  The court further found that it was not significantly more prejudicial than probative, and that it would not be unduly time consuming.  The court indicated it had reviewed *People v. Castro, supra*, 38 Cal.3d 301.  Defense counsel did not argue that the Texas conviction was not a crime of moral turpitude.

#### 2.  Admissibility of Felony Convictions for Impeachment

Article I, section 28, subdivision (f)(4) of the California Constitution states:  "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding."  (See also Evid. Code, § 788

[generally, "[f]or the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony"].)  In *Castro,* the Supreme Court found that the foregoing constitutional provision is limited in two ways.  First, trial courts retain discretion under Evidence Code section 352 to exclude an otherwise admissible prior felony conviction if its probative value is substantially outweighed by the danger of undue prejudice. (*Castro, supra,* 38 Cal.3d at pp. 310–313.)  Second, the due process clause of the Fourteenth Amendment of the United States Constitution requires that "a witness' prior conviction should only be admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*Id.* at pp. 314, 317.)  The *Castro* court indicated that "it will be necessary to determine with respect to each felony conviction offered for impeachment—difficult though this may prove to be—whether it does or does not involve moral turpitude." (*Id.* at p. 316.)

Since *Castro*, courts have undertaken a felony-by-felony approach to determining whether specific felonies involve moral turpitude.  Two cases are relevant here.  In *People v. Sanders* (1992) 10 Cal.App.4th 1268 (*Sanders*), the court found that the least adjudicated elements of felony child endangerment (former § 273a, subd. (1)) did not involve moral turpitude because the felony could be committed by "passive conduct unaccompanied by criminal intent."[6]  (*Sanders*, at p. 1274.)  That subdivision imposed felony criminal liability upon "[a]ny person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered ... ." (*Id.* at p. 1273.)  The *Sanders* court stated that the

---

[6]  Section 273a, subdivision (1) was reorganized to its current location (§ 273a, subd. (a)) in 1994.  (Stats. 1994, ch. 1263, § 3, p. 7936.)

least adjudicated elements of the child endangerment statute were: "(1) care or custody of a child by the defendant; (2) circumstances likely to produce great bodily harm or death; and (3) criminal negligence in permitting the child to be placed in a situation endangering the child's person or health." (*Id.* at pp. 1273–1274.) The court concluded that because that crime could be "violated by wholly passive conduct, free from any element of force, violence, threat, fraud, deceit, or stealth, ... we conclude that a conviction under the statute does not necessarily imply a general readiness to do evil or any moral depravity." (*Id.* at pp. 1274–1275.)

In *People v. Feaster* (2002) 102 Cal.App.4th 1084 (*Feaster*), the court determined that the least adjudicated elements of grossly negligently discharging a firearm (§ 246.3) involved moral turpitude because the felony involved a willful act. (*Feaster*, at p. 1093.) The court analyzed the statute and determined that its least adjudicated elements require that "(1) a person willfully and unlawfully discharged a firearm, (2) the person discharged the firearm in a grossly negligent manner, and (3) the person discharged the firearm in a manner that could result in injury or death to a person." (*Ibid.*) The *Feaster* court distinguished *Sanders* and other cases involving felonies proscribing passive conduct, reasoning that "an individual who discharges a firearm under circumstances that show an indifference to the consequences of his actions can be said to demonstrate moral turpitude." (*Feaster*, at p. 1093.)

### 3.  The Texas Elder Abuse Statute At Issue Involves Moral Turpitude

Defendant argues that his conviction under Texas Penal Code section 22.04 did not involve moral turpitude. Texas Penal Code section 22.04 contains two different standards of felony liability based on the status of the person committing the felony. Texas Penal Code section 22.04, subdivision (a) broadly states: "A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual: [¶] (1) serious bodily injury; [¶] (2) serious mental deficiency,

9

impairment, or injury; or [¶] (3) bodily injury." (Tex. Pen. Code, § 22.04, subd. (a).)
Texas Penal Code section 22.04, subdivision (a-1) applies to a narrower category of
individuals, stating: "A person commits an offense if the person is an owner, operator, or
employee of a group home, nursing facility, assisted living facility, intermediate care
facility for persons with mental retardation, or other institutional care facility and the
person intentionally, knowingly, recklessly, or with criminal negligence by omission
causes to a child, elderly individual, or disabled individual who is a resident of that group
home or facility: [¶] (1) serious bodily injury; [¶] (2) serious mental deficiency,
impairment, or injury; or [¶] (3) bodily injury." (Tex. Pen. Code, § 22.04, subd. (a-1).)

Defendant does not cite evidence in the record (and we have found none)
specifying whether defendant was convicted under subdivision (a) or subdivision (a-1) of
Texas Penal Code section 22.04. Defendant quotes language from both subdivisions in
his opening brief. The distinction is relevant because, unlike the generally applicable
subdivision (a) that prohibits injuries caused "recklessly by omission," subdivision (a-1)
also prohibits injuries caused by owners and employees of institutional care facilities
"with criminal negligence by omission." There is no evidence in the record that
defendant was "an owner, operator, or employee of a group home ... or other institutional
care facility" (Tex. Pen. Code, § 22.04, subd. (a-1)) when he committed the felony. And
the prosecutor's summary of the offense in its sentencing brief indicated that the assault
was against defendant's father and occurred at a house the victim owned. On this record,
we will therefore assume that defendant was convicted under subdivision (a).

Applying *Castro*'s least adjudicated elements test, a conviction under Texas Penal
Code section 22.04, subdivision (a) requires that a person: (1) causes a bodily injury to a
child, elderly individual, or disabled individual; and (2) does so recklessly by omission.
Recklessness for purposes of the Texas Penal Code is defined by Texas Penal Code
section 6.03, subdivision (c): "A person acts recklessly, or is reckless, with respect to
circumstances surrounding his conduct or the result of his conduct when he is aware of

10

but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Thus, an omission for purposes of Texas Penal Code section 22.04, subdivision (a) must be accompanied by a more volitional mental state than mere negligence. (See *Williams v. State* (Tex. 2007) 235 S.W.3d 742, 757 [reversing Tex. Pen. Code, § 22.04, subd. (a) conviction; finding mother's act of leaving children under her boyfriend's care in a room with a lit candle "does not involve a 'substantial and unjustifiable' risk of serious bodily injury or death" and was thus legally insufficient to show mother "consciously disregarded a substantial or unjustifiable risk that her children would suffer serious bodily injury in a house fire"].) Although defendant argues that the statute "may be violated by criminal negligence or omission alone," that argument is based on Texas Penal Code section 22.04, subdivision (a-1), which is not applicable here because there was no evidence that defendant was an owner or employee of a group home or other institutional care facility when he assaulted his father.

Because the least adjudicated elements of Texas Penal Code section 22.04, subdivision (a) require a showing that a defendant is aware of, and consciously disregards, a substantial or unjustifiable risk that the victim will be injured, we conclude that a violation of that subdivision involves moral turpitude. That more volitional mental state distinguishes the Texas felony from felonies like the one at issue in *Sanders* that could be violated by passive conduct and mere negligence. (*Sanders, supra,* 10 Cal.App.4th at p. 1274.) As the Texas conviction was proper impeachment evidence, defense counsel was not deficient in failing to object.

### 4. The Texas Conviction Was Not Admitted Under Evidence Code Section 1101

Defendant argues that the 2012 Texas conviction was inadmissible as Evidence Code section 1101 evidence and notes that the trial court never resolved the prosecutor's motion in limine to admit the conviction for that purpose. But the prosecutor did not

ultimately offer the 2012 Texas conviction as evidence of a prior crime to prove motive, intent, or any of the other characteristics listed in Evidence Code section 1101, subdivision (b).  The prosecutor introduced the evidence solely to impeach defendant's credibility after defendant chose to testify.  Because the prosecutor did not use the 2012 Texas conviction as Evidence Code section 1101 character evidence, the trial court did not err in not resolving that issue.

### B.  JOB APPLICATION EVIDENCE

Defendant argues that the trial court abused its discretion by failing to weigh the factors in Evidence Code section 352 before allowing the prosecutor to impeach him with evidence that he omitted information about prior convictions from his job application.  To the extent the argument was not preserved, defendant alternatively contends that his trial counsel provided ineffective assistance.

#### 1.  Trial Court Ruling

Before trial, defense counsel moved in limine "to exclude any prior convictions should he testify in this trial," based on Evidence Code section 352.  When defense counsel indicated to the court during trial that defendant would testify, the court and attorneys discussed the admissibility of defendant's prior convictions.  The court considered defendant's prior convictions under Evidence Code section 352, finding that the 2012 Texas elder abuse conviction was admissible because it was not remote in time and involved "assaultive behavior, which arguably is similar behavior to what we're dealing with in this case."  The trial court found that defendant's 1998 voluntary manslaughter conviction was inadmissible because it was too temporally remote and had a potential to confuse the jury.

After ruling on the Evidence Code section 352 motion regarding defendant's prior convictions, the trial court prepared to bring the jury back into the courtroom when the prosecutor interjected that he had "one other thing that came up actually last Friday."  The prosecutor had been informed just before trial that there might be false information

12

on defendant's application to work at the vitamin manufacturer. The prosecutor had obtained a copy of the application and had provided a copy to defense counsel before trial. The application asked whether defendant had ever been convicted of a felony or serious misdemeanor and defendant had left that question blank. Defendant had also certified on the application that he had not knowingly withheld any information.

The prosecutor argued the application was admissible to impeach defendant's character for truthfulness because it showed he had been dishonest on the application. Defense counsel argued that leaving the question blank was "certainly an omission" but was "not a lie" because he did not affirmatively deny having suffered any prior convictions. Defense counsel also stated that defendant had disclosed his prior convictions in the application he completed for the temporary agency that originally placed defendant at the vitamin manufacturer. Defense counsel did not have a copy of that original application. Defense counsel did not object under Evidence Code section 352 to admission of the job application evidence. The trial court found the job application evidence admissible for impeachment, reasoning that the application suggested defendant "was not credible, was not accurate, was not honest."

## 2. Evidence Code Section 352 Argument Was Not Preserved

On appeal, defendant argues that his motion in limine to exclude prior convictions based on Evidence Code section 352 extended to a job application. But while defendant's omission on the job application concerned his prior convictions, the job application evidence itself was not a prior conviction. Though defendant argues on appeal that the trial court "completely failed to weigh the factors under Evidence Code [section] 352 in deciding whether to allow the prior conviction evidence to come in relative to the job application," the trial court had already weighed the convictions' admissibility under Evidence Code section 352. Any lack of further Evidence Code section 352 analysis about the job application was due to defense counsel's failure to object to the evidence on that basis.

We will therefore review whether defendant's trial counsel was ineffective for failing to make an Evidence Code section 352 objection to the job application impeachment evidence. (*Ledesma, supra,* 43 Cal.3d at pp. 216–218.)

### 3. Trial Counsel Was Not Ineffective

Article I, section 28, subdivision (f)(2) of the California Constitution provides that "relevant evidence shall not be excluded in any criminal proceeding," subject to certain exceptions including determination under Evidence Code section 352 that the evidence is substantially more prejudicial than probative. That provision effectively made Evidence Code section 787 inapplicable in criminal cases. (*People v. Harris* (1989) 47 Cal.3d 1047, 1081; Evid. Code, § 787 ["evidence of specific instances of his conduct relevant only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness"].)

Defendant's trial counsel essentially argued that the job application evidence was not relevant to prove defendant's character for truthfulness because it was an omission rather than an affirmative misrepresentation and because defendant had disclosed his prior convictions on his application for temporary employment.

On appeal, defendant repeats his trial counsel's arguments and contends that they demonstrate that the job application evidence was substantially more prejudicial than probative. Defendant argues his representations and omissions on the vitamin manufacturer job application "did not have any probative value whatsoever" for two reasons. First, defendant argues that he did not affirmatively misrepresent his criminal history because "he merely left blank the 'yes' or 'no' responses to the question concerning any past criminal offense." But the job application evidence supported an inference that defendant was being dishonest by leaving that question blank and then certifying that he had not withheld any information. Second, defendant argues that he did not actually withhold information because, according to his trial testimony, he had disclosed his prior convictions on the temporary employment application and the vitamin

14

manufacturer possessed that original application.  Contrary to defendant's argument, his testimony about accurately disclosing his prior convictions on an application to work for a temporary employment agency does not automatically destroy the probative value of his failure to disclose his prior convictions when applying to work directly for the vitamin manufacturer.  Notably, the only application introduced and admitted into evidence was defendant's vitamin manufacturer application containing the omission.  At most, defendant's testimony created a factual dispute for the jury to resolve.  The documentary evidence thus had significant probative value regarding defendant's character for truthfulness.

As for potential prejudice, defendant argues that the job application evidence was prejudicial because it allowed the jury to hear about defendant's prior conviction for assaultive conduct.  But the trial court had already evaluated the prior convictions under Evidence Code section 352 and found as to the 2012 Texas conviction that its temporal proximity and similarity to the charged conduct was not substantially outweighed by its potential prejudicial effect.  As for defendant's character for truthfulness more generally, the trial court allowed defendant's trial counsel to elicit testimony from defendant that he had disclosed his prior convictions on the temporary worker application.

Even if counsel had objected under Evidence Code section 352, the trial court could have reasonably concluded, in the exercise of its broad discretion, that the application "had significant probative value and would not so inflame the jurors' emotions as to interfere with their fair and dispassionate assessment of the evidence of defendant's guilt."  (*People v. Kipp* (2001) 26 Cal.4th 1100, 1126–1127.)  As such, defendant has not shown that he was prejudiced by his trial counsel's failure to object under Evidence Code section 352.

## C. SENTENCE ENHANCEMENTS

Defendant argues, and the People concede, that the trial court erred by imposing both a five-year prior serious felony enhancement (§ 667, subd. (a)(1)) and a one-year

prior prison term enhancement (§ 667.5, subd. (b)) based on defendant's 1998 convictions for voluntary manslaughter and assault by force likely to produce great bodily injury, respectively, because those convictions were based on the same facts and charged in the same case. (Cf. *People v. Jones* (1993) 5 Cal.4th 1142, 1144–1145, 1149–1150 [finding sentence may not be enhanced "both for a prior conviction and for a prison term imposed for that conviction"].) We accept the People's concession and will modify the judgment to strike the one-year prior prison term enhancement.

### III.   DISPOSITION

The judgment is modified to strike the one-year Penal Code section 667.5, subdivision (b) prior prison term enhancement. As so modified, the judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**


_____

Rushing, P.J.


_____

Premo, J.


*People v Brown*
H040734

**EXHIBIT G**

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

THE PEOPLE OF THE STATE OF CALIFORNIA,

    Plaintiff and Respondent,

v.

WILLIAM ODESSA BROWN,

    Defendant and Petitioner.

No. S237336

Court of Appeal
No. H040734

Santa Cruz County
Superior Court
No. F24663

**PETITION FOR REVIEW**

AFTER DECISION BY THE COURT OF APPEAL,
SIXTH APPELLATE DISTRICT,
OF AUGUST 18, 2016

Joy A. Maulitz
(Cal. Bar No. 111833)
LAW OFFICES OF JOY A.
    MAULITZ
Post Office Box 170083
San Francisco, CA. 94117
(415) 680-8046
joysf@sbcglobal.net

Attorney for Petitioner
WILLIAM ODESSA BROWN

DOCKETED
SAN FRANCISCO
SEP 2 1 2016
By J. HOGG
SF2014708178

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | No. _____ |
| Plaintiff and Respondent, | Court of Appeal No. H040734 |
| v. | |
| WILLIAM ODESSA BROWN, | Santa Cruz County Superior Court No. F24663 |
| Defendant and Petitioner. | |

**PETITION FOR REVIEW**

AFTER DECISION BY THE COURT OF APPEAL,
SIXTH APPELLATE DISTRICT,
OF AUGUST 18, 2016

Joy A. Maulitz
(Cal. Bar No. 111833)
LAW OFFICES OF JOY A.
MAULITZ
Post Office Box 170083
San Francisco, CA. 94117
(415) 680-8046
joysf@sbcglobal.net

Attorney for Petitioner
WILLIAM ODESSA BROWN

# TABLE OF CONTENTS

STATEMENT OF THE ISSUE PRESENTED .............................. 1

WHY THE PETITION SHOULD BE GRANTED ........................... 1

STATEMENT OF THE CASE ................................................ 4

STATEMENT OF FACTS ................................................... 5

ARGUMENT ................................................................ 11

THE ADMISSION OF PETITIONER'S PRIOR CONVICTION
WAS PREJUDICIAL ERROR................................................... 11

    A.    Factual and procedural background ............................ 11

    B.    Standard of Review ............................................ 13

    C.    The Court's Decision to Allow Evidence of the Prior
        Conviction For Impeachment Was Error, Because It Was
        Not a Crime of Moral Turpitude................................ 14

    D.    The Admission of the Prior Conviction in Connection With
        the Job Application was an Abuse of Discretion.............. 16

    E.    The Court Never Decided the Evidence Could Come in Based
        on Evidence Code Section 1101, and the Evidence Could Not
        Have Been Admitted on this Basis............................. 18

    F.    The Admission of the Prior Conviction Evidence Deprived
        Petitioner of His Federal Constitutional Rights to Due Process
        and a Fair Trial................................................ 19

    G.    The Erroneous Admission of the Evidence Was Prejudicial
        And Requires Reversal......................................... 20

    H.    The Arguments Are Not Forfeited; But to the Extent Trial
        Counsel Failed to Object on the Proper Grounds to the
        Admission of Petitioner's Prior Conviction, the Failure
        Constituted Ineffective Assistance of Counsel................ 23

# TABLE OF AUTHORITIES
## CASES

*Barnes v. United States*
(1973) 412 U.S. 837 ……………………………………………… 19

*Chapman v. California*
(1967) 386 U.S. 18 …………………………………..…………… 20

*Leary v. United States*
(1969) 395 U.S. 6 ………………………………………………... 20

*People v. Alcala*
(1984) 36 Cal.3d 604 ………..…………………………….. 19, 23

*People v. Beagle*
(1972) 6 Cal.3d. 441 …………...……………………….... 17, 23

*People v. Bracey*
(1994) 21 Cal.App.4th 1532 ………...……………………… 18

*People v. Castro*
(1985) 38 Cal.3d 301 ……………….……………… 2-3, 14, 19, 26

*People v. Cruz*
(1964 ) 61 Cal.2d 861 ………….…………………………… 22

*People v. Daniels*
(1991) 52 Cal.3d. 815 ………………………………………… 19

*People v. Ewoldt*
(1994) 7 Cal.4th 380 …………………………………..14, 19

*People v. Harris*
(2005) 37 Cal.4th 310 ………………………………….14, 26

*People v. Harrison*
(2005) 35 Cal.4th 208 ……………………………………… 13

*People v. Lewis*
(2001) 25 Cal.4th 610 ………….…………………………… 19

ii

*People v. Ochoa*
(2001) 26 Cal.4th 398 ................................................... 13

*People v. Orabuena*
(2004) 116 Cal.App.4th 84 ...................................... 16, 19

*People v. Rains*
(1999) 75 Cal.App.4th 1165 .........................................   20

*People v. Rodriguez*
(1986) 177 Cal.App.3d 174 .......................................... 24

*People v. Sanders*
(1992) 10 Cal.App.4th 1268 ................................   2-3, 15, 26

*People v. Taylor*
(1982) 31 Cal.3d 488 .................................................   20

*People v. Thompson*
(1980) 27 Cal.3d 303 ...........................................   18-19

*People v. Valentine*
(1986) 42 Cal.3d 170 .................................................   20

*People v. Waidla*
(2000) 22 Cal.4th 690 ........................................... 13-14

*People v. Watson*
(1956) 46 Cal.2d 818 ...................................... 20, 22, 25

*People v. Wheeler*
(1992) 4 Cal.4th 284 ........................................... 14, 26

*Ulster County Court v. Allen*
(1979) 442 U.S. 140 .................................................. 19

## STATUTES

Article I, section 15 of the California Constitution ..........................   25

Evidence Code section 352 ............................................. *passim*

Evidence Code section 1101 ......................... 11-12, 18-19, 23

Penal Code section 245, subdivision (a)(1) ...................................... 4

Penal Code section 273a, subdivision (a) ........................................ 15

Penal Code section 667 ............................................................... 4

Penal Code section 667.5(b) ......................................................... 4

Texas Penal Code section 22.04 ........................................... 14-15, 26

The Fourteenth Amendment to the U. S. Constitution .......... 14, 19-20, 24

The Sixth Amendment to the United States Constitution......... 19, 20, 25

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | No. H040734 |
| Plaintiff and Respondent, | Santa Cruz County |
| v. | Superior Court |
| WILLIAM ODESSA BROWN, | No. F24663 |
| Defendant and Petitioner. | |

## PETITION FOR REVIEW

TO:  THE HONORABLE TANI CANTIL-SAKAUYE, CHIEF JUSTICE
OF CALIFORNIA, AND THE HONORABLE ASSOCIATE
JUSTICES OF THE SUPREME COURT OF CALIFORNIA:

Petitioner and petitioner William Brown, by and through counsel,
hereby petitions for review, pursuant to California Rules of Court, rule
8.500, following the decision of the Court of Appeal for the Sixth District
filed August 18, 2016 and attached to this Petition as Exhibit 1.

## STATEMENT OF THE ISSUE PRESENTED

Whether the admission of petitioner's prior conviction was prejudicial error.

## WHY THE PETITION SHOULD BE GRANTED

In this case, petitioner was found to have assaulted a young co-
worker with a box cutter. The trial court allowed the introduction of
evidence that appellant had been convicted in Texas of the crime of elder
abuse, without ever considering whether the offense was a crime of moral
turpitude. The crime did not necessarily involve moral turpitude, and the
admission of the evidence was prejudicial. The question of whether

appellant's action in waving the box cutter was brandishing, as opposed to an assault with a deadly weapon, was significant throughout the trial. The jurors, considering only one count, asked numerous questions and deliberated for a full day before convicting. (2CT 299-300.) In such a close case, the introduction of evidence that appellant had assaulted another vulnerable person was prejudicial.

This Court has held that only priors that necessarily involve moral turpitude may be used to impeach a criminal defendant. (*People v. Castro* (1985) 38 Cal.3d 301; *People v. Sanders* (1992) 10 Cal.App.4[th] 1268, 1272.) The trial court must look to the "least adjudicated elements" of the crime to determine if the offense necessarily involves moral turpitude. (*People v. Castro, supra,* 38 Cal.3d at p. 317.)

The Court of Appeal found that the Texas elder abuse statute involved moral turpitude, and thus that admission of evidence of the conviction was proper. (Op. at pp. 9-11.) The Court acknowledged that the Texas statute could be violated by omission, i.e., purely passive conduct, but went on to find that the recklessness required by the statute meant that the crime necessarily involved moral turpitude. The Court did not even reach the question of prejudice, holding only that the admission of the evidence was not error.

This Court is presented with the question of whether a crime of omission, even if accompanied by criminal negligence or recklessness, can be considered to involve moral turpitude. In *People v. Sanders*, the Court of Appeal held that the degree of culpability necessary for violation of California's child endangerment statute was that of criminal negligence, defined as :

> 'a <u>reckless</u>, gross or culpable departure from the ordinary standard of due care; it must be such a departure from what would be the conduct of an ordinarily prudent person under the same

2

circumstances as to be incompatible with a proper regard for human life.' ( *People v. Peabody* (1975) 46 Cal.App.3d 43, 48-49.)

(*People v. Sanders, supra,* 10 Cal.App.4[th] at p. 1273, fn.3, emphasis added.) In other words, the intent required for violation of the statute, criminal negligence, was defined by the court in precisely the same manner as recklessness. Yet the *Sanders* court found that passive conduct unaccompanied by criminal intent greater than criminal negligence – or recklessness – did not constitute a crime of moral turpitude. Similarly, this Court held in the seminal case *People v. Castro* that simple possession of heroin did not necessarily involve moral turpitude, even though that crime requires knowledge and awareness of the possession of an illegal substance. (*People v. Castro, supra,* 38 Cal.3d at p. 317.)

The Court of Appeal here found that the Texas statute required a volitional state that distinguished it from felonies like that in *Sanders*, which could be violated by "passive conduct and mere negligence." (Op. at p. 11.) But the *Sanders* court itself equated negligence and recklessness. This Court should rule on whether a mere failure to act can constitute an act of moral turpitude. The Court of Appeal has held plainly that "passive crimes do not involve moral turpitude." (*People v Feaster* (2002) 102 Cal.App.4[th] 1084, 1092.) This Court has held that only crimes that show "a readiness to do evil" may be used for impeachment. (*People v. Castro, supra,* 39 Cal.3d at p. 314, emphasis added.) Following these cases, impeachment with a crime such as the one here, that did necessarily involve "doing" anything, should not be allowed.

These issues raise important questions of law requiring review in this Court. (Calif. Rules of Court, rule 8.500(b).) On the above grounds and those argued below, petitioner asks that his petition be granted.

## STATEMENT OF THE CASE

Petitioner William Odessa Brown was charged with assault with a deadly weapon by means likely to produce great bodily injury, in violation of Penal Code section 245, subdivision (a)(1). (1CT 119.) It was further alleged that petitioner had suffered two prior serious felony convictions arising out of a single case. (1CT 120-121.) Petitioner pled not guilty and denied all the special allegations. (1CT 123.)

The trial court granted petitioner's motion to bifurcate the trial concerning the prior convictions. (1RT 23.) Trial began on December 2, 2013. (1CT 214.)

A jury found petitioner guilty of assault with a deadly weapon. (2CT 305.) After further hearing, the court found that the special allegations were true. (10RT 2022; 2CT 307.) Petitioner was sentenced to the midterm of three years, doubled due to the strike prior, plus five years for the enhancement under section 667, subdivision (a)(1), plus one year for the enhancement under section 667.5, subdivision (b), to be served consecutively, for an aggregate term of twelve years. (10RT 2265; 2CT 432-435.) Petitioner filed a timely notice of appeal on February 28, 2014. (2CT 434.) On August 18, 2016, the Court of Appeal affirmed the judgment, except that it agreed with petitioner that the one-year prior prison term enhancement must be struck. (See Exhibit 1, attached.)

4

## STATEMENT OF FACTS

On April 29, 2013, eighteen-year-old Valente Ramirez Zamora was working at Threshold Enterprises, a manufacturer of vitamin pills. (2RT 272-274, 278, 296-297.) Among Ramirez's co-workers were Miguel Zarate, Jorge Soto, Alejandro Nieto, and petitioner William Brown. (2RT 279.) Ramirez's job was to drain the hoses with a large bucket, and then drain the bucket in the wash station. (2RT 282.) He wore a beard net, a hair net and safety glasses, along with other special gear for his work. (2RT 291-292.) He entered the wash room area at about 10:10 or 10:15 p.m. with a full bucket, and was waiting to drain it. (2RT 311-312, 379.) He saw petitioner William Brown washing some buckets. (2RT 314-315.)

Petitioner saw Ramirez waiting and said to him "I'll do it for you." (2RT 323.) Ramirez responded, "just do what you're doing and I'll do my job." (2RT 323, 384.) Petitioner said he didn't want water all over the place, and Ramirez said "I've been doing this job for two and a half months, I know what I'm doing." (2RT 384-385.) The two men went back and forth about who would do the job of emptying the bucket. (2RT 328.) Petitioner said "do you have a problem with me?" and moved into an area next to the wash station. (2RT 333.) Ramirez said "come on" to petitioner at least three times, not in a challenging manner, but as if to say, "I don't want no problems with you." (2RT 393-394.) Petitioner hit his chest, challenging Ramirez. (2RT 335-336.) Petitioner raised his voice, Ramirez did not. (2RT 389.) Ramirez did not move. (2RT 395.) Ramirez did not tell petitioner to watch his back or say anything else to petitioner. (2RT 408-409.) Ramirez felt intimidated because petitioner was older, bigger, and taller than he was. (2RT 339-341.) Petitioner got close to Ramirez's face, yelling at him. (2RT 344.) Ramirez never challenged petitioner to fight, nor did he ever threaten him. (2RT 360.)

5

Petitioner reached into a pocket on his suspenders and removed a box cutter, and swung it at Ramirez once. (2RT 345-347.) Ramirez felt it was clear that petitioner was swinging at his face. (2RT 410.) Ramirez felt his mask move; he did not know at first if he had been cut. (2RT 355-359.) He thought that petitioner had hit the mask but missed him. (2RT 402-403.) Two people grabbed Ramirez and took him outside, and one of them went to tell the supervisor what had happened. (2RT 359.)

When Ramirez went to lunch he threw his mask and beard net into the garbage. (2RT 364.) After lunch, the manager, George Marzan, called Ramirez in and asked him what happened. (2RT 368, 369.) Marzan asked Ramirez if he had been cut, and Ramirez said no, or that he didn't know. (2RT 368, 407.) After Ramirez left the manager's office, he went to the restroom and found a little cut on his lip, and went back to tell Marzan that he guessed he had been cut. (2RT 369.) Marzan took a photograph of the mark on Ramirez's face. (2RT 370.) It was small and did not require stitches. (2RT 370.) There was no blood on Ramirez's mask or beard protector. (2RT 404.)

Several of Ramirez's and petitioner's co-workers were present in the wash station when the incident occurred. Although Alejandro Nieto did not understand English, he saw petitioner get into Ramirez's face and he could tell by petitioner's hand movements that he was challenging Ramirez to a fight. (3RT 527-528.) When petitioner moved into the open area next to the wash station, he was moving around with his hands up like a boxer. (3RT 533-534.) Ramirez did not fight; he never even moved. (3RT 538.) Petitioner pulled out and swung an orange box cutter at Ramirez, with an exposed blade about ¾ of an inch or an inch. (3RT 537-544.) Nieto saw the blade touch Ramirez's mask. (3RT 545, 569.)

George Soto entered the wash room with Nieto on the night in question. (3RT 590.) Ramirez came in with a dirty water bucket and was

6

about to dump it when petitioner told him not to. (3RT 603-604, 636.) It was petitioner's job to clean the floor before it got too messy. (3RT 637.) Ramirez told petitioner to do his job and he would do his. (3RT 605.) The argument between petitioner and Ramirez escalated, and petitioner asked Ramirez if he "want[ed] to go." (3RT 606.) Ramirez was not moving, and had a look on his face like "are you kidding?" (3RT 606-607.) Soto heard petitioner ask Ramirez: "are you threatening me?" but he did not hear Ramirez make any threat. (3RT 613.) Soto did hear Ramirez mumble something kind of subtle, under his breath. (3RT 641-642, 4RT 759.)

Soto saw petitioner get close to Ramirez and take out a box cutter and swipe it at Ramirez's face, very suddenly. (3RT 614.) Petitioner did not hold the box cutter out like he was trying to hold Ramirez at bay; petitioner was coming at Ramirez. (3RT 616.) Soto saw the box cutter touch Ramirez's mask. (3RT 616.) Petitioner seemed scared, judging from the fact that he pulled out a knife, but Ramirez never swung or pulled a weapon. (3RT 624-626.) Petitioner lowered the blade and just stood there silently as Soto and Nieto and Miguel Zarate took Ramirez out of the room. (4RT 762-763.)

Soto did not recall seeing petitioner grabbing the bucket, nor did he see him put up his hands or hit his chest. (3RT 638, 640.) He never heard petitioner say "come on" to Ramirez. (3RT 641.) Petitioner did not swing the blade with full force at Ramirez's face. (3RT 643.) It did not look like the blade cut the mask. (4RT 756.) Soto saw Ramirez during their lunch break and did not see any cut on him; Soto thought Ramirez had not been cut. (4RT 767.)

Miguel Zarate went into the wash room on the night in question with some tubes to wash. (4RT 786-787.) Sometimes petitioner would ask Zarate to leave buckets there, saying he would take care of them, and Zarate would leave the buckets there. (4RT 819.) Ramirez came in with a bucket

7

of water. Zarate looked over at him because he saw a quick movement, and saw an argument between Ramirez and petitioner. (4RT 793-794.) Petitioner challenged Ramirez to fight. (4RT 796.) Zarate heard Ramirez say that they should each just do their jobs. (4RT 798.) Petitioner was aggressive throughout the encounter with Ramirez. (4RT 799.) Ramirez stayed standing in one spot. (4RT 799.) Petitioner moved to the open area next to the wash room, moving from side to side and in circles. (4RT 802-803.) Petitioner pulled out a blade from his chest area and swung his arm quickly at Ramirez's face. (4RT 809, 811.) Ramirez moved back a bit; Zarate believed Ramirez would have been hit in the face if he had not moved back. (4RT 811.) Zarate did not see any blood, did not see the blade hit the mask or see the mask rip open, and did not see if the blade hit Ramirez. (4RT 810-811, 825.) Zarate worked with Ramirez after the incident and did not see any injury on Ramirez's face. (4RT 817-818, 826.)

George Marzan was supervisor of the graveyard shift. (5RT 1006-1007.) Marzan got information about what had happened from Nieto, Soto, Zarate and then Ramirez. (5RT 1011.) Ramirez said he had thrown away the mask he was wearing during the incident. (5RT 1030.) Later Ramirez came back and showed Marzan that he had a hairline scratch between an inch and a half and two inches long, right below his lip. (5RT 1013-1014.) Marzan did not know how Ramirez got the scratch. (5RT 1031-1032.)

Petitioner testified in his own behalf. He was employed at Threshold a little over 90 days. He was hired through a temporary agency, Manpower, and became a permanent employee a few days before this incident. (5RT 1072.) Unlike the previous witnesses, his primary job was in sanitation. (5RT 1074-1075.) Sometimes petitioner would ask other employees to leave their buckets without dumping them so he could clean them; generally the other employees never had any problem with this request, especially since it meant less work for them. (5RT 1078-1079.)

8

When petitioner arrived in the wash station on April 29, 2013, his area was trashed with buckets and machines; the dirty bucket line was full from floor to ceiling and the whole wash area was full of buckets. (5RT 1080-1083.) Dirty buckets had to be kept apart from clean buckets, to prevent cross-contamination. (5RT 1083.) There was a heavy demand for clean buckets, as they were used in all lines of work at Threshold. (5RT 1084.) It was frustrating because petitioner had to keep up with all the buckets that were piling up. (5RT 1115.) Petitioner had spent 20 to 45 minutes trying to organize the area to make some room to clean buckets, and had washed about 50 buckets when Ramirez walked into the wash room. (5RT 1083-1084.)

There were clean buckets near Ramirez, so petitioner asked him not to dump the dirty water at that moment, because it would get the clean buckets dirty and petitioner would have to re-wash them. (5RT 1086, 1105.) Ramirez started to dump his bucket and petitioner told him to stop. Ramirez asked why. (5RT 1086.) Petitioner told him he didn't want him to dump the dirty water because he had clean buckets sitting there. (5RT 1086.) Ramirez said "you do your job and I'll do mine." (5RT 1087.) Petitioner pulled the bucket away from Ramirez and moved it out of the way. (5RT 1087.) Petitioner hit his chest, telling Ramirez to leave his bucket, saying "I've got this." (5RT 1091.) Petitioner never raised his hands to fight Ramirez; the motion he made was meant to say "hey, I got this," not "come fight me." (5RT 1091.) Ramirez asked petitioner if he wanted to fight. (5RT 1091.) Ramirez was stopping petitioner from doing his work just to argue over a bucket. (5RT 1128.)

Petitioner and Ramirez had argued for about 15 minutes, and petitioner was upset, but petitioner did not pull out his box cutter until Ramirez told him to watch his back. (5RT 1093.) Petitioner took Ramirez's statement as a threat, and looked behind him in response. (5RT 1093.)

9

Petitioner was apprehensive, and felt that Ramirez was about to attack him. (5RT 1095, 1098, 1150.) Petitioner knew that all Threshold employees carried box cutters, and because of the way the other employees were standing up against the wall and looking at him, he thought that there were four of them against him. (5RT 1095.)

Petitioner pulled out his blade and got in front of Ramirez. (5RT 1093.) He looked Ramirez in the eye and told him "I'm not the one you wanna play with." (5RT 1093-1094.) Petitioner waved the blade in Ramirez's face. He was not trying to strike him with it, just to fend him off, to let Ramirez know that Ramirez should not threaten him. (5RT 1094.) Petitioner's swing of the blade would not have hit Ramirez even if Ramirez had not stepped back when petitioner waved the blade. (5RT 1145.) If petitioner made contact with Ramirez's mask, it was an accident. (5RT 1150.) If petitioner had wanted to cut Ramirez, he would have. (5RT 1099.)

Petitioner never saw any blood on Ramirez. Ramirez never said he had been cut. Petitioner did not recall hitting Ramirez's mask with his blade. (5RT 1096, 1134.) The blade could inflict serious injury, and could be a deadly weapon. (5RT 1130.) Petitioner had the blade extended about one inch when he waved it in Ramirez's face. (5RT 1139-1140.)

Petitioner was honest when he applied to work at Threshold. (5RT 1105.) On the Threshold application, which petitioner filled out about five days before the incident, when he was hired officially by Threshold, he did not reveal his conviction in Texas for elder abuse in response to a question about criminal convictions, and he initialed the box that stated that he had not withheld any information that might affect his chances for employment. (5RT 1105-1106.) He was convicted in Texas in 2012 for causing bodily injury to William Brown, an individual 65 years old or older, by striking him with his hand. (5RT 1107.) When petitioner originally filled out an application to work at Threshold through the temporary agency Manpower,

10

however, he revealed the Texas conviction, and Threshold had possession of that application. (5RT 1148-1149.)

## ARGUMENT

## THE ADMISSION OF PETITIONER'S PRIOR CONVICTION WAS PREJUDICIAL ERROR.

The trial court allowed the introduction of evidence that petitioner had been convicted in 2012 of the crime of elder abuse without ever considering whether the offense was a crime of moral turpitude. In fact, the offense was not a crime of moral turpitude. Moreover, it was error to admit the evidence in relation to petitioner's representations and/or omissions on a job application, because the probative value of the evidence was minimal and the potential prejudice was great. The admission of evidence concerning a prior assaultive conviction was prejudicial in a close case, in which the jury had numerous questions and engaged in lengthy deliberations concerning a single count. The admission of the evidence requires that this Court grant the petition and reverse the judgment.

### A. Factual and procedural background

In motions in limine, the defense sought to exclude evidence of all prior convictions. (1CT 178.) The prosecution sought to introduce evidence of prior convictions pursuant to Evidence Code section 1101, subdivision (b), arguing that the convictions were relevant to prove motive or intent in the current incident. (1CT 184, 187; 1RT 13-14.) At issue was petitioner's conviction in 2012 for a November 2011 incident of elder abuse. (1RT 13-14.) The prosecutor contended that the evidence showed intent under Evidence Code section 1101, in that petitioner chose victims that were

11

vulnerable or nonthreatening. (1RT 14.) The trial court originally stated that the evidence could come in if the crime was a felony, because it involved assaultive behavior, was relevant and admissible under section 1101, and was more prejudicial than probative per section 352. (1RT 17-18.) But defense counsel argued that the evidence was not properly admissible under section 1101 because it did not show motive. (1RT 21.) The prosecutor argued that the evidence would also be admissible for impeachment should petitioner testify. (1RT 21.)

At the close of the prosecution case, defense counsel informed the court that petitioner wished to testify. (5RT 1053.) The trial court found that the 2012 conviction was admissible to impeach petitioner because it was a felony conviction, because it was assaultive behavior, and because it survived a section 352 analysis. (5RT 1054.)

Finally, the prosecutor asked the court's permission to impeach petitioner with his job application to Threshold. The prosecutor represented that petitioner left blank the responses to two questions regarding any prior criminal convictions, and then certified that he had not withheld any information that might adversely affect his chance of employment. (5RT 1067-1068.) Defense counsel argued that petitioner may have omitted information, but did not misrepresent himself, and further, that petitioner was hired through a temporary agency and had provided all of the relevant information on the temporary agency application. (5RT 1068-1069.) The judge decided to allow the evidence about the prior offense and the job application for impeachment purposes, without engaging in any analysis under section 352. (5RT 1069-1070.)

In summary, the trial court found evidence of the prior conviction was admissible for impeachment, without ever examining whether the prior conviction was for a crime involving moral turpitude. The court also decided to allow evidence of the prior conviction in relation to petitioner's

representations and omissions on a job application, without ever examining the relevant factors under Evidence Code section 352.

On cross-examination, over the objection of defense counsel, the prosecutor introduced petitioner's application for employment at Threshold. (5RT 1105, 1107.) The application was filled out five days before the incident, when petitioner was hired officially by Threshold, though he had already been working at Threshold for about three months as a temporary worker hired through Manpower. (5RT 1071-1072, 1107.) The prosecutor asked petitioner if he had suffered a conviction in Texas for elder abuse, and petitioner said yes. (5RT 1106.) The prosecutor then elicited petitioner's testimony that he did not list this information on his Threshold job application, and also that he had initialed the box that certified he had not withheld information that might adversely affect his chances for employment. (5RT 1106.) The prosecutor asked further whether petitioner was convicted in 2012 for "intentionally and knowingly caus[ing] bodily injury to William Brown, Senior, an individual 65 years of age or older, by striking [him] with hand," and petitioner responded affirmatively. (5RT 1107.)

On redirect, petitioner explained that he originally applied for the job at Threshold through Manpower, that he had informed Manpower about the conviction in Texas, and that Threshold had possession of the Manpower application. (5RT 1149.)

## B. Standard of Review

Admissibility of evidence is reviewed for abuse of discretion and is grounds for reversal if the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Ochoa* (2001) 26 Cal.4th 398, 437-438; *People v. Harrison* (2005) 35 Cal.4th 208, 230; *People v. Waidla* (2000) 22 Cal.4th

690, 723, fn. 5.) Due to its inherent prejudice, however, prior crime evidence is to be scrutinized with "extremely careful analysis". (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404 [internal quotations and citations omitted].)

### C. The Court's Decision to Allow Evidence of the Prior Conviction For Impeachment Was Error, Because It Was Not a Crime of Moral Turpitude.

In *People v. Castro, supra,* 38 Cal.3d 301, this Court held that the Due Process Clause of the Fourteenth Amendment prohibits impeachment of a witness with a prior conviction that does not substantially affect his or her credibility. (*Id.*, at pp. 313-314.) If a prior conviction does not involve moral turpitude, it may not be used for impeachment. (*Id.*, at p. 316; *People v. Harris* (2005) 37 Cal.4th 310, 337.) A prior conviction is admissible only "if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*People v. Castro, supra,* 38 Cal.3d at p. 317; see also *People v. Wheeler* (1992) 4 Cal.4th 284, 295-297, fn. 6.) The least adjudicated elements of the prior conviction at issue in this case did not involve moral turpitude, and therefore evidence of the offense should not have been admitted.

The conviction at issue was a conviction in Texas for a violation of Texas Penal Code section 22.04, which is violated when a person "intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury." Thus a conviction under the Texas statute can occur via negligence, or omission.

14

In a case examining a very similar California statute concerning child endangerment, the Court of Appeal has held that the crime was not one of moral turpitude. In *People v. Sanders, supra,* 10 Cal.App.4[th] 1268, the Court examined Penal Code section 273a, subdivision (1), now section 273a, subdivision (a). That statute reads as follows:

> Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment . . .

The court found that section 273a could be violated by criminal negligence alone, and therefore a conviction under the statute does not necessarily imply moral turpitude. (*People v. Sanders, supra,* 10 Cal.App.4[th] at pp. 1273-1275.) The same reasoning applies in the instant case. By the plain language of the statute, it is clear that the Texas statute outlawing elder abuse may be violated by criminal negligence or omission alone. For example,

> [a] person commits an offense if the person is an owner, operator, or employee of a group home . . . and the person intentionally, knowingly, recklessly, <u>or with criminal negligence by omission</u> causes to a child, elderly individual, or disabled individual who is a resident of that group home or facility: (1) serious bodily injury . . .

(Tex. Pen. Code, § 22.04, emphasis added.) The language and application of the Texas statute is directly parallel to the child endangerment statute that the *Sanders* court found did not describe a crime of moral turpitude. Accordingly, the trial court erred in permitting the impeachment of petitioner with the prior conviction under this statute.

### D. The Admission of the Prior Conviction in Connection With the Job Application was an Abuse of Discretion.

As shown above, the trial court decided to admit evidence of the prior conviction for impeachment, based on an analysis that totally failed to consider whether the offense was one of moral turpitude. It was not. Given that the prior conviction was not a crime of moral turpitude, the trial court should have engaged in a proper analysis under Evidence Code section 352 in response to the prosecutor's request to admit the evidence in relation to the job application; it failed to do so. If it had done so, it would not have admitted the evidence. Its decision to admit the evidence in relation to the job application was an abuse of discretion

The trial court completely failed to weigh the factors under Evidence Code section 352 in deciding whether to allow the prior conviction evidence to come in relative to the job application.The record does not reflect any weighing of the relevant factors under section 352. A failure to exercise discretion is an abuse of discretion. (*People v. Orabuena* (2004) 116 Cal.App.4th 84, 99.)

A proper analysis would have required exclusion of the evidence. Petitioner's representations and omissions on the application for employment did not have any probative value whatsoever. The uncontroverted evidence showed that petitioner's original application to work at Threshold, filed with the temporary agency Manpower, revealed his Texas conviction, and that Threshold possessed that application. Threshold was therefore at least constructively aware of petitioner's prior conviction. (5RT 1148-1149.) Further, petitioner did not state on the second job application that he had no criminal record; he merely left blank the "yes" or "no" responses to the question concerning any past criminal offense. (People's Exhibit 39.) He then initialed a statement certifying that

he had not knowingly withheld any information that might adversely affect his chances of employment. (People's Exhibit 39, p. 3; 5RT 1106.)

In fact, petitioner had not "knowingly withheld any information that might adversely affect [his] chances of employment," as he had revealed the information regarding the prior conviction on his original application submitted through Manpower. Further, the answers given by him on this second application were true and correct, even if they were not necessarily complete. Finally, petitioner was not required to, and did not, sign the document under penalty of perjury.

The probative value of petitioner's representations and/or omissions on the job application was nil, or close to it, for the reasons described above. Further, the potential for prejudice resulting from the admission of the evidence regarding the prior conviction was substantial. Although the prior conviction did not necessarily show moral turpitude, the prosecutor was allowed to describe the offense in a manner that conveyed its assaultive nature.

As noted by this Court in *People v. Beagle* (1972) 6 Cal.3d. 441, 453, strong reasons militate in favor of excluding evidence of substantially similar crimes, including "the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'" (*Ibid.*) The prejudice from this temptation of jurors to convict on the basis of prior convictions is of the severest nature, because it relates directly to the most critical function of the jury – its determination of the defendant's guilt or innocence. As such, prior convictions for the same or similar crimes should be used "sparingly." (*Ibid.*) Given the virtual impossibility of a lay jury separating its knowledge of prior violent criminal conduct from its duty to independently ascertain the defendant's guilt or innocence on the present charges, the prejudice of admitting the prior offenses clearly outweighed

17

their probative value. Therefore, the trial court abused its discretion under Evidence Code section 352.

### E. The Court Never Decided the Evidence Could Come in Based on Evidence Code Section 1101, and the Evidence Could Not Have Been Admitted on this Basis.

While Evidence Code section 1101, subdivision (b) allows admission of prior acts to prove intent and motive, admission of other crimes evidence "cannot be justified merely by asserting an admissible purpose." (*People v. Thompson* (1980) 27 Cal.3d 303, 319.) The court may not admit the evidence unless it "is logically relevant to prove" the disputed fact. (*Ibid.*)

Although the prosecutor argued that the evidence was admissible under section 1101, the court never ruled on that argument, and therefore its decision to permit the evidence cannot be affirmed on this basis. When the Court of Appeal reviews the exercise of a trial court's discretion, it is "incongruous for an appellate court. . . to rely on reasons not cited by the trial court. Otherwise, we might uphold a discretionary order on grounds never considered by, or, worse yet, rejected by the trial court." (*People v. Bracey* (1994) 21 Cal.App.4[th] 1532, 1542.)

The trial court did not "look behind the label describing the . . . similarity or relation between the [prior acts] and the charged offense" as required in an analysis under Evidence Code section 1101. (*People v. Thompson, supra*, 27 Cal.3d at p. 316, quotation and citation omitted.) It did not "examine the precise elements of similarity" between the prior act and the charged offenses "with respect to the issue for which the evidence is proffered and satisfy itself that each link of the chain of inference between the former and the latter is reasonably strong." (*Ibid.*) The trial court failed to perform a close analysis to determine if the prior act" serve[d]

18

logically, naturally, and by reasonable inference to establish [the disputed] fact." (*People v. Thompson, supra*, 27 Cal.3d at p. 316.)

A ruling to admit section 1101, subdivision (b) evidence is reviewed for abuse of discretion. (*People v. Lewis* (2001) 25 Cal.4th 610, 637.) As discussed above, the trial court failed to exercise any discretion with regard to section 1101; the trial court's failure to exercise discretion was inherently an abuse of discretion. (*People v. Orabuena, supra,* 116 Cal.App.4[th] at p. 99.)

Further, due to its inherent prejudice, prior crime evidence is to be scrutinized with "extremely careful analysis."(*People v. Ewoldt, supra,* 7 Cal.4th at p. 404.) All doubts about probativeness must be resolved in the defendant's favor. (*People v. Alcala* (1984) 36 Cal.3d 604, 631.) Because it can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." (*People v. Daniels* (1991) 52 Cal.3d. 815, 856.) Because there was no showing of any "precise elements of similarity" between the prior crime and the current offense, the admission of the evidence cannot be affirmed on grounds that it was proper under section 1101. (*People v. Thompson, supra*, 27 Cal.3d at p. 316.)

### F. The Admission of the Prior Conviction Evidence Deprived Petitioner of His Federal Constitutional Rights to Due Process and a Fair Trial.

Where, as here, a witness is impeached with a prior conviction that does not substantially relate to his or her credibility, it is a violation of the due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and the right to a fair trial guaranteed by the Sixth Amendment. (*People v. Castro, supra*, 38 Cal.3d at pp. 313-314; *Ulster County Court v. Allen* (1979) 442 U.S. 140, 157; *Barnes v. United States*

(1973) 412 U.S. 837, 844-845; *Leary v. United States* (1969) 395 U.S. 6, 46.) Further, even if it was proper to admit evidence of the existence of a prior conviction in connection with the job application, the nature of the prior conviction was irrelevant to any disputed issue at trial, and thus its admission violated due process for this reason as well. (*People v. Valentine* (1986) 42 Cal.3d 170, 177.)

### G. The Erroneous Admission of the Evidence Was Prejudicial And Requires Reversal.

Because the court's admission of the evidence of the prior conviction violated the Sixth and Fourteenth Amendments, the error is subject to the *Chapman* standard for federal constitutional errors, which requires reversal unless the state proves that the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) Applying *Chapman*, the appellate court examines the entire record to determine whether it is "'*reasonably possible* that the error might have materially influenced the jury in arriving at its verdict." (*People v. Taylor* (1982) 31 Cal.3d 488, 499-500, emphasis added.)

Under state law, the erroneous admission of evidence requires reversal when the admission of the evidence resulted in a miscarriage of justice, i.e., where "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error." (*People v. Rains* (75 Cal.App.4th 1165, 1170, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

The error in this case mandates reversal under either the *Chapman* or the *Watson* standard. The trial court refused to instruct the jury on brandishing a weapon (5RT 1155-1156), but the question of whether petitioner's action in waving the box cutter was merely the offense of brandishing, as opposed to an assault with a deadly weapon, pervaded the

20

trial. It is clear that the jury was troubled by this question, and the jury showed great difficulty in coming to its guilty verdict. The jurors were considering only one count, but asked numerous questions and deliberated for the equivalent of a full day before reaching a decision. (2CT 299-300.) In such a close case, the introduction of evidence that petitioner had assaulted another man was prejudicial under either the state or federal standard.

In both opening and closing arguments, petitioner's trial attorney emphasized to the jury that the offense petitioner committed was not assault with a deadly weapon, but merely brandishing. (2RT 268; 6RT 1293, 1314-1315.) He argued that petitioner did not intend to strike Ramirez with the box cutter, and that petitioner meant his actions as a warning, not an attack. (6RT 1293-1295.) Defense counsel repeatedly argued that the act of waving the box cutter was not an act that by its nature would directly and probably result in the application of force to another, and therefore not assault with a deadly weapon. (6RT 1295-1296, 1307.) Defense counsel also focused on the 3rd element set out in CALCRIM No. 875 (the instruction defining assault with a deadly weapon), arguing that petitioner did not have the intent to apply force to Ramirez. (6RT 1297.)

During deliberations the jury asked a question that revealed its concern as to whether assault with a deadly weapon could be committed with a single swing of a blade that did not cause any injury and apparently was not intended to cause any injury. The jury sent the judge the following note:

> With regards to [the jury instruction concerning assault with a deadly weapon], how is intent to be considered. In order to convict, must the jury believe the defendant intended to commit the act of assault with a deadly weapon.

21

(2CT 258, 302.) The jury's question revealed that it had listened carefully to defense counsel's argument and was wondering if petitioner's conduct constituted only brandishing a weapon, not assault with a deadly weapon.

The jury also requested extensive readback of the testimony of the five witnesses who were present when the incident occurred (Ramirez, Nieto, Soto, Zarate, and petitioner), specifically as it related to three topics of concern, as follows:

1) Was the mask touched by the blade; if not, how close did it pass.
2) Did Valente Ramirez move backwards, including head movement, during or after swipe of blade;
3) What was Mr. Brown's initial proximity to Valente, once he moved out of the wash room.

(2RT 303.) These requests, like the previous request, show that the jury was skeptical about whether the elements of assault with a deadly weapon were established.

Another indication of the prejudice caused by the admission of the evidence of the prior conviction is the stress placed upon it by the prosecutor in his closing argument. (6RT 1281-1284.) The prosecutor's emphasis on this evidence reveals its importance in the trial. This court should not treat the excluded evidence "as any less 'crucial' than the prosecutor -- and so presumably the jury -- treated it." (*People v. Cruz* (1964 ) 61 Cal.2d 861, 868.)

Reversal is required because it is reasonably probable that, had it not been for the erroneous admission of the prior conviction, one or more jurors would have voted to acquit. (See *People v. Rodriguez* (1986) 177 Cal.App.3d 174, 178; *Watson, supra,* 46 Cal.2d at p. 836.) There is more than an abstract chance that the jurors were predisposed toward a finding of guilt due to learning of petitioner's prior conviction for assault. Evidence of a defendant's prior bad acts is "inherently prejudicial" and has an

22

"inflammatory impact" on the jury. (*Alcala, supra*, 36 Cal.3d at p. 631.) Here, the prior conviction was an assault, which was particularly prejudicial in this assault case. (See *People v. Beagle, supra*, 6 Cal.3d at p. 453.) The trial court's erroneous admission of the prior conviction requires that this Court grant the petition and reverse the judgment.

### H. The Arguments Are Not Forfeited; But to the Extent Trial Counsel Failed to Object, the Failure Constituted Ineffective Assistance of Counsel.

#### 1. The argument under Evidence Code section 352 was raised and is therefore not forfeited.

Defense counsel objected vigorously to the admission of petitioner's prior conviction. In a motion in limine, the defense sought to exclude evidence of all prior convictions, including an express objection to such evidence under Evidence Code section 352. (1CT 178.) Defense counsel also argued that the evidence was not properly admissible under Evidence Code section 1101. (1RT 21.)

When the prosecutor asked the court's permission to impeach petitioner with his job application to Threshold, defense counsel objected, arguing that petitioner may have omitted information from the application, but did not misrepresent himself, and further, that petitioner was hired through a temporary agency and had provided all of the relevant information on the temporary agency application. (5RT 1068-1069.) All of these arguments by defense counsel related to the lack of probative value of the evidence under Evidence Code section 352, the ground raised previously in the motion in limine.

Because defense counsel moved in limine to keep out the prior conviction under section 352, and further renewed this objection later in connection with the job application by arguing the factors relevant to a

section 352 analysis, the issue cannot be deemed forfeited on appeal. Where a defendant raises evidentiary issue in an in limine motion and court rules on it, the defendant generally does not need to renew that objection to preserve the issue. (*People v. Morris* (1991) 53 Cal.3d 152, 188-189; *accord, People v. Crittenden* (1994) 9 Cal.4th 83, 127; *People v. Rowland* (1992) 4 Cal.4th 238, 264 fn. 3; *People v. Felix* (1999) 70 Cal.App.4th 426, 430-431.)

Further, defense counsel's objections under section 352 also preserved petitioner's right to raise his related federal claims on appeal. An objection on a state law grounds is sufficient to preserve a parallel federal constitutional claim governed by the same standard. (*People v. Yeoman* (2003) 31 Cal.4th 93, 117-118; *People v. Partida* (2005) 37 Cal.4th 428.)

      2.    The argument regarding whether the Texas conviction showed moral turpitude should not be deemed forfeited.

As shown in the opening brief, petitioner was deprived of his due process and fair trial rights by the admission of extremely prejudicial evidence of a prior assault in the instant prosecution for assault. Constitutional issues may be raised for the first time on appeal (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394; *In re Mazoros* (1977) 76 Cal.App.3d 50, 54; *People v. Allen* (1974) 41 Cal.App.3d 196, 201, fn. 1.) Further, the question of whether the Texas conviction constituted a crime of moral turpitude under the "least adjudicated elements test" is a pure question of law. It is well-established that a reviewing court may consider for the first time a claim raising a pure question of law on undisputed facts. (*People v. Yeoman* (2003) 31 Cal.4th 93, 118; see also, e.g., *People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1471 fn. 5.) The argument that the prior conviction

24

was inadmissible because it was not for a crime of moral turpitude should not be deemed forfeited.

        3.      To the extent either argument is deemed forfeited due to insufficient objection, trial counsel provided constitutionally ineffective assistance and the conviction must be reversed on this basis.

The Sixth and Fourteenth Amendments to the United States Constitution and article I, section 15, of the California Constitution, guarantee every criminal defendant the right to effective assistance of counsel. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215; *Strickland v. Washington* (1984) 466 U.S. 668, 691-692.)

To prove ineffective assistance of counsel, the defendant must demonstrate that counsel failed to act with reasonable competence, and that this failure deprived defendant of the opportunity to present a potentially meritorious defense. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) When the purported failure does not amount to the withdrawal of a potentially meritorious defense, a defendant must establish that counsel "failed to perform with reasonable competence and that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings." (*People v. Fosselman* (1983) 33 Cal.3d 572, 584, citing *Pope, supra*, 23 Cal.3d at p. 425, and *People v. Watson* (1956) 46 Cal.2d 818, 836; see *Strickland v. Washington, supra*, 466 U.S. at pp. 693-695.) The criminal defendant need not show by a preponderance of the evidence that the errors of counsel determined the outcome. (*Strickland v. Washington, supra*, 466 U.S. at p. 694.)

Reversal on appeal for inadequate counsel is warranted where there is no tactical reason for counsel's act or omission. (*People v. Fosselman, supra*, 33 Cal.3d at p. 581.)

25

a.   Failure to object on well-established, applicable grounds was a failure to perform with reasonable competence.

Here, it is plain that there could be no tactical reason for the failure to argue that the prior conviction was not a crime of moral turpitude, or that the job application should be excluded under section 352. As shown in the opening brief, it is well-established in California law that if a prior conviction does not involve moral turpitude, it may not be used for impeachment. (*People v. Castro, supra,* 38 Cal.3d at p. 316; *People v. Harris, supra,* 37 Cal.4th at p. 337.) Further, a witness's prior conviction is admissible only "if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*People v. Castro, supra,* 38 Cal.3d at p. 317; see also *People v. Wheeler* (1992) 4 Cal.4th 284, 295-297, fn. 6.) If trial counsel had simply reviewed the Texas statute at issue, he would have noticed that, by its plain language, it may be violated by negligent conduct alone. (Tex. Pen. Code, § 22.04.) Such conduct does not imply moral turpitude, and the prior conviction should have been excluded on this basis. (*People v. Sanders* (1992) 10 Cal.App.4th 1268, 1272.)

Further, trial counsel displayed a lack of reasonable competence when he failed to argue that the job application evidence was more prejudicial than probative under section 352. He failed to point out that the proposed line of questioning concerning the job application was an end-run designed to bring in evidence concerning a highly prejudicial assault conviction, a conviction that was not even for a crime of moral turpitude. If the judge had been reminded that the crime was not one of moral turpitude, and that the potential prejudice was great because it was the same type of crime as that before the jury, along with the minimal probative value of the job application evidence, it is likely that the judge would have excluded the evidence. The evidence was in no way helpful to petitioner; to the contrary,

it was quite harmful, and defense counsel was patently aware of the potential prejudice arising from the evidence. Counsel's failure to object on appropriate, well-established grounds to this deeply prejudicial testimony was unjustified and objectively unreasonable.

      b.     It is reasonably probable a determination more favorable to petitioner would have resulted in the absence of counsel's failings.

It is at least reasonably probable that petitioner would have obtained a better result if his trial attorney had objected to the introduction of the evidence concerning the prior conviction on the two specific grounds discussed here, i.e., that the prior conviction was not for a crime of moral turpitude, and that the evidence concerning the job application, in light of the prejudice of revealing the prior conviction, did not pass muster under section 352. (*Strickland, supra*, 466 U.S. at pp. 693-695.)

The trial court engaged in lengthy discussions with trial counsel about how and whether the prior conviction would come in, reflecting its close consideration of the matter. (1RT 12-22; 5RT 1053-1070.) If trial counsel had reminded the court of the law concerning the inadmissibility of prior convictions that do not show moral turpitude, the trial court would not have decided to allow the impeachment of appellant with the conviction. Further, when the prosecution sought to introduce evidence of the prior conviction by way of the job application, if counsel had mentioned section 352 and argued all of the factors relevant under that statute, including the prejudice that would be caused by introducing a prior conviction for assault in an assault case, it is likely that the judge would have excluded the evidence.

As described more fully at pages 20-23 above, the admission of the evidence was critical in this close case. Because defense counsel's failure to

object led to the admission of highly prejudicial evidence, and because there are numerous indicia that the jury considered this to be a close case, it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings. (*People v. Fosselman* (1983) 33 Cal.3d 572, 584; *Strickland v. Washington, supra,* 466 U.S. at pp. 693-695.) The petition should be granted and the conviction reversed.

## CONCLUSION

On the grounds asserted in the his Opening and Reply Briefs, petitioner requests that the Court grant this petition and reverse the judgment in this case.

Date: September 19, 2016       Respectfully submitted,

LAW OFFICES OF JOY MAULITZ

By: _____

Joy A. Maulitz
Attorney for Petitioner
WILLIAM ODESSA BROWN

**CERTIFICATE OF COMPLIANCE WITH**
**THE CALIFORNIA RULES OF COURT, RULE 8.504(d)**


        I certify this document was prepared on a computer using Microsoft Word, and that, according to that program, this document contains 8,256 words.


Date:  September 19, 2016       Respectfully submitted,

                                   LAW OFFICES OF JOY MAULITZ



                                   By:  ___Joy A. Maulitz_____

                                       Joy A. Maulitz

# EXHIBIT 1

# PROOF OF SERVICE BY MAIL

Re: William Brown,   Court Of Appeal Case: H040734, Superior Court Case: F24663

I the undersigned, declare that I am employed in the County of Sonoma, California. I am over the age of eighteen years and not a party to the within entitled cause. My business address is 1235 Eleanor Ave., Rohnert Park CA. On September 19, 2016, I served a copy of the attached Petition for Review (CA Supreme Court) on each of the parties in said cause by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in United States mail at Sonoma, California, addressed as follows:

Office of the Attorney General SJ
San Jose AG
455 Golden Gate Avenue
Room 11000
San Francisco, CA 94102-7004

Anthony Robinson
Biggam Christensen and Minslof
2103 N. Pacific Ave.
Santa Cruz, CA 95060

District Attorney
701 Ocean St., Room 200
Santa Cruz, CA 95060

William Brown AS7822
HDSP
P.O. Box 3030
Susanville, CA 96127

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 19th day of September, 2016.

_____
Teresa C. Martinez
(Name of Declarant)

_____
(Signature of Declarant)

PROOF OF SERVICE BY ELECTRONIC SERVICE

Re: William Brown,   Court Of Appeal Case: H040734, Superior Court Case: F24663

I the undersigned, am over the age of eighteen years and not a party to the within entitled cause. My business address is 1235 Eleanor Ave., Rohnert Park CA. On September 19, 2016 a PDF version of the Petition for Review (CA Supreme Court) described herein was transmitted to each of the following using the email address indicated and/or direct upload. The email address from which the intended recipients were notified is Service@GreenPathSoftware.com.

State of California Supreme Court
Supreme Court
San Francisco, CA 94102-4797

Sixth District Appellate Program
SDAP
San Jose, CA 95113
servesdap@sdap.org

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 19th day of September, 2016 at 14:05 Pacific Time hour.

_____Teresa C. Martinez_____
(Name of Declarant)

_____
(Signature of Declarant)

# EXHIBIT H

S237336

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

THE PEOPLE, Plaintiff and Respondent,

v.

WILLIAM ODESSA BROWN, Defendant and Appellant.

---

The petition for review is denied.

SUPREME COURT
# FILED

NOV 2 2 2016

Jorge Navarrete Clerk

_____
Deputy

CANTIL-SAKAUYE
_____
*Chief Justice*